1 | DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (State Bar No. 141930)
2 |    thomasburke@dwt.com
505 Montgomery Street, Suite 800
3 | San Francisco, CA 94111-6533
Telephone:   (415) 276-6500
4 | Fax:  (415) 276-6599

5 | DAVIS WRIGHT TREMAINE LLP
DAN LAIDMAN (State Bar No. 274482)
6 |    danlaidman@dwt.com
DIANA PALACIOS (State Bar No. 290923)
7 |    dianapalacios@dwt.com
865 South Figueroa Street, 24th Floor
8 | Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
9 | Fax:  (213) 633-6899

10 | Attorneys for Defendant
11 | Joseph Teixeira

12 | UNITED STATES DISTRICT COURT
13 | CENTRAL DISTRICT OF CALIFORNIA

14

15 | CITY OF INGLEWOOD, a public entity,

Plaintiff,

16

17 | vs.

18 | JOSEPH TEIXEIRA and Does 1-10,

Defendants.

19

20

Case No. **2:15-cv-01815-MWF-MRW**

Assigned to the Hon. Michael Fitzgerald

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

**[Fed. R. Civ. P. 12(b)(6)]**

Hearing Date:  June 22, 2015
Time:               10:00 a.m.
Courtroom:     1600

[Notice of Motion and Motion to Strike (Rule 12(f)); Request For Judicial Notice; Declaration Of Joseph Teixeira With Exhibit B; Declaration Of Dan Laidman; Notice of Lodging of DVDs With Exhibits A, C-F;  Notice Of Manual Filing; and [Proposed] Order Filed Concurrently]

Action Filed:  March 12, 2015

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 22, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, in Courtroom 1600 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, defendant Joseph Teixeira will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the City of Inglewood's (the "City") Complaint with prejudice.

This Motion is made on the following grounds:

1.     This action arises from alleged infringement of the City's purported copyrights in its video recordings of several of its City Council meetings, but the City is precluded by California law from securing copyright protection in these public records.  See Memorandum Section III.A, infra.

2.     Even assuming that the City could secure a copyright in its video recordings of City Council meetings, Mr. Teixeira's allegedly infringing videos are highly transformative political commentaries that are protected by the fair use doctrine as a matter of law.  See Memorandum Section III.B, infra.

For each of these reasons, the City's Complaint suffers from fatal legal deficiencies that cannot be cured by amendment.  See Memorandum Section IV, infra.  Therefore, the Complaint should be dismissed in its entirety, with prejudice.

This Motion is based on this Notice Of Motion, the attached Memorandum Of Points And Authorities, the concurrently-filed Declaration of Joseph Teixeira with Exhibit B; Declaration of Dan Laidman; Request For Judicial Notice; Notice Of Lodging of DVDs with Exhibits A, C-F; Notice of Manual Filing; and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on such other argument as may be heard by this Court.

This Motion is made following the conference of counsel that occurred on April 9, 2015, pursuant to Local Rule 7-3. <u>See</u> Laidman Decl. ¶ 4.[1]

DATED: April 16, 2015

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
DAN LAIDMAN
DIANA PALACIOS

By: /s/ Dan Laidman
                        Dan Laidman

Attorneys for Defendant Joseph Teixeira

---

[1] In addition to this meet-and-confer session, Mr. Teixeira's counsel sent a detailed letter to the City's counsel prior to the initiation of this action explaining why the City's threatened claim was meritless, and why Mr. Teixeira would likely be entitled to recover his attorneys' fees and costs should he prevail in litigation. <u>Id.</u> ¶ 3. The City did not respond to this correspondence, and instead proceeded with this lawsuit. <u>Id.</u> Because Mr. Teixeira's defense against the City's claim furthers the purpose of the Copyright Act, if the Court grants this Motion he will file a separate motion to recover his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ................................................................... 1

II. FACTUAL BACKGROUND ................................................................... 3

    A. The City Of Inglewood's Complaint. ................................................. 3

    B. The City Of Inglewood's Recordings Of Its City Council Meetings. ........................................................................................... 4

    C. Mr. Teixeira's Political Commentary Videos. .................................. 5

III. PLAINTIFF'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW ................................................................................................... 8

    A. The City Has No Copyright Interest In Its Public Meeting Videos. .... 9

        1. The City Cannot Copyright Its Public Meeting Videos Because California Law Does Not Specifically Authorize Such Protection. ................................... 10

        2. The City's Assertion Of Copyright In Its Public Meeting Videos Is Incompatible With Well-Established State Law And Public Policy ............................... 12

    B. Mr. Teixeira's Use Of Clips From City Council Meetings In His Political Commentaries Is Independently Protected By The Fair Use Doctrine. ........................................................................................ 15

        1. Fair Use Is Applied Expansively Where, As Here, A Claim Implicates Constitutionally Protected Political Speech. ................................................................................ 15

        2. Fair Use May Be Decided On A Motion To Dismiss. ............... 16

        3. Each Statutory Factor Strongly Favors Fair Use. .................... 17

            a. The Purpose And Character Of The Use ...................... 18

            b. The Nature Of The Allegedly Copyrighted Works ....... 21

            c. The Amount And Substantiality Used ........................... 21

            d. The Effect On The Market ........................................... 23

IV. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ....... 25

V. CONCLUSION ................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

<u>Banks v. Manchester</u>,
128 U.S. 244 (1888) ..................................................................................... 14

<u>Batzel v. Smith</u>,
333 F.3d 1018 (9th Cir. 2003) ....................................................................... 1

<u>Bell Atlantic Corp. v. Twombly</u>,
550 U.S. 544 (2007) ....................................................................................... 8

<u>Bouchat v. Baltimore Ravens Ltd. Partnership</u>,
737 F.3d 932 (4th Cir. 2013) ...................................................................... 15

<u>Brownmark Films, LLC v. Comedy Partners</u>,
682 F.3d 687 (7th Cir. 2012) ...................................................................... 17

<u>Bruns v. E-Commerce Exchange, Inc.</u>,
51 Cal. 4th 717 (2011) ................................................................................ 12

<u>Building Officials & Code Adm. v. Code Technology, Inc.</u>,
628 F.2d 730 (1st Cir. 1980) .................................................................. 9, 14

<u>Burnett v. Twentieth Century Fox Film Corp.</u>,
491 F. Supp. 2d 962, 966 (C.D. Cal. 2007) ................................... 9, 16, 25

<u>Campbell v. Acuff-Rose Music, Inc.</u>,
510 U.S. 569 (1994) ...................................................... 2, 18, 21, 22

<u>Caner v. Autry</u>,
16 F. Supp. 3d 689, 710 (W.D. Va. 2014) ................................................. 19

<u>Cariou v. Prince</u>,
714 F.3d 694 (2d Cir. 2013) ....................................................................... 17

<u>CBS, Inc. v. Block</u>,
42 Cal. 3d 646 (1986) ................................................................................. 14

<u>Consumers Union of United States, Inc. v. General Signal Corp.</u>,
724 F.2d 1044 (2d Cir. 1983) ..................................................................... 18

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

County of Santa Clara v. Superior Court,
    170 Cal. App. 4th 1301 (2009) .................................................................. passim

Daly v. Viacom, Inc.,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................................ 9

Dhillon v. Does 1-10,
    2014 WL 722592 (N.D. Cal. Feb. 25, 2014) .................................. 18, 19

Eldred v. Ashcroft,
    537 U.S. 186 (2003) ................................................................................ 15

Fisher v. Dees,
    794 F.2d 432 (9th Cir. 1986) ......................................................... 1, 24, 25

Golan v. Holder,
    132 S. Ct. 873 (2012) ............................................................................. 15

Harper & Row Publishers, Inc. v. Nation Enterprises,
    471 U.S. 539 (1985) ................................................................................ 21

Hilton v. Hallmark Cards,
    599 F.3d 894 (9th Cir. 2010) ................................................................. 1

Hustler Magazine Inc. v. Moral Majority Inc.,
    796 F.2d 1148 (9th Cir. 1986) ...................................... 2, 16, 18, 21

In re Syntex Corp. Sec. Litig.,
    95 F.3d 922 (9th Cir. 1996) ................................................................... 8

International Longshoremen's & Warehousemen's Union v. L.A. Export
    Terminal, Inc.,
    69 Cal. App. 4th 287 (1999) .................................................................. 14

Kienitz v. Sconnie Nation LLC,
    965 F. Supp. 2d 1042 (W.D. Wis. 2013) ...................................... 19, 24

Knievel v. ESPN,
    393 F.3d 1068, 1076-77 (9th Cir. 2005) ........................................ 8

Leadsinger, Inc. v. BMG Music Publ'g,
    512 F.3d 522 (9th Cir. 2008) ................................................................ 16

Leibovitz v. Paramount Pictures Corp.,
    137 F.3d 109 (2d Cir. 1998) .................................................................. 22

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Mattel Inc. v. Walking Mt. Prods.,
  353 F.3d 792 (9th Cir. 2003) ................................................................... 19

Maxtone-Graham v. Burtchaell,
  803 F.2d 1253 (2d Cir. 1986)................................................................... 19

Microdecisions, Inc. v. Skinner,
  889 So.2d 871 (2004).................................................................... 9, 11

Mills v. Alabama,
  384 U.S. 214 (1966) ............................................................................... 16

National Rifle Ass'n of America v. Handgun Control Federation of
  Ohio,
  15 F.3d 559 (6th Cir. 1994) .................................................................... 19

New Era Publications International, ApS v. Henry Holt & Co.,
  695 F. Supp. 1493 (S.D.N.Y. 1988) ...................................................... 13

New York Times Co. v. Sullivan,
  376 U.S. 254 (1964).................................................................................. 1

Norse v. Henry Holt and Co.,
  847 F. Supp. 142 (N.D. Cal. 1994) ........................................................ 18

North County Parents Org. v. Dep't of Education,
  23 Cal. App. 4th 144 (1994) .................................................................. 13

Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical
  Reform,
  868 F. Supp. 2d 962 (C.D. Cal. 2012) ................................. 3, 20, 21, 24

Righthaven v. Realty One Group,
  2010 WL 4115413 (D. Nev. Oct. 19, 2010) ......................................... 17

Rogers v. Koons,
  960 F.2d 301 (2d Cir. 1992)................................................................... 22

Savage v. Council on American-Islamic Relations,
  2008 U.S. Dist. LEXIS 60545; 87 U.S.P.Q.2D 1730 (N.D. Cal. 2008)........ passim

Sedgwick Claims Management Servs. v. Delsman,
  2009 U.S. Dist. LEXIS 61825 (N.D. Cal. July 17, 2009)..................... 17, 19, 25

MOTION TO DISMISS
DWT 26446988v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Seltzer v. Green Day, Inc.,
   725 F.3d 1170 (9th Cir. 2013) ................................................................ 24

Sierra Club v. Superior Court,
   57 Cal. 4th 157 (2013) ................................................................. 13, 14

Snyder v. Phelps,
   131 S. Ct. 1207 (2011) ................................................................... 1

Sony Corp. v. Universal City Studios, Inc.,
   464 U.S. 417 (1984) ..................................................................... 15

Steckman v. Hart Brewing,
   143 F.3d 1293 (9th Cir. 1998) ............................................................... 25

Swatch Group Management Services Ltd. v. Bloomberg L.P.,
   756 F.3d 73 (2d Cir. 2014)............................................................ 21, 22

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007) ...................................................................... 8

United States v. Vidal,
   504 F.3d 1072 (9th Cir. 2007) (en banc) .......................................................... 12

Wheaton v. Peters,
   33 U.S. (8 Pet.) 591 (1834) ................................................................ 14

Wojnarowicz v. American Family Association,
   745 F. Supp. 130 (S.D.N.Y. 1990)........................................................ 15, 16, 19

Wright v. Warner Books,
   953 F. 2d 731 (2d Cir. 1991).............................................................. 18

Zella v. E.W. Scripps,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................... 8

**Statutes**

17 U.S.C.
   § 105.................................................................................... 9
   § 107.................................................................................. 2, 15
   § 107(1)-(4) ............................................................................ 17

Cal. Code Civ. Proc. § 425.16................................................................. 1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cal. Gov't Code
    § 6253(b) ...................................................................................... 3, 11, 13, 24
    § 6254.9 .................................................................................................... 10
    § 6257.5 .................................................................................................... 11
    § 54950 ..................................................................................................... 14
    § 54953.5(b) .......................................................................................... 3, 13

Cal. Education Code §§ 1044, 35170, 72207 ....................................... 11

Cal. Health & Safety Code
    § 13159.8 .................................................................................................. 12
    § 25201.11 ................................................................................................ 11
    § 130251.15 .............................................................................................. 12

Colo. Rev. Stat. § 24–72–203(4) ........................................................... 11

Nevada Rev. Stat. § 239.010(1) ............................................................. 11

South Dakota Codified Laws § 1–27–1 ................................................ 11

Utah Code § 63G–2–201(10)(b) ............................................................ 11

**Rules**

Federal Rules of Civil Procedure
    12(b)(6) ....................................................................................... 8, 9, 16, 17
    12(c) .......................................................................................................... 16

**Constitutional Provisions**

Cal. Const. Article 1
    § 3 ............................................................................................................. 14
    § 3(b)(1)-(2) ............................................................................................. 14
    § 3, subd. (b) ............................................................................................ 10

**Other Authorities**

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 5.14
    (2014) ......................................................................................................... 9

4 William F. Patry, Patry on Copyright § 4:81 (2015) ............................... 9

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      SUMMARY OF ARGUMENT

Joseph Teixeira is an Inglewood resident who makes videos commenting on local politics.  His videos are sharply critical of the public statements and conduct of Inglewood's Mayor at City Council meetings.  The videos feature short clips from the official recordings of these public proceedings, heavily modified with original text and narration which consists of Mr. Teixeira responding to the Mayor's remarks and criticizing his political positions.  Mr. Teixeira's "speech concerning public affairs is more than self-expression; it is the essence of self-government," and it "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  Snyder v. Phelps, 131 S. Ct. 1207, 1215 (2011).

In an unprecedented act of censorship, the City of Inglewood is suing its own citizen for using footage from City Council meetings in his videos commenting on public affairs.  The City's aim is clearly to silence Mr. Teixeira, and to punish him for his harsh criticism of the Mayor.  But his speech is constitutionally protected, and fully consistent with our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964).

Through this action, the City is transparently attempting to circumvent these constitutional protections – as well as California's anti-SLAPP statute[2] – by turning to copyright as a vehicle to silence Mr. Teixeira's political speech.  But "Copyright law is not designed to stifle critics."  Fisher v. Dees, 794 F.2d 432, 437 (9th Cir.

---

[2] The anti-SLAPP statute (C.C.P. § 425.16) provides a means for the early dismissal of claims targeting free speech and petitioning activities that "are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so."  Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003).  The City's retaliatory claim falls squarely within the scope of the law, but Inglewood is exploiting a loophole in which the statute does not apply to federal claims brought in federal court.  See Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1986).  The City's ill-fitting attempt to misuse copyright law to suppress the views of a political opponent is entirely meritless for several independent reasons.

First, this action is premised on Inglewood's claim to hold copyrights in its video recordings of City Council meetings, see Cmplt. ¶¶ 14, 19, Cmplt. Ex A; Exs. A-F, but the City is precluded by California law from copyrighting these public records.  Section III.A.  State law determines if state and local government agencies can secure copyrights in their works, and California's broad mandate of unrestricted disclosure of public records "overrides a governmental agency's ability to claim a copyright in its work," unless state law expressly authorizes such protection.  County of Santa Clara v. Superior Court, 170 Cal. App. 4th 1301, 1335 (2009).  No state law authorizes Inglewood to copyright its City Council meeting videos.  Section III.A.1.  To the contrary, its attempt to use copyright to limit public access to these public records is plainly incompatible with state law and public policy.  Section III.A.2.

Second, the City's claim is independently barred because Mr. Teixeira's videos criticizing government officials on issues of public concern are quintessential examples of fair use.  See 17 U.S.C. § 107.  The doctrine is at its most expansive here, as the City's claim targets a citizen's use of public records to criticize his government, which is core First Amendment speech.  Section III.B.1.  As Mr. Teixeira's videos are incorporated by reference into the pleadings, and it is obvious from reviewing these works that fair use applies as a matter of law, the issue of fair use is properly decided on a motion to dismiss.  Section III.B.2.

It is readily apparent that Mr. Teixeira uses the City Council meeting video clips in a highly transformative manner – modifying the original footage with his own on-screen text and narration and juxtaposing the clips with other materials – to criticize Inglewood politicians for their conduct and statements at these public meetings.  Section III.B.3.  Copyright law encourages such transformative use.  See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994).  See also Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1153 (9th Cir. 1986) (fair use

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protects "political comment"); <u>Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform</u>, 868 F. Supp. 2d 962, 970-79 (C.D. Cal. 2012) (analogous political commentary videos protected by fair use).

Moreover, California law requires Inglewood to make its public meeting videos available for viewing free of charge, and precludes it from charging more than the "direct costs of duplication" for copies.  Cal. Gov't Code §§ 6253(b), 54953.5(b). Thus there can be no commercial market for the City's meeting videos as a matter of law, and even if there could be, Mr. Teixeira's sharply critical videos – with titles like "Inglewood Mayor James Butts Lies, Hiding Dangerous Traffic Problems At The Forum" – scarcely serve as a market substitute for the City's unvarnished gavel-to-gavel recordings of its Council meetings.  Section III.B.3.  The City also could hold no more than a "thin" copyright at best in its Council meeting videos, and Mr. Teixeira has used no more footage than is reasonably necessary in light of his obvious purpose of political critique.  <u>Id.</u>  Consequently, all of the statutory factors unambiguously favor a finding of fair use in Mr. Teixeira's favor.

Because the City has failed to state a claim for each of these reasons, and any amendment would be futile in light of the fundamental legal deficiencies, Mr. Teixeira respectfully requests that the Court dismiss the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The City Of Inglewood's Complaint.

The City of Inglewood "is a municipality incorporated under the laws of the State of California."  Cmplt. ¶ 9.  Mr. Teixeira is an individual residing in the City of Inglewood.  <u>Id.</u> ¶ 11.  He is actively engaged in public affairs, regularly attends and speaks at City Council meetings, submits public records requests for information about local government, and creates documentary-style videos about Inglewood politics and municipal issues, which he posts to a YouTube page under the name, "Dehol Truth."  Cmplt. ¶¶ 11, 19; Declaration of Joseph Teixeira at ¶¶ 2-10; Exs. A-F.  The City alleges that Mr. Teixeira has infringed its copyrights by posting to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

YouTube six videos, which use portions of the City's recordings of five Inglewood City Council meetings, publicly held on the following dates: 7/20/2010, 5/22/2012, 4/11/2013, 4/23/2013, and 2/22/2014. Cmplt. ¶¶ 2, 19. The City alleges that it has submitted applications for copyright registrations in its video recordings of two of these Council meetings, 5/22/2012 and 4/23/2013. Id. ¶¶ 14, 19, Cmplt. Ex. A. The City does not allege that it has registered or attempted to register copyrights in its video recordings of the Council meetings of 7/20/2010, 4/11/2013, or 2/11/2014. Id.[3]

**B.      The City Of Inglewood's Recordings Of Its City Council Meetings.**

The underlying "works" that form the basis of this action are Inglewood's video recordings of several of its City Council meetings. See Cmplt. ¶¶ 2, 19, Ex. A.

● 7/20/2010 City Council Meeting: The City's recording of this Council meeting is four hours, 40 minutes, 55 seconds long. See Teixeira Decl. ¶ 5, Ex. C. It opens with approximately one minute, 20 seconds of photographs from community events, and ends with various photographs being displayed for approximately two minutes, none of which is included in any of Mr. Teixeira's videos. Id.; Exs. A-1-A-6. The rest of the video is an unadorned recording of the meeting. See Ex. C.

● 5/22/2012 City Council Meeting: The City's recording of this meeting is three hours, four minutes, 32 seconds long. See Teixeira Decl. ¶ 6, Ex. D. It opens with approximately three minutes, 30 seconds of photographs from community events, none of which is included in any of Mr. Teixeira's videos. Id.; Exs. A-1-A-6. The rest of the video is an unadorned recording of the meeting. See Ex. D.

● 4/23/2013 City Council Meeting: The City's recording of this Council meeting is two hours, 42 minutes, 27 seconds long. See Laidman Decl. ¶ 2, Ex. F. It opens with a photograph from an event that is on-screen for approximately seven seconds, and ends with various photographs being displayed for approximately one

---

[3] The City's pursuit of this action despite its failure to properly register the purportedly copyrighted works underscores the true nature of this litigation, which is aimed at suppressing political speech. See Concurrently Filed Motion to Strike.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

minute, 30 seconds, none of which is included in any of Mr. Teixeira's videos.  Id.; Exs. A-1-A-6.  The rest of the video is an unadorned recording of the meeting. Ex. F.

● 2/11/2014 City Council Meeting:  The City's recording of this Council meeting is two hours, 37 minutes, 57 seconds long.  See Teixeira Decl. ¶ 7, Ex. E.  It opens with a photograph from an event that is on-screen for approximately five seconds, and ends with various photographs being displayed for approximately one minute, 30 seconds, none of which is included in any of Mr. Teixeira's videos.  Id.; Exs. A-1-A-6.  The rest of the video is an unadorned recording of the meeting. Ex. E.

**C.     Mr. Teixeira's Political Commentary Videos.**

The Complaint identifies six allegedly infringing videos. Cmplt. ¶ 19.  As detailed below, each is a documentary-style commentary on public affairs that uses heavily modified clips from recordings of Council meetings to support Mr. Teixeira's criticism of Inglewood's Mayor's comments and conduct at the public meetings.

● **Video One**: https://www.youtube.com/watch?v=UyCqRiZXRH8

Video One is titled "James Butts Accuses The City Clerk Of Election Fraud," or "James T. Butts Jr. Accuses City Clerk Yvonne Horton of Election Fraud!" Teixeira Decl. ¶ 3(a); Exs. A-1 (video); B-1 (screenshot).  The 14 minute, 56 second-long video criticizes the conduct of Mr. Butts, then a mayoral candidate, at the 7/20/2010 meeting, at which the body considered a report from the City Clerk about whether Mr. Butts should be removed from the ballot because of questions about his residency.  Ex. A-1.  Video One uses clips of Mr. Butts' own public comments at the meeting to evaluate and criticize the remarks that he made about the City Clerk and her investigation, and to illustrate Mr. Butts' alleged violations of City Council rules at the meeting, as described in original text and voiceover narration superimposed onto the short meeting clips that are interspersed throughout the video.  Id.

● **Video Two**: https://www.youtube.com/watch?v=ZruE0a1UF8g

Video Two is titled "James T. Butts Jr. Misleads the Public About His Voter Registration."  Teixeira Decl. ¶ 3(b); Ex. A-2 (video); B-2 (screenshot).  The 14-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

minute, 53-second video follows up on the issues presented in Video One, asking, "So, were James Butts' allegations against the City Clerk's Office fair and accurate or even relevant?  Let's look at each one." <u>Id.</u> at 02:12-02:19.  The video examines each of Mayor Butts' allegations in detail, using short clips from his comments at the 7/20/2010 meeting juxtaposed with original text and narration and images of other public records to evaluate his claims. <u>Id.</u> at 02:20-14:18.  It concludes with harsh criticism of Mr. Butts' conduct and fitness to serve as mayor. <u>Id.</u> at 14:19-14:49.

● **Video Three**: https://www.youtube.com/watch?v=gUUZdTNe7CA

Video Three is titled "Lying Politicians," or "James T Butts Jr Alibi or apology." Teixeira Decl. ¶ 3(c); Ex. A-3 (video); B-3 (screenshot).  The three minute, 43-second video opens with on-screen text stating that one can tell when politicians are trying to hide something by their body language, and then shows footage from the 5/22/2012 Council meeting, with the following text superimposed on-screen:  "And this was true on May 22, 2012, when Inglewood's crooked Mayor, James T. Butts Jr., tried to set up an alibi for his repeatedly helping violate State law to hide evidence of serious Police Misconduct." Ex. A-1 at 00:06-00:32.  The video annotates Mayor Butts' remarks about the City's response to Mr. Teixeira's public records request for information about an incident of alleged police misconduct, constantly cutting in with original text commenting on the substance of the Mayor's speech as well as his body language (per the video's thesis statement about politicians giving visual tells when trying to hide something). <u>Id.</u> at 00:32-03:13.

● **Video Four**: https://www.youtube.com/watch?v=-5VQZrW7BVY

Video Four is titled "James T. Butts Jr. <u>exploits</u> the Murder of Fredrick Martin for his own political benefit." Teixeira Decl. ¶ 3(d); Ex. A-4 (video); B-4 (screenshot).  The 15-minute video contrasts statements Mayor Butts made at a 2012 press conference, in which he assured the public that Mr. Martin's killers would be caught, and appeared to endorse a "series of reward offerings" for that purpose, with the Mayor's comments at a subsequent Council meeting casting doubt on whether

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

such rewards are effective and whether such crimes are likely to be solved.  Ex. A-4.
The meeting clips used in this video are very short and heavily modified, such that no
more than three seconds ever goes by without original on-screen annotation.  Id. at
05:59-14:57.  Through such observations, Mr. Teixeira accuses Mayor Butts of using
the murder of Mr. Martin to grandstand for his own political gain.  Id.

●  **Video Five**: https://www.youtube.com/watch?v=MZKTiutCjdI

Video Five is titled "Mayor James Butts Lies About Being a Hypocrite."
Teixeira Decl. ¶ 3(e); Ex. A-5 (video); B-5 (screenshot).  The 11-minute, 38-second
video revisits the controversy regarding Mayor Butts' residency at the time of his
election that was also addressed in Video One and Video Two, this time focusing on
remarks that the Mayor made about the issue during the 4/23/2013 Council meeting.
Ex. A-5.  It presents more than a dozen short clips of the Mayor addressing criticism
about his conduct in connection with the election, and then responds to each of these
points through original narration, images of public records, superimposed text, and
footage of from other official proceedings.  Id.  It concludes with an image of the
Mayor giving testimony at the 7/20/2010 meeting, with on-screen text and narration
saying, "James Butts…hypocrite."  Id. at 11:33-11:38.

●  **Video Six**: https://www.youtube.com/watch?v=a1p3l0OmhGM

Video Six is titled "Inglewood Mayor James Butts Lies, Hiding Dangerous
Traffic Problems At The Forum," or "Mayor James T Butts Jr Lies, Hiding
Dangerous Traffic Problems After Forum Event!"  Teixeira Decl. ¶ 3(f); Ex. A-6
(video); B-6 (screenshot).  Most of the 15-minute video consists of original footage
shot by Mr. Teixeira documenting traffic problems near the Forum, a well-known
Inglewood event venue.  Ex. A-6.  The video juxtaposes footage of drivers making
illegal turns, nearly getting into accidents, and fighting with traffic officers as local
residents complain of major detours, with short clips of Mayor Butts positively
characterizing the traffic situation in his remarks at the 2/11/2014 Council meeting.
Id.  In addition to the interspersed footage that is intended to contradict the Mayor's

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

comments by example, the video also criticizes the Mayor's remarks directly with on-screen text superimposed over the meeting footage, and narration accusing the Mayor of lying and trying to hide the traffic problems associated with the Forum.  Id.

### III.   PLAINTIFF'S COPYRIGHT CLAIM FAILS AS A MATTER OF LAW

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. Dismissal is warranted if no relief could be granted under any set of facts that could be proved consistent with the allegations.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  In making this determination, the court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party.  In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

When ruling on a motion to dismiss, a court may consider materials referred to in the complaint that form the basis of the claims, but that are not physically attached to the pleading.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (court deciding Rule 12(b)(6) motion may consider "documents incorporated into the complaint by reference").  See also Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (12(b)(6) motion properly granted by considering web pages referred to in the complaint and attached to defendant's motion).

Under the incorporation-by-reference doctrine, this Court may consider the content of the allegedly infringing videos and the underlying Council meeting videos, as they are referred to in the Complaint at Paragraph 19, and their content forms the basis for the City's claim.[4]  See Zella v. E.W. Scripps, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007) (dismissing copyright infringement claim for failure to state a claim based on the court's review of episodes of a television show incorporated into the

---

[4] A DVD with copies of the allegedly infringing videos is being concurrently submitted as Exhibit A.  See Notice of Lodging of DVDs, Ex. A; Teixeira Decl. ¶ 3. Screenshots of the YouTube pages displaying these videos, also referenced in the Complaint at Paragraph 19, are attached to the Teixeira Declaration as Exhibit B. DVDs with copies of four of the underlying City Council meeting videos are being concurrently submitted as Exhibits C-F.  Id. ¶¶ 5-7; Laidman Decl. ¶ 2; Notice of Lodging.  See also Mr. Teixeira's Concurrently Filed Request For Judicial Notice.

MOTION TO DISMISS
DWT 26446988v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

pleadings by reference); <u>Burnett v. Twentieth Century Fox Film Corp.</u>, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007) (granting Rule 12(b)(6) motion by considering content of television program referenced in, but not attached to, plaintiff's complaint for copyright infringement); <u>see</u> <u>also</u> <u>Daly v. Viacom, Inc.</u>, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (considering content of television programs incorporated by reference into complaint in dismissing claims under Rule 12(b)(6)).

As set forth below, Plaintiff's claim against Mr. Teixeira is legally deficient and should be dismissed with prejudice for several independent reasons.

**A.     The City Has No Copyright Interest In Its Public Meeting Videos.**

As a threshold matter, Inglewood's claim fails because its video recordings of its City Council meetings are not subject to copyright protection under California law.  While the Copyright Act precludes the federal government from copyrighting its works, it is silent as to the works of state and local government.  17 U.S.C. § 105. Consequently, "[s]tate law 'determines whether [a public official] may claim a copyright in his office's creations,'" and "'[e]ach state may determine whether the works of its government entities may be copyrighted.'"  <u>County of Santa Clara v. Superior Court</u>, 170 Cal. App. 4th 1301, 1331 (2009) (quoting <u>Microdecisions, Inc. v. Skinner</u>, 889 So.2d 871, 875-76 (2004)).  <u>See</u> <u>also</u> <u>Building Officials & Code Adm. v. Code Technology, Inc.</u>, 628 F.2d 730, 735-36 (1st Cir. 1980) ("[w]orks of state governments are therefore left available for copyright protection by the state or the individual author, <u>depending on state law and policy, and subject to exceptions dictated by public policy</u>…") (emphasis added; quotation omitted).

As explained by one copyright treatise, "[s]tates may, of course, refuse to permit assertion of copyright in state-created works; copyright is never imposed."  4 William F. Patry, Patry on Copyright § 4:81 (2015).  <u>See</u> <u>also</u> 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 5.14 (2014) (whether works of state and local government can be copyrighted is determined by "[t]urning to state law itself").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, California law precludes the City from asserting copyright protection to restrict the use of its video recordings of City Council meetings.

**1.     The City Cannot Copyright Its Public Meeting Videos Because California Law Does Not Specifically Authorize Such Protection.**

The Complaint identifies no authority – and Mr. Teixeira is aware of none – that authorizes the City to assert a copyright interest in what it concedes are public records documenting public meetings by its legislative body.  The only published authority to address this issue squarely held that California governmental agencies cannot assert copyright protection to restrict the use of such public records unless state law provides "an affirmative <u>grant of authority</u> to obtain and hold copyrights." <u>County of Santa Clara</u>, 170 Cal. App. 4th at 1333 (original emphasis).

In <u>County of Santa Clara</u>, after the trial court ordered the disclosure of a geographic information system ("GIS") "basemap" under the California Public Records Act ("CPRA"), the County argued that even if disclosure was required, it held a copyright interest that allowed it to restrict the requester's use of the basemap through a licensing agreement.  <u>Id.</u> at 1309.  The Court of Appeal rejected this argument and concluded that the County had no express authority for copyrighting the basemap, and thus "unrestricted disclosure [was] required."  <u>Id.</u> at 1335.

The court recognized at the outset that a public agency's assertion of copyright protection restricts the public's access to government information, and under the state Constitution, "restrictions on disclosure are narrowly construed."  <u>Id.</u> at 1332 (citing Cal. Const., art. I, § 3, subd. (b)).  California law does not contain an exception permitting agencies to limit the disclosure or dissemination of public records based on copyright law, and only a single provision of the CPRA addresses copyright at all. <u>Id.</u> at 1332.  That provision, Cal. Gov't Code § 6254.9, "acknowledge[s] copyright protection for software only," and "recognizes the availability of copyright protection

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for software in a proper case," but "provides no statutory authority for asserting <u>any other copyright interest</u>." <u>Id.</u> at 1334 (emphasis added).[5]

The court also emphasized two distinctive features of the CPRA:  (1) it "does not allow limitations on access to a public record based upon the purpose for which the record is being requested"; and (2) agencies are generally limited to charging no more than the "direct costs of duplication" when providing copies of public records. <u>Id.</u> at 1335 (citing Cal. Gov't Code §§ 6253(b); 6257.5).  The court favorably cited a Florida appellate decision which held that a similar provision in Florida's public records law "overrides a governmental agency's ability to claim a copyright in its work unless the legislature has expressly authorized a public records exemption." <u>Id.</u> at 1335 (quoting <u>Microdecisions</u>, 889 So.2d at 876).  "The same persuasive reasoning applies to the interplay between copyright law and California's public records law, with the result that <u>unrestricted disclosure is required</u>." <u>Id.</u> (emphasis added).

The court in <u>County of Santa Clara</u> bolstered its reasoning by noting that the "Legislature knows how to explicitly authorize public bodies to secure copyrights when it means to do so." <u>Id.</u> at 1333.  It cited examples of California statutes that expressly authorize certain agencies to secure copyrights in particular enumerated works, including Education Code §§ 1044, 35170, 72207 (authorizing county boards of education, school district boards, and community college district boards to secure copyrights), Health & Safety Code § 25201.11 (authorizing Department of Toxic Substances Control to secure copyrights in certain works, including "video

---

[5] In contrast to California's public records law, which contains no exception for copyright, the public records laws of several other states expressly authorize agencies to obtain and hold copyrights.  <u>See</u>, <u>e.g.</u>, Colo. Rev. Stat. § 24–72–203(4) (Colorado "political subdivisions are hereby specifically authorized to obtain and enforce" copyrights); Nevada Rev. Stat. § 239.010(1) (Nevada public records law expressly "does not supersede or in any manner affect the federal laws governing copyrights"); South Dakota Codified Laws § 1–27–1 (copies of public records available "unless federal copyright law otherwise provides"); Utah Code § 63G–2–201(10)(b) (Utah public records law provision specifically reserving "rights or protections granted to the governmental entity under federal copyright … law").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

recordings"), and Health & Safety Code § 13159.8 (State Fire Marshal authorized to copyright promotional examinations). Id.[6]

That the Legislature has explicitly granted certain state and local agencies the authority to secure copyrights in certain items necessarily leads to the conclusion that the default rule is that California public agencies cannot obtain and hold copyrights without such express authorization. Id.; See also Bruns v. E-Commerce Exchange, Inc., 51 Cal. 4th 717, 727 (2011) ("failure to include a requirement in one statute is significant when the legislative body has included that requirement in other statutes"). If public agencies such as the City of Inglewood could assert copyright protection in their public records absent such authority then all of these statutes would be redundant. See United States v. Vidal, 504 F.3d 1072, 1081 (9th Cir. 2007) (en banc) ("legislative enactments should not be construed to render their provisions mere surplusage"; interpreting California statute accordingly) (quotation omitted).

Applying these principles, the court in County of Santa Clara held that because the County could not identify any statute specifically authorizing it to copyright the GIS basemap at issue or to condition its release on a licensing agreement, it "must be disclosed as provided in the CPRA, without any such conditions or limitations." Id. at 1335-36 (emphasis added). Likewise, here the City of Inglewood has not identified any statute authorizing it to secure a copyright in its City Council meeting videos – because none exists – and therefore California law "overrides [its] ability to claim a copyright in its work," and "unrestricted disclosure is required." Id.

## 2. The City's Assertion Of Copyright In Its Public Meeting Videos Is Incompatible With Well-Established State Law And Public Policy.

Inglewood's argument for copyright protection is actually far weaker than the one at issue in County of Santa Clara, in which the County sought to copyright GIS

---

[6] See also Health & Safety Code § 130251.15 (California Health and Human Services Agency authorized to copyright certain documents).

MOTION TO DISMISS
DWT 26446988v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

basemaps.  Here, Inglewood is asserting copyright to block its citizen's use of City Council meeting videos to comment on governmental affairs.  While the Brown Act and CPRA do not explicitly address the issue of copyright (except as noted above), they embody a state public policy that strongly favors the broadest possible access to public records – especially public records like City Council meeting videos that go to the very heart of democratic self-governance – and they are plainly incompatible with the City's attempted assertion of copyright protection to limit public access.

The City of Inglewood conducts and records its Council meetings pursuant to the Brown Act, which mandates that "[a]ny audio or video recording of an open and public meeting made for whatever purpose by or at the direction of the local agency shall be subject to inspection pursuant to the California Public Records Act."  Cal. Gov't Code § 54953.5(b).  It also requires that members of the public be permitted to view public meeting videos "without charge on equipment made available by the local agency."  Id.  As public meeting videos are public records subject to disclosure under the CPRA, public agencies such as the City are restricted from charging members of the public who request copies of these videos more than the "direct costs of duplication."  Cal. Gov't Code § 6253(b).  See also North County Parents Org. v. Dep't of Education, 23 Cal. App. 4th 144, 147 (1994) (under the CPRA "the cost chargeable … for furnishing" copies of public records "is the cost of copying them"; the Legislature specified "that the sole charge should be that for duplication").[7]

These provisions are core features of a constitutional and statutory scheme that "maximizes the public's access to information."  Sierra Club v. Superior Court, 57 Cal. 4th 157, 175 (2013).  With respect to the CPRA, "[m]aximum disclosure of the

---

[7] As the City is barred from making any money from providing copies of these videos, it has no need for the commercial incentive to engage in creative activity that copyright law is designed to provide.  See New Era Publications International, ApS v. Henry Holt & Co., 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988) ("[i]t is important to recognize that the justification of the copyright law is the protection of the commercial interest of the artist/author.  It is not to coddle artistic vanity or to protect secrecy, but to stimulate creation by protecting its rewards.") (original emphasis).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conduct of governmental operations was to be promoted by the Act." <u>CBS, Inc. v.</u> <u>Block</u>, 42 Cal. 3d 646, 651-52 (1986).  Meanwhile, the Brown Act was intended "to facilitate public participation in all phases of local government decisionmaking," and must be "construed liberally in favor of openness."  <u>International Longshoremen's &</u> <u>Warehousemen's Union v. L.A. Export Terminal, Inc.</u>, 69 Cal. App. 4th 287, 293-94 (1999).  The Brown Act opens with a sweeping declaration of the law's intent:

> [T]he public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business … The people of this State do not yield their sovereignty to the agencies which serve them … The people insist on remaining informed <u>so that they may retain control over the instruments they have created</u>.

Cal. Gov't Code § 54950 (emphasis added).  Voters enshrined the right of access to public meetings and records in the state Constitution by approving Proposition 59 in 2004.  <u>See</u> <u>Sierra Club</u>, 57 Cal. 4th at 166 (citing Cal. Const. Art. 1, § 3(b)(1)-(2)).[8]

Because the California Constitution, Brown Act, and CPRA maximize access to public records so that citizens can scrutinize the actions of the governmental agencies that they control, these constitutional and statutory requirements cannot be reconciled with the City of Inglewood's unprecedented effort to limit the public's access to records of City Council meetings through copyright.[9]

---

[8] Tellingly, when the state Constitution was amended to incorporate the right of access it expressly included exceptions for the right of privacy and the pre-existing enumerated CPRA exemptions, but not for copyright.  <u>See</u> Cal. Const. Art. 1, § 3.

[9] The City's attempt to copyright video recordings of the official proceedings of its legislative body also runs afoul of more than a century of law making clear that "judicial opinions and statutes are in the public domain and are not subject to copyright."  <u>Building Officials</u>, 628 F.2d at 734.  <u>See also</u> Wheaton v. Peters, 33 U.S. (8 Pet.) 591 (1834); <u>Banks v. Manchester</u>, 128 U.S. 244 (1888).  This line of authority recognizes that "citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process."  <u>Building Officials</u>, 628 F.2d at 734 (quotation omitted).  The City Council meeting videos at issue here are public records memorializing this "democratic process."  <u>Id.</u>

MOTION TO DISMISS
DWT 26446988v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      Mr. Teixeira's Use Of Clips From City Council Meetings In His Political Commentaries Is Independently Protected By The Fair Use Doctrine.**

Even assuming for the sake of argument that the City could claim a copyright interest in its recordings of public meetings, its claim is independently barred by the fair use doctrine.  See 17 U.S.C. § 107 (Copyright Act provides that "the fair use of a copyrighted work … for purposes such as criticism, comment, [or] news reporting … is not an infringement of copyright").  Fair use balances "the interests of authors … in the control and exploitation of their [works] … on the one hand, and society's competing interest in the free flow of ideas, information, and commerce on the other hand[.]"  Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984).

**1.      Fair Use Is Applied Expansively Where, As Here, A Claim Implicates Constitutionally Protected Political Speech.**

First Amendment protections are "embodied" in the fair use doctrine.  Golan v. Holder, 132 S. Ct. 873, 890 (2012).  The "'considerable latitude for scholarship and comment' secured by the fair use doctrine protects the core value of free expression from excessive litigation and undue restriction."  Bouchat v. Baltimore Ravens Ltd. Partnership, 737 F.3d 932, 944 (4th Cir. 2013) (quoting Eldred v. Ashcroft, 537 U.S. 186, 220 (2003)).  The "breadth of fair use varies and where vital First Amendment concerns are implicated … that breadth expands and accords greater protection to what might otherwise constitute an infringement."  Wojnarowicz v. American Family Association, 745 F. Supp. 130, 147 (S.D.N.Y. 1990).

Here, the City's copyright claim directly targets Mr. Teixeira's exercise of political speech that lies at the very heart of the First Amendment.  As the Supreme Court has explained:

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.  This of course includes discussions of candidates, structures and forms of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

government, the manner in which government is operated or should be

operated, and all such matters relating to political processes.

Mills v. Alabama, 384 U.S. 214, 218-19 (1966).  As the City's claim targets Mr.

Teixeira's use of public records of City Council meetings to discuss governmental

affairs and criticize elected officials, "vital First Amendment concerns are

implicated," requiring the broadest possible application of the fair use doctrine.

Wojnarowicz, 745 F. Supp. at 147.

### 2.  Fair Use May Be Decided On A Motion To Dismiss.

The Ninth Circuit has held that an "assertion of fair use may be considered on

a motion to dismiss," where it does not require the resolution of any disputed issues

of material fact.  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 530 (9th Cir.

2008).[10]  Accordingly, courts routinely dismiss copyright claims at the pleading stage

where, as here, they can find fair use simply by reviewing the allegedly infringing

works, which are incorporated by reference into the complaint.  In Burnett, for

example, the court granted a Rule 12(b)(6) motion to dismiss comedienne Carol

Burnett's copyright claim stemming from a "crude" parody of her Charwoman

character on the television series "Family Guy."  491 F. Supp. 2d at 971-972.  After

reviewing the episode in question, the court determined that the use of Burnett's

work was a fair use as a matter of law and dismissed her claim.  Id. at 972.

Similarly, in Savage v. Council on American-Islamic Relations, 2008 U.S.

Dist. LEXIS 60545; 87 U.S.P.Q.2D 1730 (N.D. Cal. 2008), the court held that a

civil-liberties organization's posting of a segment from the plaintiff's radio show on

its website in order to criticize his anti-Muslim views and to encourage advertisers to

boycott his program was protected as a fair use, and granted the defendant's Rule

---

[10] See also Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1151 (9th Cir. 1986) ("[i]f there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

12(c) motion.  Id. at *25.  See also Sedgwick Claims Management Servs. v. Delsman, 2009 U.S. Dist. LEXIS 61825, at *20-21 (N.D. Cal. July 17, 2009) (finding as matter of law that defendant's use of two photographs of "WANTED" posters on blog as part of a critical commentary was protected fair use; granting motion to dismiss copyright-infringement claim); Righthaven v. Realty One Group, 2010 WL 4115413, *3 (D. Nev. Oct. 19, 2010) (granting defendants' Rule 12(b)(6) motion to dismiss copyright action based on fair use defense).

In Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir. 2012), the Seventh Circuit affirmed the dismissal at the pleading stage of a copyright claim based on a finding that it was an "obvious case of fair use." Id. at 692.  Because the allegedly infringing video was incorporated by reference into the pleadings, the court could "decide the merits of the claim without discovery or a trial" simply by viewing the works themselves.  Id.  See also Cariou v. Prince, 714 F.3d 694, 707 (2d Cir. 2013) (explaining that the court in Brownmark "rejected the appellant's argument that copyright infringement claims cannot be disposed of at the motion-to-dismiss stage"; holding that 25 works of art were "transformative as a matter of law" and protected by fair use based on court's review of the works themselves).  Similarly, this is also an "obvious case of fair use," which the Court can decide by reviewing the videos, the Complaint, and other materials incorporated by reference therein, without having to resolve any disputed factual issues.  Brownmark, 682 F.3d at 692.

### 3.     Each Statutory Factor Strongly Favors Fair Use.

Congress identified four non-exclusive factors to consider in determining whether a particular use of a copyrighted work is a fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107(1)-(4).  These factors must be considered

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

together, and none may be "treated in isolation." <u>Campbell</u>, 510 U.S. at 578.  As no single factor is dispositive, "the moving party is not required to prevail on every factor" to establish fair use, <u>Norse v. Henry Holt and Co.</u>, 847 F. Supp. 142, 145 (N.D. Cal. 1994), and "need not 'shut out' her opponent on the four factor tally to prevail." <u>Wright v. Warner Books</u>, 953 F. 2d 731, 740 (2d Cir. 1991).  Here, it is clear from the videos themselves that each factor strongly favors fair use.

### a.    The Purpose And Character Of The Use

Courts have recognized that "criticism of, and commentary on, [a] plaintiff's politics … is precisely what the Copyright Act envisions as a paradigmatic fair use." <u>Dhillon v. Does 1-10</u>, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014).  In <u>Hustler</u>, after the magazine published a parody ad describing the Rev. Jerry Falwell committing incest with his mother in an outhouse, Falwell displayed the piece on his TV show, and the political lobbying group Moral Majority used it as a fundraising mailer.  796 F.2d 1148 at 1149-50.  Hustler sued them for copyright infringement, but the District Court held that the claim was barred by the fair use doctrine, and the Ninth Circuit affirmed.  <u>Id.</u> at 1149.  The court acknowledged that the defendants used the Hustler piece in its entirety to solicit donations, and the use of the parody ad on Falwell's TV show "was also motivated by financial purposes." <u>Id.</u> at 1152.  Nonetheless, the court held that this factor favored a finding of fair use because the defendants "also used the copies to rebut the personal attack upon Falwell and make a political comment about pornography." <u>Id.</u> at 1153.[11]

---

[11] If this action proceeds, Mr. Teixeira will show that his political commentary videos are entirely non-commercial.  Nonetheless, for purposes of this Motion, the <u>Hustler</u> case makes clear that this factor favors fair use even taking as true the City's completely baseless assertion that he is somehow using City Council meeting clips to "generate income."  Cmplt. ¶ 17.  <u>See also Campbell</u>, 510 U.S. at 579 ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use"); <u>Consumers Union of United States, Inc. v. General Signal Corp.</u>, 724 F.2d 1044, 1049 (2d Cir. 1983) ("[a]lthough the purpose of [the] use undoubtedly is commercial, this fact alone does not defeat a fair use defense.  Almost all newspapers, books and magazines are published by commercial enterprises that seek a profit.") (citation omitted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Likewise, in <u>National Rifle Ass'n of America v. Handgun Control Federation of Ohio</u>, 15 F.3d 559 (6th Cir. 1994), the Sixth Circuit held that fair use protected a gun control group's use of part of an NRA newsletter in its own publication that supported legislation that the NRA opposed.  <u>Id.</u> at 560.  The court reasoned that the "document was used primarily in exercising [the defendant's] First Amendment speech rights to comment on public issues and to petition the government regarding legislation," and the "scope of the fair use doctrine is wider when the use relates to issues of public concern."  <u>Id.</u> at 562.  And in <u>Mattel Inc. v. Walking Mt. Prods.</u>, 353 F.3d 792, 802 (9th Cir. 2003), the Ninth Circuit held that the first fair use factor "weighs heavily in favor of" an artist who used the plaintiff's copyrighted Barbie dolls in photographs that expressed "social criticism" of "Barbie's influence on gender roles and the position of women in society."  <u>Id.</u> at 802.[12]

As in these cases, the first factor weighs heavily in favor of fair use here because Mr. Teixeira is engaged in core First Amendment activity by using portions of the City Council meeting videos to criticize City officials and comment on matters of public interest.  <u>See</u> Exs. A-1-A-6; Section III.B.1, <u>supra</u>.  In particular:

● Video One, Video Two, and Video Five concern Mayor Butts' qualifications for office, focusing on a controversy surrounding his residency at the time of the 2010 mayoral election.  <u>See</u> Exs. A-1, A-2, A-5.  Each video uses clips from City

---

[12] <u>See</u> <u>also</u> <u>Maxtone-Graham v. Burtchaell</u>, 803 F.2d 1253, 1260 (2d Cir. 1986) (fair use protected anti-abortion author's use of portions of book "to make the case against abortion"); <u>Kienitz v. Sconnie Nation LLC</u>, 965 F. Supp. 2d 1042, 1050 (W.D. Wis. 2013) (use of mayor's photo on t-shirt for "political critique"); <u>Caner v. Autry</u>, 16 F. Supp. 3d 689, 710 (W.D. Va. 2014) (using video "for the transformative purpose of criticizing Plaintiff"); <u>Dhillon</u>, 2014 WL 722592, at *5 (use of photo on website "in connection with an article criticizing the plaintiff's political views"); <u>Wojnarowicz</u>, 745 F. Supp. at 147 (use of plaintiff's artwork in a pamphlet designed "to stop public funding by the NEA of art works such as plaintiff's"); <u>Sedgwick</u>, 2009 U.S. Dist. LEXIS 61825, at *15 (use of plaintiff's photographs as "a vehicle for publicizing and criticizing [plaintiff's] alleged business practices"); <u>Savage</u>, 2008 U.S. Dist. LEXIS 60545, at *15-16 (use of audio of plaintiff's radio show "in order to criticize and comment on plaintiff's statements and views").

MOTION TO DISMISS
DWT 26446988v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Council meetings to criticize Mayor Butts' statements and conduct in connection with this political controversy, including his conduct at these meetings.  Id.

● Video Three uses clips from a Council meeting to criticize the City's response to Mr. Teixeira's CPRA request about alleged police misconduct by scrutinizing the Mayor's remarks and conduct at this Council meeting.  See Ex. A-3.

● Video Four juxtaposes the Mayor's comments at a press conference about a murder with his later comments on the matter at a City Council meeting in order to accuse the Mayor of exploiting the case for his political benefit.  See Ex. A-4.

● Video Six concerns dangerous traffic problems in the neighborhood surrounding the Forum, and it uses brief clips from Council meetings to criticize and evaluate Mayor Butts' position and comments on the traffic issue.  See Ex. A-6.

Mr. Teixeira's use of the meeting footage is also highly transformative.  In all six videos, the clips are heavily modified with his original narration and on-screen text, and juxtaposed with other material to emphasize Mr. Teixeira's political critiques of the Mayor.  Exs. A-1-A-6.  In this respect, this Court's decision in Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform, 868 F. Supp. 2d 962 (C.D. Cal. 2012), is on point.  There, the defendant took verbatim portions of the plaintiff's video, which was aimed at de-stigmatizing abortion, and spliced them together with graphic images and anti-abortion messages, among other alterations.  Id. at 966-67.  "The new background soundtrack, the visuals, and the juxtaposition of the new video clips with the original creates an entirely different impact on the viewer.  Thus, the accused Videos are transformative."  Id. at 978.

There can be no question from even the briefest review of Mr. Teixeira's critical political documentaries that they similarly transform the City's unadorned Council meeting videos into completely different works with an "entirely different impact on the viewer."  Id.  As "the goal of copyright … is generally furthered by the creation of transformative works" such as these, they "lie at the heart of the fair use

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

doctrine's guarantee of breathing space within the confines of copyright." <u>Campbell</u>, 510 U.S. at 579.  Consequently, this factor strongly favors a finding of fair use.

### b.     The Nature Of The Allegedly Copyrighted Works

The "scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved," <u>Hustler</u>, 796 F.2d at 1153-54, as the "law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."  <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 563 (1985).  <u>See</u> <u>also</u> <u>Swatch Group Management Services Ltd. v. Bloomberg L.P.</u>, 756 F.3d 73, 89 (2d Cir. 2014) (factor favored fair use where plaintiff's copyright in a financial earnings telephone call was "at best thin" as "the call's sole purpose was to convey financial information").  Here, the underlying works are the City's videos of its City Council meetings, virtually all of which are basic, unadorned presentations of the official proceedings. Cmplt. ¶ 19; Exs. A, C-F; Section II, <u>supra</u>.  As the City's copyright in these purely informational works is "at best thin" (assuming it has any copyright interest at all), this factor favors fair use.  <u>Swatch Group</u>, 756 F.3d at 89.

### c.     The Amount And Substantiality Used

The third factor asks if the use was "reasonable in relation to the purpose of the copying," as "the extent of permissible copying varies with the purpose and character of the use." <u>Campbell</u>, 510 U.S. at 586-87.  As such, it is closely related to the first factor. <u>Id.</u>  Thus in <u>Northland</u>, the court held that this factor favored fair use even where the defendant used several minutes of plaintiff's videos "verbatim" in its own works because it did so to criticize the plaintiff and make a political point.  868 F. Supp. 2d at 980-82.  As the court explained, the underlying video was "not easy to conjure up in a sound byte or a single image," and "video … should be afforded greater leeway in determining whether a defendant borrowed in excess."  <u>Id.</u> at 981.

Similarly, in <u>Savage</u>, the court held that this factor favored fair use where the defendants posted on their website a four minute, thirteen-second audio clip from the plaintiff's two-hour radio show, along with "a detailed criticism of plaintiff's anti-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Muslim" views.  2008 U.S. Dist. LEXIS 60545, at *3-4.  The amount used "was reasonably necessary to convey the extent of plaintiff's comments" so that the defendants could "comment on and rebut" them.  Id. at *21.  See also Swatch, 756 F.3d at 90 (news service's use of an entire financial earnings call "was reasonable in light of its purpose of disseminating important financial information").[13]

As in these authorities, here it is readily apparent from the videos that the amount of City Council meeting footage used by Mr. Teixeira is "reasonable in relation to the purpose" of criticizing City officials' political positions and conduct at these official proceedings.  Campbell, 510 U.S. at 586-87.  The videos present brief clips of the Mayor making statements and taking certain actions at the meetings, and then directly respond to his remarks and conduct through on-screen text, narration, and the juxtaposition of other footage and visual and audio materials.  See Exs. A-1-A-6.  The videos use a reasonable amount of the footage that is necessary to convey the substance of the Mayor's positions and conduct to facilitate Mr. Teixeira's response.  And in any event, the public meeting footage included in Mr. Teixeira's works, and in particular the few "verbatim" clips, are extremely brief in relation to the City's full meeting videos that typically lasted hours:

● Video One and Video Two are both about 15 minutes.  See Section II, supra. They each use clips from the City's video of the 7/20/2010 Council meeting, which is more than four hours and 40 minutes.  Id.  The longest any meeting clip runs in either Video One or Video Two without some sort of audio or visual modification is 40 seconds; the next longest is about 15 seconds, and most of the unmodified clips are 10 seconds or less.  See Exs. A-1-A-2.

---

[13] In the closely analogous context of parody, courts "have consistently held that a parody entitles its creator under the fair use doctrine to more extensive use of the copied work than is ordinarily allowed[.]"  Rogers v. Koons, 960 F.2d 301, 310 (2d Cir. 1992).  See also Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 116 (2d Cir. 1998) (third factor has "little, if any, weight against fair use so long as the first and fourth factors favor the parodist … even though the degree of copying of protectable elements was extensive").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

● Video Three is three minutes and 43 seconds, and it uses clips from the 5/22/2012 meeting video, which lasts more than three hours. See Section II, supra. The longest any meeting video clip runs in Video Three without audio or visual modification is about five seconds. See Ex. A-3.

● Video Four is 15 minutes. See Section II, supra. The longest any meeting video clip runs in Video Three without audio or visual modification is about three seconds. Id.; Ex. A-4.[14]

● Video Five is 11 minutes and 38 seconds, and it uses clips from the video of the 4/23/2013 council meeting, which is more than two hours and 42 minutes long, and the 7/20/2010 meeting, which is more than four hours and 40 minutes. See Section II, supra. The longest any meeting video clip runs in Video Five without audio or visual modification is about one minute and 13 seconds. See Ex. A-5.

● Video Six is 15 minutes, and it uses clips from the 2/11/2014 meeting video, which is more than two hours and 37 minutes longer. See Section II, supra. The longest any meeting video clip runs in Video Six without audio or visual modification is about 11 seconds. See Ex. A-6.

As Mr. Teixeira's videos use very brief clips from the City's lengthy Council meeting videos, and the amount used is reasonable in light of these transformative works' purpose of political criticism, this factor also favors a finding of fair use.

### d.    The Effect On The Market

Not only does the fourth factor unequivocally favor fair use, this inquiry exposes the completely baseless nature of this action. First, the City of Inglewood cannot seriously claim any economic harm to the market or potential market for its

---

[14] The City's allegation that Video Four uses clips from a "4/11/2013" Council meeting appears to be in error, and Mr. Teixeira has not yet been able to obtain the City's full video recording of the City Council meeting that apparently does appear in Video Four. See Teixeira Decl. ¶ 9. But regardless of the precise length of the underlying City Council meeting video, the third factor clearly favors fair use with respect to Video Four as a matter of law as the clips that it uses are extremely brief and reasonable in length in light of the highly transformative purpose of the work.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

City Council meeting videos because there can be no such market as a matter of law. Because the City is legally prohibited from making money from the distribution of these videos, there can be no "market" harmed by Mr. Teixeira's use.  <u>See</u> discussion <u>supra</u> at Section III.A; Cal. Gov't Code §§ 6253(b), 54953.5(b).

<u>Second</u>, Mr. Teixeira's highly transformative videos, offering harsh political critiques with titles like "Lying Politicians" and "James T. Butts Jr. <u>exploits</u> the Murder of Fredrick Martin for his own political benefit," are obviously no substitute for the City's unvarnished recordings of its public meetings.  <u>Compare</u> Exs. A-1-A-6, <u>with</u> Exs. C-F.  As the Ninth Circuit explained in finding that the parody "When Sonny Sniffs Glue" made fair use of the 1950s standard "When Sunny Gets Blue," this is "not a case in which commercial substitution is likely" because the "two works do not fulfill the same demand." <u>Fisher</u>, 794 F.2d at 438.  <u>See also</u> <u>Seltzer v. Green Day, Inc.</u>, 725 F.3d 1170, 1179 (9th Cir. 2013) ("there is no reasonable argument that conduct of the sort engaged in by [defendant] is a substitute for the primary market for [plaintiff's] art"); <u>Kienitz</u>, 965 F. Supp. 2d at 1054 (shirts mockingly using mayor's image "were not a substitute for and did not reduce the demand for" straightforward portrait of the politician; "Anyone seeking a photographic portrait— or even just an accurate representative image—of the mayor would not even consider the garish image of the mayor splashed onto defendants' … shirts.").

<u>Third</u>, with no conceivable economic harm, the City is transparently bringing this action because it finds Mr. Teixeira's criticism offensive.  But "[i]t is not relevant that a use may damage the original's value through criticism." <u>Northland</u>, 868 F. Supp. 2d at 982.  "Biting criticism suppresses demand; copyright infringement usurps it," and therefore for purposes of the fourth factor, "critical impact must be excluded." <u>Fisher</u>, 794 F.2d at 437-48.  <u>See also</u> <u>Savage</u>, 2008 U.S. Dist. LEXIS 60545, at *24 (fourth factor "strongly favor[ed]" defendants where "the effect of defendants' usage is limited to the public criticism and condemnation of the ideas within the original work, not market damage in the economic sense").

MOTION TO DISMISS
DWT 26446989v5 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Because Mr. Teixeira's "biting criticism" of City officials' comments and conduct in the City Council meeting videos is no substitute for the original works, which can have no commercial market as a matter of law, this factor weighs strongly in favor of fair use, as do all of the statutory factors.  <u>Fisher</u>, 794 F.2d at 438.

## IV.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

A claim should be dismissed with prejudice where "any amendment would be an exercise in futility."  <u>Steckman v. Hart Brewing</u>, 143 F.3d 1293, 1298 (9th Cir. 1998).  This is just such an instance:  because the underlying works are not subject to copyright protection as a matter of law, no amendment could cure the legal defects in the City's Complaint.  <u>See</u> Section III.A, <u>supra</u>.  And where, as here, it is apparent from reviewing the allegedly infringing works themselves that they are obvious examples of fair use, courts have not hesitated to dismiss copyright claims at the pleading stage without leave to amend.  <u>See</u>, <u>e.g.</u>, <u>Burnett</u>, 491 F. Supp. 2d at 971-72 (granting motion to dismiss without leave to amend because factors "weigh strongly in favor of a finding of fair use" and "plaintiffs could not allege any additional facts which might cure defects in the complaint"); <u>Savage</u>, 2008 U.S. Dist. LEXIS 60545, at *25-26 (same); <u>Sedgwick</u>, 2009 U.S. Dist. LEXIS 61825, at *20-21 (same).

## V.    CONCLUSION

For all of the foregoing reasons, Mr. Teixeira respectfully requests that this Court dismiss the City's Complaint in its entirety, with prejudice.

DATED: April 16, 2015

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
DAN LAIDMAN
DIANA PALACIOS


By: /s/ Dan Laidman
               Dan Laidman


Attorneys for Defendant Joseph Teixeira

25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899