JoAnna M. Esty (State Bar No. 147903)
Majesty Law Group PLC
6080 Center Drive
6th Floor
Los Angeles, CA 90045
jmesty@majestylaw.com

Telephone:     (310) 376-2512
Facsimile:      (888) 618-0360

Attorneys for Plaintiff City of Inglewood.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF INGLEWOOD, a public entity<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH TEIXEIRA and Does 1-10,<br><br>Defendants. | Case No. 2:15-CV-01815-MWF-MRW<br><br>**CONSOLIDATED 1) OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; 2) OPPOSITION TO DEFENDANT'S MOTION TO STRIKE; AND, 3) OPPOSITION TO DEFENDANT'S REQUEST TO TAKE JUDICIAL NOTICE**<br><br>Hearing Date:  June 22, 2015<br>Time:  10:00 a.m.<br>Courtroom:  1600<br><br>Hon. Michael W. Fitzgerald, Judge |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................. 1

II. FACTS ALLEGED .......................................................................... 4

III. AUTHORITY ................................................................................ 4

    A.  LEGAL STANDARD FOR A MOTION TO DISMISS ........................ 4

    B.  LEGAL STANDARD FOR A MOTION TO STRIKE ........................... 5

    C.  LEGAL STANDARD FOR JUDICIAL NOTICE ................................. 6

IV. ARGUMENT ................................................................................ 7

    A.  THERE IS NO FIRST AMENDMENT RIGHT TO PLAGARIZE
        BY REPUBLISHING SUBSTANTIALLY ALL OF A
        COPYRIGHTED WORK ....................................................... 8

    B.  THE FAIR USE DEFENSE DOES NOT APPLY HERE AS
        EVERY FAIR USE FACTOR FAVORS THE PLAINTIFF ............... 9

        1.  The Defendant's Copying is Commercial and Not
            Transformative .................................................... 10

        2.  The Copyrighted Works Are Creative And Original
            Expression ......................................................... 12

        3.  The Defendant Steals the Copyrighted Works ............. 13

        4.  The Defendant Diverts Traffic From the Copyrighted Works ...... 14

    C.  THE COPYRIGHTED WORKS ARE REGISTERABLE ................... 15

    D.  RULE 12(f) DOES NOT AUTHORIZE THE STRIKING OF
        PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES .................... 19

    E.  JUDICIAL NOTICE OF THE DEFENDANT'S WEBSITE AND
        CONTENTS IS IMPROPER ................................................ 21

V. CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

Page

**Cases**

*36 Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66, 70 (2d Cir. 1998). ..................................................................... 7

*Alvary v. United States*,
302 F.2d 790, 794 (2d Cir. 1962)) ................................................................. 7

*Am. Prairie Constr. Co. v. Hoich*,
560 F.3d 780, 798 (8th Cir. 2009) ................................................................. 7

*American Geophysical Union v. Texaco Inc.*,
60 F.3d 913, 918 (2d Cir. 1995) ....................................................... 10, 11, 13

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ........................................................ 5

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522, 1530 (S.D.N.Y. 1991) .................................................. 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 4, 5

*Burrow-Giles Lithographic Co. v. Sarony*,
111 U.S. 53, (1884) ..................................................................................... 13

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569, 579 (1995) ....................................................................... 10, 11

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569, 589 (1994) ....................................................................... 13, 14

*Car-Freshner Corp. v. Getty Images, Inc.*,
822 F. Supp. 2d 167, 175 (N.D.N.Y. 2011) ................................................ 23

*City of Inglewood vs. City of Chicago*,
U.S. District Court for the Central District of California,
Civ. 02-4594(AJWx)) ................................................................................. 17

*Columbia Pictures v. Miramax Films Corp.*,
11 F.Supp.2d 1179, 1187 (C.D. Cal. 1998) ................................................ 10

*Conley v. Gibson*,
355 U.S. 41, 45-45 (1957) ............................................................................ 5

*County of Santa Clara v. Superior Court*,
170 Cal. App. 4th 1301, 1333 (2009) ..................................................... 17, 18

*D.C. Comics Inc. v. Reel Fantasy, Inc.*,
698 F.2d 24, 28 (2d Cir. 1982) ................................................................... 15

ii

*Desaigoudar v. Meyercord*,
   223 F.3d 1020, 1021 (9th Cir. 2001) ................................................................ 5

*Fantasy, Inc. v. Fogerty*,
   984 F. 2d 1524, 1527 (9th Cir. 1993) ..................................................... 5, 6, 20

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 345 (1991). ............................................................................. 12

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994). ....................................................................................... 6

*Folsom v. Marsh*,
   9 F.Cas. 342, 348 (D. Mass. 1841) ................................................................ 10

*Gilligan v. Jamco Develop. Corp.*,
   197 F.3d 246, 249 (9th Cir. 1997) ................................................................... 5

Hancock v. Hartford Life & Accident Ins. Co.,
   No. CIV 2:06-CV-00208-FCD-DAD,
   2006 U.S. Dist. LEXIS 39774, at *12 (E.D. Cal. June 14, 2006) .................... 23

*Harper & Row v. Nation Enterprises*,
   471 U.S. 539, 554-55 (1985) ....................................................................... 8, 9

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
   796 F.2d 1148, 1155 (9th Cir. 1986) .............................................................. 13

In re Easysaver Rewards Litig.,
   737 F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2010) ........................................... 23

In re Pointer,
   346 B.R. 585, 586 (D. Mass. 2006) ................................................................. 23

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104, 108 (2d Cir. 1998) .............................................................. 11, 14

*Korematsu v. United States*,
   584 F.Supp. 1406, 1415 (N.D. Cal. 1984) ....................................................... 6

LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C. XXIII,
   287 F.3d 279, 290 (3d Cir. 2002). .................................................................. 22

*Los Angeles News Service v. Tullo*,
   973 F.2d 791 (9th Cir. 1992) .......................................................................... 16

*Los Angeles Times v. Free Republic*,
   2000 U.S. Dist. LEXIS 5669 (C.D. Cal. March 31, 2000) ............................. 7, 8

Meeker v. Belridge Water Storage Dist.,
   No. 1:05-CV-00603 OWW SMS, 2006 U.S. Dist. LEXIS 91775,
   at *33 (E.D. Cal. Oct. 18, 2006). .................................................................... 22

iii

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,*
    166 F.3d 65, 72 (2d Cir. 1999) ...................................................................... 11, 13

*Point Ruston, L.L.C. v. Pac. Nw. Reg'l*
    *Council of United Bhd. of Carpenters & Joiners of Am.,*
    658 F. Supp. 2d 1266, 1279 (W.D. Wash. 2009) .................................................. 7

*Sperry v. Florida*, 373 U.S. 379 (1963) ........................................................... 18, 19

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,*
    786 F.2d 1440, 1449 (9th Cir. 1986) ................................................................... 14

*United States v. S. Cal. Edison Co.*, 300 F.Supp. 2d 964, 975 (E.D.
    Cal. 2004). ................................................................................................................. 6

*Whittlestone, Inc. v. Handi-Craft Company*, 618 F.3d 970, 973 (9th Cir.
    2010) ............................................................................................ 5, 6, 19, 20, 21

## STATUTES

17 U.S.C.

    §§ 101 et seq ......................................................................................... 2, 15

    § 102(a) ....................................................................................................... 12

    § 107 .............................................................................................. 2, 9, 10, 15

    § 107(4) ....................................................................................................... 14

    § 412 ................................................................................................... 6, 20, 21

Cal. Gov't Code §§ 6250 - 6276.48 ......................................................... 17

## RULES

Federal Rules of Civil Procedure

    Rule 8(a) ...................................................................................................... 3

    Rule 12(b)(6) .................................................................. 2, 4, 5, 20, 21, 22

    Rule 12(f) ................................................................ 3, 5, 19, 20, 21

    Rule 56 .......................................................................................... 3, 20, 22

Federal Rules of Evidence

    Rule 201 .......................................................................... 6, 7, 22, 23

    Rule 201(b). ................................................................................. 6, 7

Opposition to Motion to Dismiss

**<u>TREATISES</u>**

Nimmer on Copyright, Vol. 3, § 13.05[D][1] .................................................. 12, 14

Opposition to Motion to Dismiss

Plaintiff, the City of Inglewood (the "City" or "Plaintiff") respectfully replies to Defendant Joseph Teixeira's Motion to Dismiss Plaintiff's Complaint and says:

## I. INTRODUCTION

This is a case about the illegal copying and distributing of videos that are copyrighted by the City – in other words, about copyright infringement. A copyright infringement plaintiff must prove: (1) ownership of the copyright; and (2) copying by the defendant. The Complaint details how the Defendant has taken the copyrighted videos of the City's Council meetings (the "Copyrighted Works"), which the City has posted on the Internet and/or otherwise made available for its constituents to view. The Defendant adulterates the Copyrighted Works by manipulating and adding derogatory comments, and publishes the derivative works on his own websites for distribution. Defendant claims that his wholesale and continuous infringement of the Copyrighted Works is protected by the affirmative defense of fair use. Nothing could be further from the truth.

Despite Defendant's attempt to create the appearance of a serious First Amendment issue, this case has nothing to do with the First Amendment. Rather, this case is simply about Defendant's desire to steal the Copyrighted Works that the City has created at its own expense, instead of linking to them. The City does not seek to impinge on the Defendant's First Amendment right to comment on the Copyrighted Works. Defendant can comment. All the City asks is that the Defendant stop posting adulterated unauthorized copies of the Copyrighted Works.

While the Defendant trumpets his support for the First Amendment, his arguments, if accepted by this Court, would actually totally undermine the First Amendment. Defendant seeks to deprive copyright holders of their copyrights, which would eliminate the economic incentives that copyrights protect. If Defendant succeeds, the result would be less speech, not more, because individuals

1

will lose the economic incentive to create new works.  It is the Defendant who seeks to undermine the First Amendment, not the Plaintiff.

The Defendant has moved to dismiss the Complaint under Fed. Rule Civ. P. 12(b)(6) for failure to state a federal claim.  The Defendant erroneously claims that the Copyrighted Works are not registerable.  He is wrong.  The U.S. Constitution and the Copyright Act provide for registration of the Copyrighted Works.  At the U.S. Copyright Office there are registrations in the name of other municipalities in California (*e.g.*, City of Los Angeles, City of Pasadena). The U.S. Constitution grants to Congress the power to administer over copyrights and patents. The Copyright Law provides that original works are copyrighted on creation, and the U.S. Copyright Office has the authority to register them.  The Supremacy Clause of the U.S. Constitution prohibits states from impinging on federal authority reserved for the U.S. Government, where, as here, there is no compelling and overriding state interest to do so.  California has not prohibited the U.S. Copyright Office from registering the Copyrighted Works.

The Defendant claims that even if the Copyrighted Works were registerable, his defense to unsanctioned use of the Copyrighted Works is the fair use defense. The Copyright Act (Title 17 of the United States Code) controls fair use. The fair use doctrine has never allowed such systematic infringement of copyrighted works for years at a time.  If it did, hundreds of websites could republish any copyright holder's videos around the world.  Copyrights would become meaningless if such wholesale theft were tolerated.

Section 107 establishes a balancing test of four factors, usually referred to as purpose of use, nature of copyrighted (source) work, substantiality, and market effect. Because this *is* a balancing test, no one factor – however strongly that one factor favors one side or the other in the dispute – ever controls the result. Evaluating these factors typically raises questions of fact that are decided by the

2

trier of fact, and are not appropriate for disposition by a motion to dismiss. The Defendant attempts to circumvent the evaluation of the fair use defense by trying to raising it as a *fait accompli*, without giving the Plaintiff the opportunity to rebut. Such foreclosure is not appropriate. Submission of evidence by the City to support its position would demonstrate that this defense is not available to the Defendant. Proper evidentiary development and Court evaluation of the balancing of the four factors will show that the Defendant is not entitled to use the fair use defense.

In determining whether a motion to dismiss should be granted the Court must consider those facts alleged in the Complaint, accepting the allegations as true and drawing all logical inferences in favor of the Plaintiff. Here, the factual allegations of the Complaint more than satisfy the liberal pleading standards of Fed. R. Civ. P. 8(a). Defendant largely ignores the facts alleged in the Complaint, and instead misrepresents and mischaracterizes or omits, and contradicts the factual allegations of the Complaint; Defendant asks the Court to *sua sponte* consider information pulled from the Internet which is unauthenticated, under an inappropriate request for judicial notice, or a misrepresentation that the Defendant's videos are incorporated by reference. (It is the Copyrighted Works that are incorporated by reference by the Plaintiff.) Defendant improperly submits his infringing videos as evidence for the Court to consider, and asks the Court to evaluate evidence that is beyond the four corners of the Complaint in deciding the motion to dismiss. Certainly, if the Court were to consider the information proffered by the Defendant as exhibits, such information would turn the motion into one for summary judgment under Fed. Rule of Civ. Pro. 56, and the Plaintiff would request that the Court permit a period for discovery so that the City has the opportunity to provide a full and complete rebuttal to the Defendant's factual allegations.

Regarding Defendant's motion to strike, Rule 12(f) of the Federal Rules of

3

Civil Procedure does not authorize the Court to strike a claim for attorneys' fees on the ground that they are precluded as a matter of law because courts may not resolve factual or legal issues that would be the basis for granting of attorneys' fees in deciding a motion to strike.

## II. FACTS ALLEGED

Plaintiff, the City of Inglewood, is located in the greater Los Angeles area. The City has videotapes of its Council meetings made. The Plaintiff is the copyright owner of exclusive rights under United States copyright law with respect to certain its video recordings – the Copyrighted Works. (Complaint, ¶ 14) The Defendant, without the permission or consent of Plaintiff, has made derivative works of the Copyrighted Works by reproducing the Copyrighted Works in substantial part and posting them on the Internet. The Defendant lives in the City of Inglewood and is trading as Inglewoodwatchdog.wix.com and is also known as Dehol Trouth. (Complaint, ¶ 11) The derivative works ("Infringing Copies") have no critical bearing on the substance or style of the original composition merely use the Copyrighted Works to get attention, generate income, and avoid having to create Defendant's own legitimate videos. (Complaint, ¶ 17) The Defendant has used and continues to use, online media distribution to distribute the Infringing Copies to the public, and/or to make the Infringing Copies available for distribution to others. (Complaint, ¶ 18) The infringing acts of the Defendant are willful and intentional, in disregard of and with indifference to the rights of the City. (Complaint, ¶ 20)

## III. AUTHORITY

### A. LEGAL STANDARD FOR A MOTION TO DISMISS

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); see Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6)

4

should be granted only when there are insufficient facts to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.  In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court clarified that the *Twombly* plausibility pleadings standard applies to "all civil actions." *Iqbal*, 129 S. Ct. at 1953.  Plaintiff's Complaint fully meets this pleading standard.  A plaintiff is not required to prove factual allegations are true at the pleading stage.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") is viewed with disfavor by the courts and is rarely granted.  *Gilligan v. Jamco Develop. Corp*., 197 F.3d 246, 249 (9th Cir. 1997)  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id*. at 248 citing *Conley v. Gibson*, 355 U.S. 41, 45-45 (1957)  In considering a motion to dismiss, courts must accept as true all allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Twombly*, 550 U.S. at 545; *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2001)

## B.   LEGAL STANDARD FOR A MOTION TO STRIKE

FRCP Rule 12(f) does not authorize courts to strike such matters as requests for damages or requests for counsel fees.  Rule 12(f) states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...."  *Whittlestone, Inc. v. Handi-Craft Company*, 618 F.3d 970, 973 (9th Cir. 2010) quoting *Fantasy, Inc. v. Fogerty*, 984

5

F. 2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds* by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Where, as here, the issue of whether and to what extent the Plaintiff will be entitled to claim attorneys' fees will depend on the development of the facts of the case and understanding the full extent of the Defendant's infringing activity. Such a claim is not redundant, immaterial, impertinent or scandalous.  Whether, as the Defendant claims, 17 U.S.C. § 412 will act as a bar to the Plaintiff's claim for attorney's fees can only be ascertained after the full extent of the Defendant's acts of infringement are known and the statute is applied.  This Court cannot rely on a supporting declaration of a Defendant who alleges that all of his acts of infringement fall outside the scope of what the statute permits as a basis for granting a motion to strike.  Courts may not resolve "disputed and substantial factual or legal issue[s] in deciding ... a motion to strike."  *Whittlestone, Inc.*, 618 F. 3d at 973.

### C.   LEGAL STANDARD FOR JUDICIAL NOTICE

Courts may judicially notice a fact that is not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean."  *United States v. S. Cal. Edison Co.*, 300 F.Supp. 2d 964, 975 (E.D. Cal. 2004). "Care must be taken that Rule 201 not be used as a substitute for more rigorous evidentiary requirements and careful factfinding." *Korematsu v. United States*, 584 F.Supp. 1406, 1415 (N.D. Cal. 1984)  "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in

6

determining that a fact is beyond controversy under Rule 201(b)." *36 Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc*., 146 F.3d 66, 70 (2d Cir. 1998).

While a court has considerable discretion in determining whether and when to judicially notice facts relevant to the resolution of a case, it cannot bypass or ignore the basic requirements of the rules of evidence by opting to use a judicial notice shortcut. For example, in holding that a defamation claim survived a defendant's motion for judgment on the pleadings, one district court declined to take judicial notice of a YouTube video on the Internet, pointing to questions of authenticity regarding the proposed evidence. *Point Ruston, L.L.C. v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am*., 658 F. Supp. 2d 1266, 1279 (W.D. Wash. 2009).

Rule 201 also states that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information."   Although the rule does not identify just what sort of information, courts must be provided with fairly specific details.  Without such details, the information can be called into question. "While courts are often required to conduct independent research regarding questions of law, '[o]n fact questions, the court should not use the doctrine of judicial notice to go outside the record unless the facts are matters of common knowledge or are capable of certain verification.'" *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 798 (8th Cir. 2009) (quoting *Alvary v. United States*, 302 F.2d 790, 794 (2d Cir. 1962)).

## IV. ARGUMENT

Guidance for the resolution of the free speech and fair use issues in this case is found in cases such as *Los Angeles Times v. Free Republic*, 2000 U.S. Dist. LEXIS 5669 (C.D. Cal. March 31, 2000), a case involving a strikingly similar factual scenario.  (See Exhibit 1, Order Granting Plaintiffs' Motion for Partial

Summary Judgment and Denying Defendants' Motion for Summary Judgment, ECF 73)   In the *Los Angeles Times* case, the plaintiffs, Los Angeles Times and The Washington Post Company published newspapers in print and online versions. Defendant Free Republic posted the newspaper articles verbatim from the Plaintiffs' online versions of its newspapers and permitted visitors to its website to post comments on the newspaper articles, similar to what the Defendant in the present case now does with the Copyrighted Works of the Plaintiff.  In a scholarly opinion, Judge Morrow rejected the defendants' free speech argument and analyzed the fair argument to find in favor of the plaintiffs.  She followed *Harper & Row v. Nation Enterprises*, 471 U.S.  539, 554-55 (1985) and reflect that in *Harper & Row*:

> . . . defendant's First Amendment argument that material could be copied because it was "newsworthy," [was rejected] and "[the] inquiry [was limited] to 'the traditional equities of fair use,' unexpanded by any free speech concerns."  [Citations omitted.]

Exhibit 1 at page 39.

### A.   THERE IS NO FIRST AMENDMENT RIGHT TO PLAGARIZE BY REPUBLISHING SUBSTANTIALLY ALL OF A COPYRIGHTED WORK

In spite of the Defendant's assertions to the contrary, the Plaintiff has never sought any relief that would shut down the Defendant's websites.  The City does not seek to dictate what the Defendant can and cannot say, nor claim any monopoly on the facts contained in the Copyrighted Works.  The City is not trying to impinge on the Defendant right to freedom of speech.  All the Plaintiff want is for the Defendant to stop posting substantially all of the full Copyright Works with Defendant's comments posted on top of them.

What is really going on here is that the Defendant wants to criticize the City without doing his own work.  What he likes about infringing Plaintiff's copyright

rights is simply that – particularly with the Internet – it is extremely easy, and essentially cost free.  The Defendant takes the position that anyone who wants to criticize or comment on anyone else's work would be entitled to make a copy of it (and for free).  A person could go into a bookstore, for example, and make a copy of an entire book (instead of buying it) because they do not just want to read it, they want to "comment" on it.  If Defendant's argument is adopted, anyone could copy hundreds of books and articles so they could "comment" on them.  Then they could scan this library of books and articles, and post them on the Internet with his "comments."  To make his websites more appealing, he might also decide to "comment" on photographs, paintings, music, documentaries, and movies.  Copyright law would be eviscerated if Defendant's argument is adopted.

The Defendant does not want copyright laws to be enforced.  This would have as pernicious an effect on the First Amendment as anything imaginable.  It would destroy long existing incentives to create and publish works of authorship in various media, including the Internet.  *Harper & Row*, 471 U.S.  at 554-55 ("The obvious benefit to author and public alike of assuring authors the leisure to develop their ideas free from fear of expropriation outweighs any short-term 'news value' to be gained from premature publication of the author's expression.").  If authors cannot expect compensation for their creative works, they will stop creating them.  *Id*.  Not only does the First Amendment not compel this, to allow this would undermine the very First Amendment values that the Defendant so ardently claims he believes in.  This would deprive authors of any economic incentive to speak.  The result: less free speech, not more.

**B.**  **THE FAIR USE DEFENSE DOES NOT APPLY HERE**
**AS EVERY FAIR USE FACTOR FAVORS THE PLAINTIFF**

The fair use doctrine, codified at 17 U.S.C. § 107, permits the reproduction

9

of copyrighted works for certain purposes. Section 107 sets forth four nonexclusive factors to be considered in determining whether a defendant's copying is a fair use. Consideration of the four factors requires examination and determination of factual issues. The factors are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work . . ." 17 U.S.C. § 107. Because the fair use doctrine is an affirmative defense to a claim of copyright infringement, the Defendant carries the burden of proof on the issue. *American Geophysical Union v. Texaco Inc*., 60 F.3d 913, 918 (2d Cir. 1995); *see also*, *Columbia Pictures v. Miramax Films Corp*., 11 F.Supp.2d 1179, 1187 (C.D. Cal. 1998) Here, there is no evidence that the Court could presently rely on to find as a matter of law that the fair use defense applies. Such an inquiry must be reserved for the trier of fact. Even if the Court were to consider the fair use defense at the pleading stage, the Defendant has not met his burden of proving fair use.

        1. <u>The Defendant's Copying is Commercial and Not Transformative</u>

      The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. This factor considers whether "the new work 'merely supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1995) (quoting *Folsom v. Marsh*, 9 F.Cas. 342, 348 (D. Mass. 1841)). ". . . [T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510

10

U.S. at 579.  The critical inquiry under this factor is to determine whether the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998);  *Campbell* 510 U.S. at 578 ("central inquiry").  The Plaintiff alleges (Complaint ¶ 14) that the Defendant merely republished substantially all of Plaintiff's unaltered videotapes of its Council meetings, with Defendant's derogatory comments overlaid on top.  This is not transformative in the least.  *Infinity Broadcast*, 150 F.3d at 108 ("simply tak[ing] [plaintiff's unaltered broadcasts] and market[ing] them to a specific clientele" is not transformative under the first factor; fair use not found);  *Basic Books, Inc. v. Kinko's Graphics Corp*., 758 F. Supp. 1522, 1530 (S.D.N.Y. 1991) (copying "that merely repackages or republishes the original is unlikely to pass the test" under the first factor).

   The Defendant may claim that he "transform" Plaintiff's Copyrighted Works by offering copies for a very different purpose than the intended purpose of the originals, *i.e*., to post his comments to the Copyrighted Works for a public audience. Such an argument would fail as a matter of law.  Transformativeness is not about a defendant's subjective intent; it is about "add[ing] something new." *Infinity Broadcast*, 150 F.3d at 108 (defendants' marketing of plaintiffs' articles to a different audience does not "transform" them).  *See also American Geophysical Union v. Texaco, Inc*., 60 F.3d 913, 922 (2d Cir. 1994) (photocopying scientific articles for purpose of "research in the sciences [which] might well serve a broader public purpose" is not a fair use); *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc*., 166 F.3d 65, 72 (2d Cir. 1999) (defendant's "abstracts" of plaintiffs' news articles "add[ed] almost nothing new" because they were "for the most part direct translations"; no fair use).

   There is nothing unique about the Defendant's website or comments.  The

11

Defendant is alleged to trade as Inglewoodwatchdog.wix.com and is also known as Dehol Trouth. The purpose of Defendant's website and posting is to attract readers by distributing commentary to the Copyrighted Works. Indeed, as alleged, the Defendant offers as a substitute for the Copyrighted Works the Defendant offers exact copies with his comments overlaid on top. 3 Nimmer on Copyright, § 13.05[D][1] ("whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work").

The Defendant is simply republishing untransformed, copies of the Copyrighted Works, and free-riding on the City's expenses. Therefore, the "critical" inquiry – transformation – under the first factor strongly favors the Plaintiff. The facts alleged a complete lack of transformativeness.

2. <u>The Copyrighted Works Are Creative And Original Expression.</u>

The Copyright Act of 1976 protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The essential element to qualify for copyright protection is that the work must be original to the author. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). As the term is used in copyright law, original "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id*. The creativity required is "extremely low" and the work need not be novel; the vast majority of works will satisfy this requirement quite easily because they possess some slight creativity. *Id*. Even such works as phone directories or residential housing lists are copyrighted. Videos of current events are not like phone directories or residential housing listings, which receive very limited copyright protection.

Any argument that the Copyrighted Works involved no creativity or intellectual input, and so are not original works deserving copyright protection must fail. The Supreme Court rejected a similar argument more than 100 years ago. In

12

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, (1884), the plaintiff argued a photograph of the author Oscar Wilde was not original and therefore not copyrightable because a "photograph is the mere mechanical reproduction of the physical features or outlines of some object animate or inanimate, and involves no originality of thought or any novelty in the intellectual operation connected with its visible reproduction in shape of a picture." *Id*. at 59.  This argument was flatly rejected by the Supreme Court.

Even if this Court were to find Plaintiff's Copyrighted Works to be "predominantly factual," the second factor does not favor a finding of fair use.  See, *e.g*., *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc*., 166 F.3d 65, 72 (2d Cir. 1999) (refusing to overlook the "expressive elements" of the news article contained in certain Japanese-language business journals, and concluding that the second fair use factor was "at most neutral" and not finding fair use).  Thus, the second fair use factor favors the Plaintiff.

### 3.  The Defendant Steals the Copyrighted Works

Defendant argues that he does not steal entire copyrighted works because he only takes, verbatim, fifteen minute "clips" ("Subject Clips") related to topic areas from the Council meetings.  This is wrong.  Under long settled principles of copyright law, each of Plaintiff's topic areas represents an independent and entire work.  *American Geophysical Union v. Texaco, Inc*., 60 F.3d 913, 925-26 (2d Cir. 1994) (copying an entire article from a journal whose copyright was only registered as a whole still constituted copying of the entire work); *Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1155 (9th Cir. 1986) ("A creative work does not deserve less protection just because it is [considered] part of a composite work.").  Therefore, Defendant must satisfy his burden of proving that republishing the entire Infringing Copy is somehow "essential" so that he can "comment" on them.  *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 589 (1994) (requiring that

13

"no more [be] taken than necessary"); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1440, 1449 (9th Cir. 1986) ("Generally, no more of a work may be taken than is necessary to making the accompanying comment understandable.").  Defendant can never meet his burden of proving that it is somehow "essential" to copy the entire Subject Clip. *Campbell*, 510 U.S. at 589 (explaining that "attention [under the third factor] turns to the persuasiveness of a [copier's] justification for the particular copying done").  The Defendant is attracting visitors by republishing unaltered copies of Plaintiff's entire Subject Clips with his criticism and comments on them.  There is nothing "essential" about republishing and archiving verbatim copies of Plaintiff's entire works on the Internet.  See, *e.g., Infinity Broadcast*, 150 F.3d at 109 ("Though not an absolute rule, 'generally, it may not constitute a fair use if the entire work is reproduced'" because it is almost never "essential" to copy the entire work) (quoting 3 Nimmer on Copyright, § 13.05[A][3]).  Indeed, Defendant's removal of the offending Subject Clips effectively admits that the criticism and comment that purportedly occurs on Defendant's Infringing Copies does not require the Defendant to steal entire copyrighted works.  In short, the Defendant is republishing the Copyrighted Works in their entirety, without any conceivable justification when Plaintiff's Copyrighted Works are already published by the Plaintiff, and made available to its constituents to view and/or purchase.  Therefore, the third fair use factor strongly favors Plaintiff.

4.  The Defendant Diverts Traffic From the Copyrighted Works

The fourth fair use factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  The Defendant acknowledges that the City sells its Copyrighted Works and recoups the expenses incurred in making them available to the public.  (Defendant's Motion to Dismiss Plaintiff's Complaint, ECF 9, page 23).  While Defendant contends that the City cannot make money on the sale of the Copyrighted Works, the Defendant ignores

14

that the City has spent funds to have its Council meetings videotaped, and it can recoup its expenses. Thus, there is harm to the City via its inability to recoup its expenses. And, the Defendant's attempt to trivialize the harms caused by his systematic infringement of the Copyrighted Works rings hollow.

Defendant uses and republishes the Copyrighted Works to the world without a license, which violates the fundamental right of copyright owners. It deprives Plaintiff of potential revenue. Taking into account all of this, Defendant has no basis for arguing that the City cannot benefit or profit as a result of the Defendant's theft of its Copyrighted Works that copyright law has always recognized as the copyright owner's property. It is not a defense to copyright infringement to say that the copyright owner somehow cannot benefit from having his works stolen. *D.C. Comics Inc. v. Reel Fantasy, Inc*., 698 F.2d 24, 28 (2d Cir. 1982) (rejecting defendants' arguments that the fourth fair use factor favored them because the infringing activities increased plaintiffs' sales). The Defendant has not rebutted the detrimental effect of Defendant's infringing activities on Plaintiff. Thus, the fourth factor – as all the others – strongly favors the Plaintiff.

### C.      THE COPYRIGHTED WORKS ARE REGISTERABLE

The Copyright Law, 17 U.S.C. § 101 *et seq.* (1976) governs original works created after 1976. It grants copyright protection to "original works of authorship fixed in a tangible medium of expression." *Id*. A work does not have to be new or highly creative to qualify as an original work of authorship. It simply must owe its origin to a particular author. Although facts are not original works of authorship, the way facts are recorded is copyrightable.

To be copyrighted, original works must be produced in a format that can be perceived, reproduced and communicated over time. Most forms of media, including the Internet, easily satisfy these criteria. Copyright protection is automatic upon creation of an original work. Registration is not necessary. Radio and

television news programs are recorded on paper, tape or in digital form, and thus are fixed in a tangible medium of expression.  News services raw videotapes are copyrighted because they satisfy the Copyright Law.  *Los Angeles News Service v. Tullo*, 973 F.2d 791 (9th Cir. 1992)  Thus, the videotapes of the City's Council meetings are copyrighted upon creation.  However, to enforce a copyright right against an infringing third party, a copyright owner must register his copyright.

That cities in California not only own copyrights in public records, but have registered their original works can be confirmed by a search of the public records at the U.S. Copyright Office.  By way of example, the following copyright registrations for original works containing public records are listed for the City of Los Angeles:

> Scene of the Crime: Photographs from the LAPD Archives
> Book
> Registration Number/Date:  TX0007343583 / 2007-01-19

> Cash Wiz Cash Management Software
> Computer Software
> Registration Number/Date:  TXu001654158 / 2009-10-06

For the City of Sacramento:

> Diversity Resource Book
> Book
> Registration Number/Date:  TXu001243091 / 2005-02-15

For the City of San Diego:

> Ridgehaven "green building" demonstration project
> Book
> Registration Number/Date:  TXu000741427 / 1996-06-03

For the City of Pasadena:

16

City of Pasadena, Cost Control System
Books
Registration Number/Date:  TX0003466676 / 1993-01-11

For the City of Inglewood

Universal Meter Reading System
Computer Program
Registration Number/Date:  TX0003119182 / 1991-07-05

This Court can take judicial notice on its own that these municipalities have copyrighted original works of authorship and have registered their works with the U.S. Copyright Office.  In fact, not only did the City of Inglewood register its copyrighted Universal Meter Reading System (which contains public records of other California cities as well), it sued the City of Chicago for copyright infringement, which lawsuit ended with a settlement favorable to the City of Inglewood. (*City of Inglewood vs. City of Chicago*, U.S. District Court for the Central District of California, Civ. 02-4594(AJWx)).

Defendant incorrectly argues that municipalities are precluded from registering their copyrighted works in public records because the California statute California Public Records Act ("CPRA") (Statutes of 1968, Chapter 1473; currently codified as California Government Code §§ 6250 through 6276.48) does not specifically allow it.  The CPRA was a law passed by the California State Legislature and signed by the Governor in 1968 requiring inspection and/or disclosure of governmental records to the public upon request, unless exempted by law.  The Defendant cites a non-precedential northern California state appellate case argued by defense counsel's firm (*County of Santa Clara v. Superior Court*, 170 Cal. App. 4th 1301, 1333 (2009)) that follow a Florida state case in support.  Neither that case, nor the arguments put forward by the Defendant, are persuasive.  To the

17

contrary, because the CPRA does not preclude municipalities from registering copyrighted original works containing public records, municipalities are not precluded from doing so under the Supremacy Clause of the U.S. Constitution.

This issue was settled years ago in a seminal case involving a patent agent's right to live in Florida and practice before the U.S. Patent Office – namely, *Sperry v. Florida*, 373 U.S. 379 (1963).   In Sperry, the lower court enjoined Mr. Sperry, who was licensed before the U.S. Patent Office, from practicing before the U.S. Patent Office because he lived in Florida and was not licensed in Florida.   Chief Justice Warren, writing for the majority, noted that "'the law of the State, though enacted in the exercise of powers not controverted, must yield' when incompatible with federal legislation. *Gibbons v. Ogden*, 9 Wheat. 1, 22 U. S. 211." *Id*. at 384.  He went on to explain that, where, as here, the federal statute expressly permits the federal agency to grant authority, and the "the authorization is unqualified, then, by virtue of the Supremacy Clause, [a State] may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority. A State may not enforce [] requirements which, though valid in the absence of federal regulation, give 'the State[] a virtual power of review over the federal determination' . . ." *Id*. at 385.  Interestingly, the Supreme Court overturned Florida's attempted restraint on a federally granted authority.  Certainly, looking to a Florida case for guidance in the *County of Santa Clara* case, which is a restraint on the same federal authority, rather than Sperry, is not appropriate.

Here, the Copyright Law provides that original works are copyrighted on creation, and the U.S. Copyright Office has the authority to register them. California's state law, the CPRA, regarding copyright registration of public records is silent.  This law only requires that municipalities make public records available to its constituents, which the City of Inglewood has done by making copies of its Copyrighted Works available for viewing and for sale at cost.  The City of

18

Inglewood is in full compliance with the California statute.  Beyond that, the CPRA is silent, and the California judiciary does not have the right to obstruct the U.S. Copyright Office's federally granted authority to register the City of Inglewood's Copyrighted Works.  "'No State law can hinder or obstruct the free use of a [right] granted under an act of Congress.'  *Pennsylvania v. Wheeling & Belmont Bridge Co*., 13 How. 518, 54 U. S. 566." *Sperry* at 385.

In the present action, the CPRA only requires that public records be available to the public.  It does not specifically preclude copyright registration.  In contrast, in *Sperry* the State of Florida had specifically conditioned Mr. Sperry's right to practice before the U.S. Patent Office.  While noting that the State of Florida had an interest in protecting its citizens, Chief Justice Warren explained that the power over patents and copyrights are bestowed upon Congress, which passes federal statutes and regulations to do so, and the states are not empowered to restrict this federal authority without a compelling reason to do so.  *Id*.  at 402 – 403.  No such compelling reason exists in the present case.  To the contrary, the CPRA has no such restriction.  And, the Defendant impermissibly seeks to impose a judicially-made restriction that is not binding on this Court.  Accordingly, Defendant's argument regarding the City of Inglewood's ability to register its Copyrighted Works must fail.

**D.**    **RULE 12(f) DOES NOT AUTHORIZE THE STRIKING OF PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES**

Interpretation of Rule 12(f) is according to its plain meaning.  *Whittlestone, Inc.*, 618 F. 3d at 973 citing *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).  Analysis of the rule requires consideration of whether the request for attorneys' fees in the Complaint is: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.  None of these five categories covers the allegations in the pleading sought to be stricken by the

Defendant.  First, the claim for attorneys' fees is clearly not an insufficient defense, and the Defendant has not suggested otherwise.  Second, the claim for damages is not alleged to be redundant, and appears only in the prayers for relief.

Third, the claim for attorneys' fees is not immaterial.  Whether attorneys' fees are recoverable relates directly to the Plaintiff's underlying claim for relief. *See Fogerty*, 984 F.2d at 1527 ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pled.") (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990) (quotation marks omitted)).  Fourth, the claim for attorneys' fees is not impertinent, because whether attorneys' fees will ultimately be recoverable pertains directly to the acts of infringement that are ultimately proven.

The Defendant alleges that the purported acts of copyright infringement commenced after the first publication of each of the Copyright Works and before the effective date of its registration, and on that basis attorneys' fees are not recoverable under 17 U.S.C. § 412.  Such is not the basis for dismissal under Rule 12(f).  As the appellate court stated (when reversing the dismissal of a claim for damages, even though the Defendant claimed that damages were unavailable as a matter of law):

> [the Defendant's] 12(f) motion was really an attempt to have certain portions of [the Plaintiff's] complaint dismissed or to obtain summary judgment against [Plaintiff] as to those portions of the suit— actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion. *Compare Yamamoto v. Omiya*, 564 F. 2d 1319, 1327 (9th Cir. 1997) ("Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'") (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 782 (1969)), *with Rutman Wine Co. v. E. & J. Gallo Winery, 829 F. 2d 729, 738 (9th Cir. 1987)* ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints....").

> Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading (as [the Defendant] would have us do here), we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose.

*Whittlestone, Inc.*, 618 F. 3d at 974 (footnote omitted). Even though Defendant alleges that in applying Section 412 of the Copyright Act, courts repeatedly have held that plaintiffs may not recover statutory damages or attorneys' fees, and that the facts are undisputed as to when the alleged copyright infringement occurred (which the Plaintiff disputes), the Defendant cannot request that this Court dismiss a claim for attorneys' fee on that basis. Such dismissal is precluded as a matter of law because the Court is not authorized to do so. *Id.*

## E.   JUDICIAL NOTICE OF THE DEFENDANT'S WEBSITE AND CONTENTS IS IMPROPER

The Defendant asks this Court to take judicial notice of the following:

> "1. Exhibit A: The contents of the six YouTube videos referenced and linked at Paragraph 19 of the Complaint that form the basis for the City's claim. See Teixeira Decl. ¶ 3; Notice of Lodging of DVDs, Ex. A.
>
> 2. Exhibit B: The contents of the screenshots of the six YouTube pages referenced and linked at Paragraph 19 of the Complaint that form the basis for the City's claim. See Teixeira Decl. ¶ 4, Ex. B"

Defendant's Request for Judicial Notice in Support of Motion to Dismiss (F.R.C.P. 12(b)(6) and Motion to Strike (F.R.C.P. 12(f)) (ECF 10, Page 2)  After making this request, the Defendant attempts to authenticate these exhibits through his declaration. This procedure is not a proper request for judicial notice – it is an attempt to introduce evidence into a motion to dismiss.

21

While the Internet furnishes a convenient mechanism for ready determination of a fact, not all the sources on the Internet are unquestionably accurate.  Evidentiary requirements such as authenticity, relevance, hearsay, and accuracy are called into question.  Rule 201 permits a court to judicially notice facts that are generally known or facts that can easily be located within sources where accuracy is not questioned, "[j]udicial notice is not a mechanism by which a party can offer into evidence documents that do not fall into one of the specific categories" that Rule 201 identifies. *Meeker v. Belridge Water Storage Dist*., No. 1:05-CV-00603 OWW SMS, 2006 U.S. Dist. LEXIS 91775, at *33 (E.D. Cal. Oct. 18, 2006).  Here, the Defendant request the Court judicially notice the content of his own website, without giving the Plaintiff the opportunity to conduct proper discovery.  Such flatly contradicts the rules that require if evidence is brought in beyond the four corners of the Complaint in a motion to dismiss, the motion to dismiss is to be treated as a motion for summary judgment under Rule 56 of the FRCP.   "For all practical purposes, judicially noticing a fact is tantamount to directing a verdict against a party as to the noticed fact."  *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C. XXIII*, 287 F.3d 279, 290 (3d Cir. 2002).

Here, the Defendant attempts to introduce evidence of the content of his website.  However, his proffered "facts" (*i.e*., the contents of his website) which he wants the Court to infer from proffered videos and screen shots.  These proffered screen shots are: (1) not something generally known within the Court's jurisdiction; (2) subject to reasonable dispute; (3) cannot accurately or readily be determined from the cited source and instead the Court is asked to refer to Defendant's submitted unauthenticated lodged evidence; and, (4) the accuracy of the source, *i.e*., the Defendant, is reasonably questioned.  Failure to meet the requirements for judicial notice is the basis for disallowing the Defendant's improper submission of evidence.  In a case involving a Rule 12(b)(6) motion to dismiss and screenshots of

22

the purported content of a website, the district court denied the request to take judicial notice. *In re Easysaver Rewards Litig*., 737 F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2010) (denying the request to take judicial notice of eleven screenshots submitted and citing *In re Pointer*, 346 B.R. 585, 586 (D. Mass. 2006) as taking notice of the fact that the party maintained the website, but not of changing content on the website). *See also Hancock v. Hartford Life & Accident Ins. Co*., No. CIV 2:06-CV-00208-FCD-DAD, 2006 U.S. Dist. LEXIS 39774, at *12 (E.D. Cal. June 14, 2006) (noting that one of the goals of the limitations placed on judicial notice via Rule 201 is to allow both parties to "examine each other's evidence and to present all sides to the trier of fact," and explaining how that goal would be frustrated if judicial notice could properly be taken of facts that are susceptible of reasonable dispute). Similarly, in denying the request to take judicial notice, a district court was not persuaded to consider the contents of a website in determining whether the complaint's allegations might incorporate website materials by reference. *Car-Freshner Corp. v. Getty Images, Inc*., 822 F. Supp. 2d 167, 175 (N.D.N.Y. 2011)

In the present Complaint, the only documents incorporated by reference are the copyright applications of the City. The documents submitted by the Defendant of his website content are not integral to the Complaint and are not authenticated. Although the City does reference to the Defendant's website, those references are not particularized, and are noted as incomplete – only sufficient to put the Defendant on notice of the City's claim. (Complaint, ¶ 19) The accuracy of Defendant's submissions and the full extent of the Defendant's copyright infringement must be discovered through the proper development of the record – through discovery. Even though the documents may have been provided through Defendant's counsel and purport to be from the Defendant, the genuineness of the documents is based on the declaration of the Defendant before he can be cross-examined, and the fact that the documents were submitted by the Defendant means they are not accessible. On

23

these bases, the Defendant's request for judicial notice of his own website content must be denied.

## V. CONCLUSION

This Court should deny the motion to dismiss and motion to strike. The Court should exclude that evidence of the Defendant's website content offered by the Defendant when considering these motions.

DATED:  May 18, 2013                    Respectfully submitted,

                                        *Majesty Law Group PLC*


                                        __/s/ JoAnna M. Esty_____
                                        JoAnna M. Esty
                                        Attorney for Plaintiff
                                          City of Inglewood

24