UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.** **CV–15–01815–MWF (MRWx)**          **Date:  August 20, 2015**
**Title:**       City of Inglewood -v- Joseph Teixeira, et al.

**Present:**   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**   ORDER GRANTING MOTION TO DISMISS AND
MOTION TO STRIKE [8] [9]

Presently before the Court is Defendant Joseph Teixeira's Motion to Dismiss Plaintiff's Complaint (the "Motion") and Motion to Strike Plaintiff's Request for Attorney's Fees (the "Motion to Strike") filed on April 17, 2015.  (Docket Nos. 8, 9). Plaintiff City of Inglewood (the "City") filed a Consolidated 1) Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint; 2) Opposition to Defendant's Motion to Strike; and 3) Opposition to Defendant's Request to take Judicial Notice (the "Opposition") on May 18, 2015.  (Docket No. 17).  Defendant filed a Consolidated Reply in Support Of Defendant's Motion to Dismiss Plaintiff's Complaint and Motion to Strike Request for Attorneys' Fees (the "Reply") on June 5, 2015.  (Docket No. 18).

The Court considered the papers submitted by the parties and held a hearing on June 22, 2015.  For the reasons stated below, the Court **GRANTS** the Motion *without leave to amend*.  The Court **DENIES** the Motion to Strike as *moot*.

# I.    APPLICABLE LEGAL STANDARD

In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

plaintiff."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (holding that a plaintiff had plausibly stated that a label referring to a product containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable consumer).  However, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  The Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief.  *Id*. at 679.

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016, n. 9 (9th Cir. 2012).  There are, however, two exceptions to this general rule: the "incorporation by reference" doctrine and matters which may be judicially noticed.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (holding that district court improperly dismissed complaint when it took judicial notice of disputed facts).   A court "must consider" the Complaint as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that in alleging fraud under § 10(b) of the Securities Exchange Act of 1934 a plaintiff must plead facts rendering inference of scienter at least as likely as any plausible opposing inference).

Defendant submitted a Request for Judicial Notice in Support of Motion to Dismiss and Motion to Strike ("RJN") with his two motions.  (Docket No. 10). Defendant asks that the Court take judicial notice of six videos on YouTube (RJN, Ex. A); six screenshots of the YouTube pages for those videos (RJN, Ex. B); the video of the City Council meeting of July 20, 2010 (RJN, Ex. C); the video of the City Council meeting of May 22, 2012 (RJN, Ex. D); the video of the City Council meeting of February 11, 2014 (RJN, Ex. E); and the video of the City Council meeting of April 23, 2013 (RJN, Ex. F).  Defendant lodged DVDs containing these videos and screenshots with the Court.  (Docket No. 14).

Each of the items of which Defendants asks the Court to take judicial notice are referenced in the Complaint.  The six YouTube videos are the videos which the City

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

contends constitute copyright infringement by Defendant.  (Compl. ¶ 19).  The City provided links to each of the videos in the Complaint.  (*Id*.).   The videos of the City Council meetings are the videos from which Defendant allegedly copied to create his own videos.  (*Id*.).

The City opposes the RJN on three grounds.  First, the City argues that it constitutes an impermissible introduction of evidence into a motion to dismiss.  (Opp. at 21).  Second, the City contends that the only documents incorporated by reference are the City's copyright applications.  (*Id.* at 23).  In these two arguments the City is plainly wrong.  The City specifically identifies the videos in question in paragraph 19 in its Complaint as well as the copyrighted material contained in those videos throughout the rest of the Complaint.  The City cannot now seek to delay potential resolution of this action by asserting that this Court may not review the material it claims is infringing and has specifically identified in its Complaint.

"It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'"  *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)) (holding that district could properly dismiss copyright claim on motion to dismiss on the basis of a fair use defense).  *See also Duckhole Inc. v. NBC Universal Media LLC*, CV–12–10077–BRO, 2013 WL 5797279, at *3 (C.D. Cal. Sept. 6, 2013) (considering copies of accused infringing episodes as properly judicially noticed, despite not being attached plaintiff's pleadings); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1121–22 (N.D. Cal. 2002) (considering television program referenced in, but not attached to, complaint).

The City's third argument is that only items incorporated by reference in the Complaint ***and*** whose authenticity is not questioned may be judicially noticed.  The City argues that because the videos were provided by Defendant they are not from a source whose authenticity cannot be questioned.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015**
**Title:        City of Inglewood -v- Joseph Teixeira, et al.**

In the interests of ensuring that the Court had reviewed accurate copies of the videos, the Court delayed issuing this order after the hearing so that the City could subpoena the original videos from YouTube.  The City obtained records, but not the original records.  However, at a telephonic status conference the City conceded that the videos available at the URLs in the Complaint, and those submitted by Teixeira with his Motion were the same videos that prompted the City's suit and were the proper subject of the action.  (Docket No. 34).  The Court may therefore consider the videos in addressing this Motion.

Accordingly, the Court **GRANTS** the RJN.

## II.    BACKGROUND

In this action, the City makes two basic allegations.  First, that it enjoys a copyright interest in the video recordings it makes of open public meetings of the Inglewood City Council.  Second, that Teixeira has violated the City's copyright by using portions of these videos in making his own videos that criticize the City and its elected officials (the "Teixeira Videos").

The City alleges that it is the valid copyright owner of video recordings, including six of Inglewood Council meetings from 2011 to 2013 ("the "City Council Videos") for which it has submitted applications for copyright registration by the Register of Copyrights.  (Compl. ¶ 14, Ex. A).

Teixeira is a resident of Inglewood, California.  (Compl. ¶ 11).  He operates a website, Inglewoodwatchdog.wix.com, and posts videos on YouTube as Dehol Trouth.  (*Id*. ¶¶ 11, 19).  The City alleges that Teixeira has willfully and intentionally used infringing copies of the City Council Videos in question and distributed them in online media, thereby violating the City's exclusive reproduction and distribution rights.

## III.    DISCUSSION

In his Motion, Teixeira makes two arguments as to why the City's action should be dismissed.  First, under California law, the City may not claim and assert a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)          Date:  August 20, 2015
Title:      City of Inglewood -v- Joseph Teixeira, et al.

copyright interest in the City Council Videos.  Second, even if the City had an enforceable copyright interest in the videos, the Teixeira Videos fall squarely within the fair use protections of § 107 of the Copyright Act.

For the reasons explained below, the Court agrees with both of Teixeira's arguments.

## A.    The City May Not Assert Copyright Protection Over City Council Videos

Teixeira's first argument is that California law bars the City from claiming and asserting a copyright claim in the videos of its City Council meetings.

The scope of copyright protection is governed by federal law.  The Copyright Act bars protection for works created by the federal government.  17 U.S.C. § 105.  However, whether state and local governments can claim copyright protection is governed by state law.  *See County of Suffolk v. First American Real Estate Solutions* 261 F.3d 179, 188 (2d Cir. 2001) ("Thus, although a state and its subdivisions may own a copyright as a matter of copyright law, it may be that Suffolk County is not permitted to do so in this instance.  The question becomes whether New York's Legislature, by enacting FOIL, has ceded Suffolk County's copyright."); *Building Officials  Code Adm'rs, Inc. v. Code Tech, Inc.*, 628 F.2d 730, 735–36 (1st Cir. 2009) ("Works of state governments are therefore left available for copyright protection by the state or the individual author, depending on state law and policy, and 'subject to exceptions dictated by public policy with respect to such publications as statutes and judicial opinions.'") (quoting Alan Latman, *The Copyright Law* 43 (5th ed. 1979)); 2 William F. Patry, *Patry on Copyright* § 4:81 (2015).

California law establishes a strong presumption in favor of public access to public materials and places significant limits on how public entities may restrict access to such materials.  *See* California Public Records Act ("CPRA"), Cal. Gov. Code § 6250 et seq.; *Filarsky v. Superior Court*, 28 Cal. 4th 419, 425–426, 121 Cal. Rptr. 2d 844 (2002) (the CPRA "was enacted for the purpose of increasing freedom of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

information by giving members of the public access to information in the possession of public agencies”).

The only published authority on the question of the ability of California public entities to assert copyright over works they produce holds that the City may not assert a copyright interest in the City Council Videos.  In *County of Santa Clara v. Superior Court*, 170 Cal. App. 4th 1301, 89 Cal. Rptr. 3d 374 (2009), the California Court of Appeal addressed the county's denial of a request for a geographic information system base map it had created.  The court carefully considered California law, including the CPRA and the state's policies towards openness and accessibility of the writing of public officials and agencies.  *Id.* at 1320 (citing Cal. Const. art. 1 § 3(b)(1) (the state constitution explicitly recognizes the "right of access to information concerning the conduct of the people's business" and to provide that "the writings of public officials and agencies shall be open to public scrutiny.")  The court evaluated the statutory language of the CPRA and held in part that in the absence of "an affirmative *grant of authority* to obtain and hold copyrights" a California public entity may not do so.  *Id.* at 1333 (emphasis in original).

The City identifies no affirmative grant of authority that permits it to obtain and assert a copyright for the City Council Videos.  Instead, the City presents three arguments in response.  First, it argues that the Supremacy Clause means that the federal basis of copyright law overrides any limits on the City's ability to obtain copyright protection and the court of appeal in *County of Santa Clara* improperly interpreted the federal Copyright Act to be limited by California law.  Second, the works are registerable, much like similar works registered by other municipalities and so it may bring suit for copyright infringement.  Third, the City states that *County of Santa Clara* is non-precedential and so should not be considered by this Court.

None of the City's arguments is persuasive.  The City's Supremacy Clause argument is flawed because every authority to address the issue has held that a State can choose whether or not to hold and assert copyright over its works and those of its subdivisions.  The effect of the Supremacy Clause is that a state may not alter the scope of copyright protection.  The Copyright Act, however, does not require a state or a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:       City of Inglewood -v- Joseph Teixeira, et al.

person to claim and assert copyright protection for works created.  *See In re Aimster Copyright Litigation*, 334 F.3d 643, 652 (7th Cir. 2003) (recognizing that artists may choose not to copyright their works in order to broaden their audience).  Therefore, the Supremacy Claus does not forbid a state from choosing whether or not to claim copyright protection.  Indeed, it is probable that the Copyright Act could not require such an act from a state under the Constitution.  *See New York v. United States*, 505 U.S. 144, 166 (1992) ("even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts").

The case the City cites in support of its position is inapposite.  In *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379 (1963), the Supreme Court held that Florida could not prohibit a lawyer from practicing before the United States Patent Office when authorized by federal law, even though the plaintiff lacked a Florida law license.  *Sperry,* however, related to a state's attempt to abrogate federally authorized activity by a private individual.  This case does not involve a private individual, but a subdivision of the state of California.  California may choose whether or not to exercise its rights under federal law and may restrict its subdivisions consistent with that policy.

At the hearing, the City argued that the *County of Santa Clara* decision was flawed because the court held that state law prevented a California political entity from "obtaining and holding" a copyright.  However, § 102 states that a copyright is established at the moment of fixation.  Therefore, the City argued, the court based its decision on a misunderstanding of federal law, which establishes the copyright in the City at the moment of its creation, and California law may not overrule federal law on this point.

The argument is unpersuasive.  While the City may be correct that California law cannot prevent the creation and lodging of a copyright in an entity contrary to federal law, the Court does not understand the *County of Santa Clara* court to be doing that.  It is true that the court was perhaps inartful in its precise choice of language.  However, that does not alter what this Court sees as the court's ultimate holding, that absent particular statutorily provided exceptions, California public entities are prohibited from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.**  **CV–15–01815–MWF (MRWx)**                    **Date:  August 20, 2015**
**Title:**        City of Inglewood -*v*- Joseph Teixeira, et al.

enforcing any copyrights they may acquire as a matter of federal law.  Whether in the eyes of federal law the City holds a copyright in the videos is irrelevant in the face of the State's decision that its entities may not act to enforce that copyright.

The registration of the works in question, and other works made by municipalities, as copyrighted is also irrelevant:

**First**, registrations are not conclusive evidence of copyright ability.  *See Techniques, Inc. v. Rohn*, 592 F. Supp. 1195, 1197 (S.D.N.Y. 1984) ("It is true that registration provides only prima facie evidence of validity.  A Registration's validity is subject to judicial review and may be attacked by a defendant in an infringement action.").  The registration also has no relevance as to California law's position on whether the City may exert the copyright.

**Second**, even if relevant to the Court's analysis, the other examples presented by the City are simply not analogous.  The works are either books produced by various California cities, or software programs, including one for the City itself.

The only copyright lawsuit brought by a California entity that the City can identify is one it brought itself to stop copyright infringement by the City of Chicago in traffic software it had developed.  *City of Inglewood v. City of Chicago*, CV–02–04594 DT (C.D. Cal.). However, the software in question falls within the California legislature's express grant of authority to assert copyright protections for software.  Cal. Gov. Code § 6254.9; *County of Santa Clara*, 170 Cal. App. 4th at 1334 ("By the express terms of section 6254.9 [of the CPRA], the Legislature has demonstrated its intent to acknowledge copyright protection for software only").

The City's final assertion that *County of Santa Clara* is non-precedential is also wholly without support.  (Opp. at 17).  As an opinion of the California Court of Appeal, this court is compelled to follow it, absent convincing evidence that the California Supreme Court would rule otherwise.  "In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  CV–15–01815–MWF (MRWx)**                    **Date:  August 20, 2015**
**Title:**        City of Inglewood -*v*- Joseph Teixeira, et al.

follow it.'"   *Hayes v. County of San Diego*, 658 F.3d 867, 870 (9th Cir. 2011) (holding that certification of question was warranted as to whether, under California negligence law, sheriff's deputies owed duty of care to suicidal person when preparing, approaching, and performing welfare check on person).  Indeed, the Ninth Circuit has explained that "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quoting *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)) (upholding dismissal of claim by prospective real property purchaser because claim of lost profits damages was too speculative and no other damages were alleged).

The City presents virtually no reasons, and certainly no convincing reasons, that the California Supreme Court would not follow *County of Santa Clara*.  Indeed, the supreme court denied a request to de-publish the decision.  *County of Santa Clara v. Superior Court*, 2009 Cal. LEXIS 4728 (May 13, 2009).  The supreme court has also cited *County of Santa Clara* in another case favoring disclosure of data created by a public entity.  *Sierra Club v. Superior Court*, 57 Cal. 4th 157, 176, 158 Cal. Rptr. 3d 639 (2013) (holding that parcel map database was not within the software exception of CPRA and had to be provided to public on request).

The Court must therefore follow *County of Santa Clara*.  The decision is clear that a California public entity may not claim copyright protection for a work it has created even if it falls within the scope of federal copyright protection.  *Id.* at 1333. The only exceptions are the statutory express grants of authority, such as for software in the CPRA, or for educational material under the California Education Code section 1044, or for materials produced by the Department of Toxic Substances Control under California Health and Safety Code section 25201.11(a).  *Id.*  The City identifies no such grant of authority for videos such as these.

Accordingly, the Court **GRANTS** the Motion because the City may not assert a copyright claim in the City Council Videos.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.**  **CV–15–01815–MWF (MRWx)**                    **Date:  August 20, 2015**
**Title:**         City of Inglewood *-v-* Joseph Teixeira, et al.

## B.    Teixeira's Activity is Protected Fair Use

Because the Court has determined that the City cannot state a claim it need not address whether Teixeira's copying constitutes fair use.  Because the Court is dismissing the action, however, the Court will rule on fair use so that all issues may be appealed now, if the City chooses to do so.

Teixeira argues that he uses small portions of the freely available City Council Videos in order to create his own videos that comment on and criticize activities of the City Council, and in particular Mayor James Butts.  This, he contends, falls squarely within the protections of the fair use doctrine as codified at § 107 of the Copyright Act.

The City argues that fair use has never protected "such systematic infringement of copyright works for years at a time" and that "[c]opyrights would become meaningless if such wholesale theft were tolerated."  (Opp. at 2).  The City contends that it is not trying to impinge on Teixeira's First Amendment but merely seeks to have him "stop posting substantially all of the [City Council Videos] with [Teixeira's] comments posted on top of them." (*Id.*).  The City continues to say that "[w]hat is really going on here is that the Defendant wants to criticize the City without doing his own work." (*Id.*).  The City also argues that a decision on the basis of fair use is not proper at this stage in the litigation.

A review of the videos is sufficient for the Court to rule that the Teixeira Videos are protected by the fair use doctrine as a matter of law.  The Teixeira Videos use brief portions of the larger works in order to comment on, and criticize the political activities of the City Council and its members.  He uses carefully chosen portions specifically for the purposes of exercising his First Amendment rights, and in doing so, substantially transforms the purpose and content of the City Council Videos.

### 1.  Applicable Law

The doctrine of fair use is a common law doctrine of judicial creation that has been codified by Congress in § 107 of the Copyright Act.  Section 107 states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                Date:  August 20, 2015
Title:      City of Inglewood -v- Joseph Teixeira, et al.

[T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

When Congress incorporated the doctrine of fair use into the Copyright Act, it intended to restate the judicial doctrine but "not to change, narrow, or enlarge it in any way."  H.R. Rep. No. 94–1476, at 66 (1976) (hereinafter "House Report"); S. Rep. No. 94–473, at 62 (1975) (hereinafter "Senate Report").  Supreme Court precedent and the legislative history also make clear that fair use analysis is not appropriately conducted through the use of bright line rules, but must be dealt with on a case by case basis.  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985) (holding that publication of verbatim quotes from the "heart" of unpublished memoirs, which was intended to supplant copyright holders commercially valuable right of first publication was not fair use); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448 & n. 31 (1984) (holding that sale of home video recording equipment was not contributory infringement where there were substantial non-infringing uses of the equipment); House Report at 65–66; Senate Report at 62. Further, the four statutory factors should not be treated in isolation.  "All [the factors] are to be explored, and the results weighed together, in light of the purposes of copyright."  *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 578 (1994) (holding that commercial character of song parody did not create presumption against fair use").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

The Court must "balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests."  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2002).

Whether a work constitutes fair use is a mixed question of fact and law.  *Harper & Row Publishers*, 471 U.S. at 560.  Nonetheless, where appropriate a court may consider a fair use defense on a motion to dismiss.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (affirming district court's dismissal of declaratory judgment action based on fair use); *Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir.1986) (finding fair use where the operative facts were undisputed or assumed; the court is to make fair use judgments, which "are legal in nature"); *Adjmi v. DLT Entertainment Ltd.*, 14 Civ. 568, 2015 WL 1499575, at *13 (S.D.N.Y. Mar. 31, 2015) (granting motion on the pleadings for plaintiff bringing declaratory judgment suit of non-infringement on basis of fair use based on review of the pleadings and original and allegedly fair use work); *Savage v. Council on American-Islamic Relations, Inc.*, C 07-6076 SI, 2008 WL 2951281, (N.D. Cal. Jul. 25, 2008) (dismissing copyright claim on a motion to dismiss because copying was protected fair use). *Righthaven LLC v. Realty One Grp., Inc.*, No. 2:10–CV–1036–LRH, 2010 WL 4115413, at *2 (D. Nev. Oct. 19, 2010) (dismissing copyright claim on a motion of dismiss on the basis for a fair use defense).

## 2.  Each Statutory Factor Favors a Finding of Fair Use

The Court determines that each statutory factor in § 107 favors a finding of fair use.

### a.  *Purpose and Character of Use*

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1); *Campbell*, 510 U.S. at 578.  This factor has been given various descriptions such as, in the words of Justice Story, whether the new work merely "supersede[s] the objects" of the original creation, or whether the new work is "transformative."  *Campbell*, 510 U.S. at 579 (quoting *Folsom v. Marsh*, 9 F. Cas. 342

---

**CIVIL MINUTES—GENERAL**                                              **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015**
**Title:        City of Inglewood -v- Joseph Teixeira, et al.**

(C.C.D. Mass. 1841); Pierre Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev.
1105, 1110-11 (1990)).  While transformation is not necessary for a finding of fair use,
the goal of copyright protection is "generally furthered by the creation of
transformative works."  *Campbell*, 510 U.S. at 579.

Section 107 also explicitly references comment and criticism as examples of fair
use.  17 U.S.C. § 107 ("fair use of a copyrighted work . . . for purposes such as
criticism, [or] comment . . . is not an infringement of copyright").

There is presently no evidence before the Court as to whether Teixeira has
produced the videos for a commercial purpose beyond the City's allegation that he uses
them to generate income, which the Court must accept as true on a motion under Rule
12(b)(6).  Teixeira notes in his Reply that should the case proceed he will show that he
does not produce the videos for commercial purposes.  (Reply at 18, n. 11).  Teixeira,
however, does not rely on the non-commercial nature of the videos and the Court need
not either.  As the Supreme Court explained in *Campbell*, the more transformative the
new work, the less will be the significance of other factors, like commercialism, that
may weigh against a finding of fair use.  510 U.S. at 579; *see also Hustler Magazine
Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1152 (9th Cir. 1986) ("Even assuming that
the use had a purely commercial purpose, the presumption of unfairness can be
rebutted by the characteristics of the use").

The videos Teixeira produces address local politics in the City of Inglewood.
They consist of his narrating his criticism of Mayor Butts over slides or other text,
documents – such as a report by the Inglewood city clerk – and video clips, some of
which are taken from the City Council Videos over which the City claims a copyright
interest.  The videos range in time from 3 minutes and 43 second to 15 minutes long,
and the clips from the City Council Videos are considerably shorter.  Some of the clips
are used unadorned but they are most often frequently overlaid with Teixeira's oral and
written commentary and criticism, as well as music.  Even when unadorned, they form
only part of longer videos, with the clips contrasted with documents, sound recordings,
and other video clips, accompanied with Teixeira's written and oral commentary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                     Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

Teixeira's use is highly transformative.  His purpose falls directly within two of the categories explicitly referenced in § 107: criticism and commentary.  The Teixeira Videos are also directed at political and other matters of public concern and constitute core First Amendment protected speech.  The fair use doctrine generally provides a greater scope of protection when the works involve address matters of public concern. *See National Rifle Ass'n of America v. Handgun Control Federation of Ohio*, 15 F.3d 559, 562 (6th Cir. 1994) ("The scope of the fair use doctrine is wider when the use relates to issues of public concern."); *Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1050 (2d Cir. 1983) ("The scope of the doctrine is undoubtedly wider when the information conveyed relates to matters of high public concern."); *Dhillon v. Does 1-10*, No. C 13–01465 SI, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) ("Rather than using the headshot photo as a positive marketing tool, as the plaintiff did, the defendant used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics. Such a use is precisely what the Copyright Act envisions as a paradigmatic fair use.") (citations omitted)).

The City's contention that Teixeira is "simply republishing untransformed, copies of the Copyrighted works, and free-riding on the City's expenses" is plainly incorrect on even the most cursory review of the Teixeira videos.  The City's claim that "[t]he facts alleged a complete lack of transformativeness" is also irrelevant given the reference by the Complaint to the videos themselves.

The City's reliance on *Los Angeles Times v. Free Republic*, CV–98–07840–MMM, 2000 WL 565200 (C.D. Cal. Apr. 4, 2000) is also unpersuasive.  The defendant hosed an online bulletin board on which "generally, exact copies of whole or substantial portions of articles [we]re posted."  *Id.* at *6.  The court rejected the arguments by the defendants that the works were transformative because the board did not substitute for the newspapers' websites, and because users added comments.  *Id.* at *7.  The court noted that "[c]opying portions of a copyrighted work for the purpose of criticism or commentary is often considered fair use."  *Id.* (citing *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1375 (9th Cir. 1993) ("Inevitably, some identification of the subject matter of a writing must occur before any useful comment may be made about it, and it is not uncommon for works serving a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  CV–15–01815–MWF (MRWx)**                    **Date:  August 20, 2015**
**Title:        City of Inglewood -v- Joseph Teixeira, et al.**

fair use purpose to give at least a brief indication of the plot. Works of criticism,
teaching, and news reporting customarily do so.")).  However, the court concluded that
limited commentary added to verbatim copies was not sufficient, and the amount of
copying – full, verbatim copies – was too great to justify the limited commentary
provided on the board.  The purpose, the court concluded, was primarily to provide the
content of the articles and the ancillary commentary was not sufficient to render the
copying transformative because the copied works substituted for the originals.  *Id*. at *7
("For those who visit the site regularly, therefore, the articles posted there serve as
substitutes for the originals found on plaintiffs' websites or in their newspapers.")

Teixeira's use of the clips from the City Council Videos is of a wholly different
sort.  The clips are carefully chosen and heavily edited.  Teixeira juxtaposes them with
other materials, puts his own commentary over and around them, and uses specific
clips to underscore and support the points he makes in his videos.   No person wishing
to find out what occurred during a lengthy City Council meeting would be satisfied
with viewing any of the Teixeira Videos.

Indeed, the videos identified in the Complaint as infringing are quintessential
transformative works for the purpose of criticism and commentary on matters of public
concern.  Even as used for commercial purpose – a fact which the Court assumes to be
true – this factor alone would go a substantial way to support a finding of fair use.

### b.  *Nature of the Copyrighted Work*

The second factor is the nature of the copyrighted work.  "Works that are
creative in nature are closer to the core of intended copyright protection than are more
fact-based works." *Kelly*, 336 F.3d at 820.  The purportedly copyright material is not
creative in nature.  The City Council Videos are straightforward recordings of public
proceedings.

The City's arguments address whether there is sufficient creativity to warrant
copyright protection at all.  While the videos are very likely sufficiently "creative" to
fall within the scope of copyright protection, this does not mean that this factor favors
the City.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

Given the barely creative nature of the City Council Videos, and their informational purpose, they enjoy very narrow copyright protection.  This factor therefore weighs in favor of a finding of fair use.

### c.  *Amount and Substantiality of the Portion used*

Under the third factor, the Court evaluates the amount of the work used.  The Supreme Court in *Campbell* explained that the third factor inquires as to whether the "amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . [is] reasonable in relation to the purpose of the copying.  Here attention turns to the persuasiveness of a parodist's justification for the particular copying done, and the enquiry will harken back to the first of the statutory factors, for, as in prior cases, we recognize that the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87.

As described above with regards to the first factor, Teixeira uses only small portions of the total works and uses them for very specific and particular purposes.  In five of the six accused videos, he intersperses short clips of the City Council Videos between written slides, pictures, other video clips, and his own commentary.

The first and second videos are approximately 15 minutes long and contain clips from the City Council meeting held on July 20, 2010.  The video of the meeting is more than four hours long.  (RJN, Ex. C).  The clips used in Teixeira's first two videos, are all under a minute long, and most of them 15 seconds or less.  (RJN, Exs. A-1; A-2).  The videos address issues regarding Mayor Butts' Inglewood residency issues that arose while he was running for mayor, and his interactions with the City's Clerk regarding a report she compiled as to his voter registration and qualification to run for mayor.

The third video is the shortest of the Teixeira videos at three minutes and 43 seconds.  (RJN, Ex. A-3).  It is almost wholly comprised of a single clip from the City Council meeting on May 22, 2012, at which Mayor Butts reads a statement regarding a request for information about a shooting.  (*Id.*).  This is the longest clip used by Teixeira in any of the accused videos.  Throughout the video there is music added by

---

**CIVIL MINUTES—GENERAL**                                    **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

Teixeira, but more importantly, his commentary runs along the bottom of the screen as Butts talks.  Teixeira ridicules Butts' physical tics as he talks, notes his apparent nervousness and stuttering, and specifically identifies points at which Teixeira alleges Butts is lying.  The full video of the meeting runs more than three hours.

The fourth video is 15 minutes long.  (RJN, Ex. A-4).  In it Teixeira, alleges that Butts' took political advantage of a murder in Inglewood.  In it, Teixeira contrasts Butts' comments at a press conference shortly after the murder, and then in a City Council meeting later, accusing him of changing his position for political gain and making contradictory statements.  Throughout the clips, Teixeira has written commentary identifying and highlighting the purported changes in Butts' position and his alleged inconsistencies.

The fifth video is 11 minute and 38 seconds long.  (RJN, Ex. A-5).  It contains clips from the City Council meetings held on April 23, 2013, which was more than two hours long, and the July 20, 2010 meeting.  The video is constituted primarily of clips from the two meetings.  The clips themselves are short, cut together to compare and contrast statements by Butts and other city officials, and frequently overlaid with Teixeira's written or oral commentary.

The sixth video is 15 minutes long.  (RJN, Ex. A-6).  It uses clips from the February 11, 2014 City Council meeting.  The video addresses traffic problems resulting from events held at the Inglewood Forum, and Butts' compliments as to Inglewood's handling of the traffic.  The video contains primarily video taken by Teixeira outside the Forum on the night of the VMA Awards as attendees headed home.  The video also includes short clips of the City Council meeting at which Butts addressed traffic on the night Teixeira was filming.  Teixeira compares the traffic problems he captured on film with footage of Butts praising the City's handling of traffic outside the Forum generally, and on that night.

The City argues that Teixeira fails to meet his supposed burden of showing that it is "essential" to make the copies for his purpose of commenting on it.  The City contends that each topic area of the City Council meetings is "an independent and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

entire work" and Teixeira cannot show why it is necessary to copy these "entire" works.  However, a review of the videos makes it clear that Teixeira has copied only the parts of the City Council Videos that serve his purpose of making comment on them, or criticizing very particular statements by Butts.  This use of another's material has been frequently recognized as protected fair use.  *See Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform*, 868 F. Supp. 2d 962 (C.D. Cal. 2012) (holding that using verbatim portions of plaintiff's pro-abortion video in making a video protesting abortion was fair use); *Savage v. Council on American-Islamic Relations, Inc.*, C 07-6076 SI, 2008 WL 2951281, (N.D. Cal. Jul. 25, 2008) (holding that posting significant portions of radio hosts show to criticize his anti-Muslim views was protected fair use). *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1260 (2d Cir. 1986) (fair use protected anti-abortion author's use of portions of book "to make the case against abortion").  The City's exceptionally narrow view of an "entire" work is without merit and contrary to the purpose of the fair use doctrine, which permits the use of reasonable quantities of a work for the purpose of criticism and comment.

Teixeira's use of the clips from the City Council Videos is limited to his purpose of criticizing Butts and the City Council, and commenting on the proceedings of the City Council.  Teixeira chooses small and very specific parts of lengthy proceedings to make his point in his videos.  The extent of his copying is reasonable in light of his purpose.  Accordingly, this factor also strongly favors a finding of fair use.

### d.  *Effect of Use on the Market*

The fourth factor is the "effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  The Supreme Court has stated that this factor is "the single most important element of fair use." *Harper & Rowe Publishers*, 471 U.S. at 566.  "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Id.* at 566–67 (quoting 1 Nimmer, § 1.10[D]).  This factor strongly favors Teixeira because there is no market for the City Council Videos and the accused works are not a substitute for the original works.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                  Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

The City argues that the factor favors its position because Teixeira's copying denies the City of the opportunity to "recoup its expenses" and "deprives [the City] of potential revenue."  This argument is without merit and flatly contradicted by the California law that governs the City's creation and use of the City Council Videos.

California law prevents public agencies from charging the public anything more than the "direct costs of duplication" when providing public records.  Cal. Gov. Code § 6253(b).  *See also North County Parents Org. v. Dep't of Education*, 23 Cal. App. 4th 144, 147, 28 Cal. Rptr. 2d 359 (1994) (explaining that in passing section 6253(b) the Legislature "specified . . . that the sole charge should be that for duplication" and specifically for "the direct cost of duplication" and not for "indirect" costs of duplication).

The City therefore may only collect fees to reimburse for the direct costs of providing copies of any record it creates, including the City Council Videos.  It is specifically barred by law from charging any fee to recoup the costs of original production.  And it is certainly not permitted to use the City Council Videos to generate any form of revenue.  There can therefore be no commercial market for the City Council Videos and no activity by Teixeira can deprive the City of any revenue.

Because copyright's purpose is to protect the commercial interest of authors so as to incentivize the creation of further works the lack of a market for the City Council Videos suggests that the City has no interest in copyright protection of the City Council Videos.

Further, even if the City could generate revenue from its works, Teixeira's videos are not a substitute.  The original works are lengthy, unadorned videos of City Council meetings.  Teixeira's videos are considerably shorter, contain even shorter portions of the City Council meetings, and are exclusively for the purpose of presenting Teixeira's views and commentary on Inglewood city politics.  *See Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986) (holding that there was no economic harm because the "two works do not fulfill the same demand").

Accordingly, this factor also strongly favors a finding of fair use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV–15–01815–MWF (MRWx)                    Date:  August 20, 2015
Title:        City of Inglewood -v- Joseph Teixeira, et al.

### 3.  Teixeira's Videos are Fair Use as a Matter of Law

Having reviewed the accused videos, the Court determines that – even assuming the City has any copyright interest to assert – they are clearly protected by the fair use doctrine.  Indeed, the Court can scarcely conceive of works that are more appropriately protected by the fair use doctrine and § 107 than the Teixeira Videos.  He is engaged in core First Amendment speech commenting on political affairs and matters of public concern.  To do so, he has taken carefully selected and short portions of significantly longer works, and embellished them with commentary and political criticism through music, his voice, and written subtitles.  Even if California law allowed the City to assert a copyright claim, Teixeira's activities plainly fall within the protections of fair use.

The City accuses Teixeira of wanting "to criticize the City without doing his own work" by "posting substantially all of the full [City Council Videos] with [his] comments posted on top of them."  (Opp. at 8).   Even if the City's characterization of the Teixeira Videos were accurate, fair use would allow such use for the purpose of commentary.  *Fisher*, 794 F. 2d at 438 ("'substantial copying by a defendant, combined with the fact that the portion copied constituted a substantial part of the defendant's work' does not automatically preclude the fair use defense.") (quoting *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 756 (9th Cir.1978)); *Northland*, 868 F. Supp. 2d at 980 (rejecting claim that defendant had taken too much of original video to qualify for fair use protection); *Savage*, 2008 WL 2951281, (N.D. Cal. Jul. 25, 2008) (holding that posting significant portions of radio hosts show to criticize his anti-Muslim views was protected fair use).

### C.    Motion to Strike

The Court declines to rule on the Motion to Strike given its ruling on Teixeira's Motion.

---

**CIVIL MINUTES—GENERAL**                                             **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  CV–15–01815–MWF (MRWx)**                    **Date:  August 20, 2015**
Title:        City of Inglewood -*v*- Joseph Teixeira, et al.

**IV.     CONCLUSION**

For the reasons stated above, the Court **GRANTS** the Motion.  It does so ***without leave to amend***.  First, the Court determines that the City is barred as a matter of law from bringing a copyright claim based on the City Council Videos.  Second, even if the City could assert a copyright claim, the accused Teixeira Videos constitute fair use as a matter of law.  Therefore, any amendment by the City would be futile and so leave to amend is not warranted.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.