DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (State Bar No. 141930)
   thomasburke@dwt.com
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone:  (415) 276-6500
Fax:  (415) 276-6599

DAVIS WRIGHT TREMAINE LLP
DAN LAIDMAN (State Bar No. 274482)
   danlaidman@dwt.com
DIANA PALACIOS (State Bar No. 290923)
   dianapalacios@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
Joseph Teixeira

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF INGLEWOOD, a public entity, | Case No. **2:15-cv-01815-MWF-MRW** |
| Plaintiff, | Assigned to the Hon. Michael Fitzgerald |
| vs. | **DECLARATION OF DAN LAIDMAN IN SUPPORT OF DEFENDANT'S MOTION TO RECOVER ATTORNEYS' FEES (17 U.S.C. § 505); EXHIBITS A-F** |
| JOSEPH TEIXEIRA and Does 1-10, | |
| Defendants. | |
| | Hearing Date:  October 5, 2015 |
| | Time:          10:00 a.m. |
| | Courtroom:     1600 |
| | [Notice of Motion and Motion to Recover Attorneys' Fees (17 U.S.C. § 505); Declaration of Thomas R. Burke; Declaration of Karlene Goller; Declartion of Kevin Vick; and [Proposed] Orders Filed Concurrently] |
| | Action Filed:  March 12, 2015 |

## DECLARATION OF DAN LAIDMAN

I, Dan Laidman, declare and state as follows:

1. I am an attorney admitted to practice before all the courts of the State of California and before this Court. I am an associate in the law firm of Davis Wright Tremaine LLP ("DWT"), and I am one of the attorneys representing defendant Joseph Teixeira in this matter. The matters stated below are true of my own personal knowledge except those matters stated on information and belief, which I believe to be true.

### Rates And Qualifications Of DWT Attorneys

2. DWT is a national law firm of more than 500 lawyers. The firm is known and recognized nationally for its First Amendment, communications law, and intellectual property litigation practice. DWT was retained to represent Mr. Teixeira in this matter on a pro bono basis.

3. Mr. Teixeira's defense has been handled primarily by DWT partner Thomas R. Burke; associate Diana Palacios; paralegal Warren Keville; and me. The following chart reflects our billing rates for 2015:

| Name | Title | 2015 Hourly Rate |
|------|-------|------------------|
| Thomas R. Burke | Partner | $645.00 |
| Dan Laidman | Associate | $395.00 |
| Diana Palacios | Associate | $335.00 |
| Warren Keville | Paralegal | $155.00 |

4. I am familiar with rates charged by other firms in Los Angeles, and based on my knowledge of the legal market, these rates are well within the range of rates charged by other comparable firms. These rates are particularly reasonable in light of the respective professionals' experience, skills and reputations.

5. I graduated from UCLA School of Law in 2010. Before attending law school I worked as a journalist for six years. From 2010 to 2011 I was a law clerk to

1

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a judge on the United States Court of Appeals for the Ninth Circuit.  I have been an associate at DWT since 2011, focusing my practice on media, First Amendment, and intellectual property litigation.  Since 2014 I have served on the board of directors of Californians Aware, a non-profit organization that promotes open government.

6.      My representative experience in First Amendment, copyright, and public records litigation matters includes:  Garcia v. Google, Inc., 786 F.3d 733 (9th Cir. 2015) (en banc) (copyright; representing media amici); Public.Resource.Org v. IRS, -- F. Supp. 3d ---, 2015 WL 393736 (N.D. Cal. 2015), and 50 F. Supp. 3d 1212 (N.D. Cal. 2014) (FOIA); Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications, LLC, -- Cal. App. 4th ---, 2015 WL 4934581 (2015) (First Amendment prior restraint); Crews v. Willows Unified School Dist., 217 Cal. App. 4th 1368 (2013) (CPRA; representing media amici); Marken v. Santa Monica-Malibu Unified School District, 202 Cal. App. 4th 1250 (2012) (CPRA); Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir. 2012) (copyright); Los Angeles Times Communications LLC et al. v. Los Angeles Memorial Coliseum Commission (Los Angeles Superior Court Case No. BS138331) (CPRA & Brown Act).

7.      Ms. Palacios is a 2012 graduate of the UC Irvine School of Law.  She spent two years as a clerk to a judge on the United States District Court for the Eastern District of California before joining DWT as an associate focusing on media, intellectual property, and public records matters.  Mr. Burke's experience and qualifications are described in his concurrently submitted declaration.

8.      I have personally reviewed DWT's billing records in this matter. Attached as **Exhibit A** is a true and correct copy of the daily time entries from each DWT timekeeper with descriptions of the work performed by each professional on each day.  These entries have been redacted to remove time entries for which Mr. Teixeira does not seek recovery, and to protect privileged or confidential information.  In addition, the first page of Exhibit A is a chart that summarizes the total amount of time spent by each professional.

2

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

9.      As reflected in Exhibit A, I handled the day-to-day litigation tasks necessary for Mr. Teixeira's defense, spending approximately 241.4 hours assessing the case and responding to the City's initial pre-litigation demands; researching and drafting the Motion to Dismiss, Reply, and Requests for Judicial Notice and preparing the supporting declarations and exhibits; responding to the City's attempt to take discovery, including by researching and drafting the Objections to the City's subpoena; meeting and conferring with the City's counsel; preparing for and appearing at the hearing and two status conferences; and researching and drafting the current Fee Motion and preparing the supporting papers.  I also spent considerable time communicating with Mr. Teixeira – an individual defendant and non-lawyer who had been sued by his city government – explaining the legal issues in the case and discussing his concerns about being sued and assorted strategic issues.

10.     As reflected in Exhibit A, Mr. Burke took a supervisory role, spending approximately 32.1 hours editing all of the briefing, assessing the case, and guiding Mr. Teixeira's litigation strategy.  Ms. Palacios spent approximately 32.8 hours researching and drafting Mr. Teixeira's Motion to Strike and the related portion of the Reply brief, and providing additional legal research throughout the litigation.

11.     In addition, paralegal Warren Keville spent approximately 12.5 hours cite-checking briefs and assisting in the preparation of case materials.

12.     The attorney fees incurred in this action were reasonable and necessary for the defense of the City's claim against Mr. Teixeira.  The legal services described in the time entries in Exhibit A were actually and necessarily performed.

13.     In an effort to avoid any duplication, we are not seeking recovery for approximately 16.9 hours of work that has been redacted from the time entries in Exhibit A, totaling $9,952.50.  This includes time incurred by Mr. Burke in attending and appearing at the June 22, 2015, hearing, and July 7, 2015, status conference; time spent by Ms. Palacios attending the June 22, 2015, hearing; and time that I spent consulting with other DWT attorneys who are experts in copyright and public records

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

law regarding our litigation strategy and the legal issues raised by the City's Complaint and Opposition papers.  We are also not seeking recovery for time that Mr. Burke and I spent responding to numerous media inquiries regarding the case, most of which is not reflected on the time entries in Exhibit A.

14.    As reflected in Exhibit A, through the preparation of this Fee Motion, Mr. Teixeira has incurred more than $128,983 in attorneys' fees for which he seeks recovery through the current motion.

15.    We will submit supplemental evidence with the Reply documenting additional time incurred in connection with that brief.  We estimate that the fees related to the Reply and hearing on the Fee Motion will be approximately $6,000.

**Mr. Teixeira's Efforts To Resolve This Matter Without Litigation**

16.    The City of Inglewood first sent Mr. Teixeira a letter in November 2014 threatening him with a copyright lawsuit for using clips from City Council meetings in his political commentary videos.  The City sent Mr. Teixeira additional letters threatening litigation (and attaching a draft complaint) in December 2014 and January 2015.  Mr. Teixeira, acting pro se, sent two response letters to the City's counsel (and provided a third to the City Attorney) in December 2014 and January 2015 explaining why he believed his conduct was lawful and attempting to resolve the situation without litigation, and I am informed and believe that he also called the City's counsel and left a voicemail message but received no response.

17.    DWT was retained to represent Mr. Teixeira on a pro bono basis in January 2015.  On February 10, 2015, I telephoned JoAnna M. Esty, counsel for the City of Inglewood.  In an effort to resolve this matter without the need for any litigation, I explained to Ms. Esty why the City's position lacked merit, and requested that the City withdraw its demand and retract its threat to sue Mr. Teixeira.  I told Ms. Esty that if the City proceeded with a lawsuit against Mr. Teixeria, it was likely that a court would dismiss the action and order the City to pay Mr. Teixeira's attorneys' fees.  Ms. Esty told me that the City still intended to bring a lawsuit

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

against Mr. Teixeira if he did not immediately and permanently remove the challenged videos.  However, Ms. Esty told me that if I sent her the legal authorities that support Mr. Teixeira's position she would consider them.

18.     On February 20, 2015, I sent a letter to Ms. Esty and Inglewood City Attorney Kenneth R. Campos, copying the Mayor of Inglewood and the members of the City Council.  The six-page letter detailed why the City could not enforce any copyright in the public records documenting its public meetings, and why Mr. Teixeira's videos were independently protected by the fair use doctrine.  I also advised that should the City proceed with a lawsuit, a court would likely order the City to pay Mr. Teixeira's attorneys' fees.  A true and correct copy of my February 20, 2015 letter is attached as **Exhibit B**.

19.     I received no response to my February 20, 2015 letter.  Instead, without any further communications, the City filed this lawsuit on March 12, 2015.

### Conduct By The City That Increased Defense Costs

20.     From the outset of this action through the parties' recent discussions about the fee issue, the amount of time necessary to defend this lawsuit has been increased significantly as a result of the City's own litigation tactics.

21.     As an initial matter, the City filed its Complaint without properly registering the purportedly copyrighted works, and sought relief in the form of attorneys' fees to which it was not entitled given the registration status.  This required Mr. Teixeira to bring a separate motion to strike the City's improper fee request.  Moreover, the City's Complaint ambiguously stated that the City had filed copyright registration applications for the works at issue, but the City did not actually attach the applications to its pleading, and did not identify when the applications were filed.  This required Mr. Teixeira's defense team to obtain the underlying applications – which proved that the registrations were not timely filed and that the City was not entitled to attorneys' fees as a matter of law – and to prepare and file a supplemental request for judicial notice of these records.  See Dkt. # 16.

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

22.     The time required to defend this action was also substantially increased due to the City's decision to seek discovery following the hearing on June 22, 2015. After this Court provided a tentative ruling stating that it was inclined to dismiss the lawsuit with prejudice, the City's counsel speculated for the first time that the allegedly infringing videos at issue might have been altered since they were first posted.  The Court directed the City's counsel to submit copies of the allegedly infringing videos that formed the basis of its claim by June 25, 2015.  In a letter dated June 24, 2015, the City stated it did not have copies of the videos that formed the basis for its Complaint, and so it would issue a subpoena to YouTube.  <u>See</u> Dkt. # 20. Mr. Teixeira's counsel did not receive this letter until June 29, 2015, at which point we promptly prepared Objections, which we filed on June 30, 2015.  <u>See</u> Dkt. # 21.

23.     The City proceeded to serve YouTube with a subpoena seeking:  "From 2010 to present: the identity and complete history of video uploads, downloads and removals, privacy setting for all uploads, all publishing dates and all modification information for any uploads, and copies of original and modified videos for Youtube Users: Dehol Truth, Inglewood's Watchdog, and Ingle wood."  Dkt. #24.

24.     On July 7, 2015, the Court held a telephonic status conference.  <u>See</u> Dkt. # 28.  A true and correct copy of the Reporter's Transcript ("RT") of the July 7 conference is attached as **Exhibit C**.  As reflected in the RT, the Court stated that "many of the arguments [in Mr. Teixeira's] objections have a lot of merit" and that the Court "strongly suspect[s] that [the City is] just flatly wasting my time and that [it is] flailing in the exact manner which counsel for the defendant have suggested in the objection."  Ex. C, RT at 6:5-6, 6:15-18.  The Court added that "the City should be in a position to answer this without the subpoenas.  But nonetheless, so there is absolutely no doubt, the subpoenas will issue."  <u>Id.</u> at 7:10-13.

25.     Regarding the subpoena's scope, the Court told the City's counsel that "your client wants to go on a fishing expedition, I can understand, but I'm not going to approve.  I don't see any real need for anything beyond those six videos."  <u>Id.</u> at

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

9:19-21.  The Court directed the City to notify YouTube "right away," reiterating that, "I do understand [Mr. Teixeira's] concern about the scope of the subpoena, which is why I expect that to be corrected right away."  Id. at 10:24; 11:18-19.

26.    I subsequently communicated with the City's counsel several times in an effort to ensure compliance with the Court's directives, and to provide feedback on the City's proposed letter to YouTube.  The City ultimately contacted YouTube to notify it about the modifications more than a week after the status conference, on July 15, 2015, and only after I contacted the Court's clerk to request another conference.  The subpoena had a return date of August 3, 2015, but the City did not provide us with any information about its status until August 17, 2015.  During this time period I also responded to an inquiry that Mr. Teixeira received from Google regarding the subpoena.  True and correct copies of the correspondence from July 7, 2015, to August 11, 2015 (with attachments omitted), are attached as **Exhibit D**.

27.    The Court held a further status conference on August 18, 2015, during which the City conceded that the videos identified in the Complaint were the same ones that Mr. Teixeira submitted to the Court.  See Dkt. # 34, 35 (Order at 4).

### Public Response To The City's Lawsuit

28.    The City's pursuit of this action drew extensive media coverage and attention from legal organizations and academic commentators.  True and correct copies of the following representative publications, which I downloaded from the Internet at the addresses indicated, are attached as **Exhibit E**:

a. Angel Jennings, "Inglewood sues resident over YouTube videos using council footage to bash mayor," Los Angeles Times (Aug. 3, 2015, available at http://www.latimes.com/local/california/la-me-inglewood-lawsuit-20150803-story.html;

b. Los Angeles Times Editorial Board, "Inglewood shows how not to swat a gadfly," Los Angeles Times (June 5, 2015), available at

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

http://www.latimes.com/opinion/editorials/la-ed-inglewood-copyrights-20150605-story.html;

c. Eugene Volokh, "City sues critic for supposedly infringing city's copyright by posting city council video clips (with commentary) on YouTube," Volokh Conspiracy/Washington Post (June 3, 2015), available at https://www.washingtonpost.com/news/volokh-conspiracy/wp/2015/06/03/city-sues-critic-for-supposedly-infringing-citys-copyright-by-posting-city-council-video-clips-with-commentary-on-youtube/;

d. Eugene Volokh, "City loses copyright lawsuit against critic who posted city council video clips (with commentary) on YouTube," Volokh Conspiracy/Washington Post (Aug. 21, 2015), available at https://www.washingtonpost.com/news/volokh-conspiracy/wp/2015/08/21/city-loses-copyright-lawsuit-against-critic-who-posted-city-council-video-clips-with-commentary-on-youtube/;

e. Dan Walters, "Politicians just hate bad media," Sacramento Bee (Aug. 3, 2015), available at http://www.sacbee.com/news/politics-government/dan-walters/article29891365.html;

f. Erin Aubry Kaplan, "Why Inglewood is Wrong for Suing for Copyright," KCET (June 12, 2015), available at http://www.kcet.org/socal/departures/columns/cakewalk/copywright-wrong.html;

g. Peter Scheer, "Shame on Inglewood. Using copyright as a muzzle, the city files suit to censor a local critic," First Amendment Coalition (May 29, 2015), available at http://firstamendmentcoalition.org/2015/05/using-copyright-as-a-censors-muzzle-inglewood-files-suit-to-silence-a-city-

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

critic/?utm_source=First+Amendment+Coalition+%22Flash%22+newsletter&utm_campaign=6dcb75349c-Flash+Newsletter+-+RSS+-+February+2015&utm_medium=email&utm_term=0_959005e04c-6dcb75349c-274704345;

h. Josh Askildsen, "Inglewood Mayor Using Copyright For Censorship," National Coalition Against Censorship (June 8, 2015), available at http://ncac.org/blog/inglewood-mayor-using-copyright-for-censorship/;

i. Eric Goldman, "City Can't Use Copyright To Censor Critical Videos–Inglewood v. Teixeira," Technology & Marketing Law Blog (Aug. 24, 2015), available at http://blog.ericgoldman.org/archives/2015/08/city-cant-use-copyright-to-censor-critical-videos-inglewood-v-teixeira.htm;

j. Rebecca Tushnet, "The platonic ideal of fair use: critical remix of municipal video," Rebecca Tushnet's 43(B)log (Aug. 24, 2015), available at http://tushnet.blogspot.com/2015/08/the-platonic-ideal-of-fair-use-critical.html;

k. Jonathan Turley, "Federal Court Rules That City of Inglewood Cannot Copyright City Council Meetings," Aug. 23, 2015, available at http://jonathanturley.org/2015/08/23/federal-court-rules-that-city-of-inglewood-cannot-copyright-city-council-meetings/.

**Mr. Teixeira's Efforts To Resolve The Fee Issue Without A Motion**

29.     On August 21, 2015, I sent an email to Ms. Esty informing her that Mr. Teixeira intended to move for fee recovery pursuant to 17 U.S.C. § 505, and to determine if the City would consider resolving the issue informally.  I stated in my initial correspondence that if the City would need more than a week to decide on a resolution then we would stipulate to continue the fee motion deadline, which per Local Rule 54-10 and FRCP 54(d) would be due by September 3, 2015.

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

30.     Ms. Esty responded on August 21, 2015, by stating that any settlement would require approval from the Inglewood City Council, and that the issue would have to be noticed in advance of the Council's meetings, which take place once a week on Tuesdays.  Ms. Esty asked for our fee request, but did not respond regarding an extension.  I responded on the afternoon of August 21, 2015, by providing an estimated fee request, and reiterating our offer to stipulate to an extension.

31.     Having received no response, I sent Ms. Esty an email on August 25, 2015, noting that, given the need for Council approval, an extension of the 14-day deadline would be necessary for any settlement discussions, and requesting again that the parties stipulate to an extension.  I received no response to this email.

32.     On August 27, 2015, I telephoned Ms. Esty to discuss the fee issue.  Ms. Esty informed me that the City would not consider agreeing to extend the deadline until after we had provided detailed billing records.  I told Ms. Esty that we would consider providing such documentation as part of the settlement process, but that given the short timeline for bringing a motion and the City's need for Council approval of any resolution, an extension was a necessary prerequisite for any meaningful settlement discussions.  Ms. Esty and I subsequently exchanged emails on the subject on August 27, 2015, and August 28, 2015.  True and correct copies of my correspondence with Ms. Esty on the fee issue between August 21, 2015, and August 28, 2015, are attached as **Exhibit F**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 3rd day of September 2015, at Los Angeles, California.

_____/s/ Dan Laidman_____
                                       Dan Laidman

DECLARATION OF DAN LAIDMAN
DWT 27750664v2 0200856-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A

**Fees and Hours Worked by Each Timekeeper - 2015**

|  | Timekeeper (Position) | Hours | Hourly Rate | Total |
|---|---|---|---|---|
|  | Burke, T (Partner) | 32.10 | $645.00 | $20,704.50 |
|  | Laidman, D (Associate) | 241.40 | $395.00 | $95,353.00 |
|  | Palacios, D (Associate) | 32.80 | $335.00 | $10,988.00 |
|  | Keville, W (Paralegal) | 12.50 | $155.00 | $1,937.50 |
| **Total** |  | **318.8** |  | **$128,983.00** |

| Date | Name | Hours | Amount | Description |
|------|------|-------|--------|-------------|
| 1/5/2015 | Dan Laidman | 1.00 | 395.00 | Review background materials including correspondence and draft Complaint |
| 1/8/2015 | Dan Laidman | 2.60 | 1027.00 | Communicate with Mr. Teixeira about background of legal threats from City of Inglewood (.8); review background materials including YouTube videos, correspondence, and draft Complaint (1.8) |
| 1/8/2015 | Dan Laidman | 1.10 | 434.50 | Research law regarding copyright protection for public records |
| 1/8/2015 | Thomas Burke | [omitted] | [omitted] | Review background facts and provide guidance to D. Laidman regarding [redacted] (.8, time omitted) |
| 1/22/2015 | Dan Laidman | 3.30 | 1303.50 | Communicate with Mr. Teixeira regarding case status (.3); research law regarding copyright status of public records, fair use, and copyright misuse defense (3) |
| 1/26/2015 | Dan Laidman | 2.30 | 908.50 | Research and draft letter to counsel for City of Inglewood responding to threatened copyright litigation |
| 1/28/2015 | Dan Laidman | 3.30 | 1303.50 | Research and draft letter to counsel for City of Inglewood responding to threatened copyright litigation (3.3); communicate with C. Calman regarding strategic issues (.2, time omitted) |
| 1/28/2015 | Camille Calman | [omitted] | [omitted] | Discuss with D. Laidman [redacted] (.2, time omitted) |
| 2/4/2015 | Thomas Burke | 1.20 | 774.00 | Review and revise demand letter to the City of Inglewood; conference with D. Laidman regarding revisions [redacted] |
| 2/4/2015 | Dan Laidman | 1.10 | 434.50 | Conference with T. Burke regarding case strategy (.6); communicate with Mr. Teixeira regarding case strategy (.3); revise letter to City (.2) |
| 2/6/2015 | Dan Laidman | 0.70 | 276.50 | Review background materials and correspondence between Mr. Teixeira and City and communicate with Mr. Teixeira regarding same |
| 2/9/2015 | Dan Laidman | 0.10 | 39.50 | Communicate with Mr. Teixeira regarding case status and strategy |
| 2/10/2015 | Dan Laidman | 1.20 | 474.00 | Telephone conference with JoAnna Esty, counsel for City (.3); communicate with Mr. Teixeira regarding case status and strategy (.5); review follow-up correspondence from City received by Mr. Teixeira (.4) |
| 2/11/2015 | Dan Laidman | 0.10 | 39.50 | Communicate with Mr. Teixeira regarding case status and strategy |
| 2/12/2015 | Dan Laidman | 1.40 | 553.00 | Telephone conference with Mr. Teixeira regarding case status and strategy (.4); communicate with T. Burke regarding case status and strategy (.3); research legal and procedural issues for preparation of response letter to City (.7) |
| 2/16/2015 | Dan Laidman | 2.80 | 1106.00 | Revise response letter to City |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 2/17/2015 | Dan Laidman | 0.40 | 158.00 | Revise response letter to City |
| 2/18/2015 | Dan Laidman | 0.60 | 237.00 | Revise response letter to City (.4); communicate with T. Burke regarding revisions to response letter (.2) |
| 2/18/2015 | Thomas Burke | 0.30 | 193.50 | Review revised demand letter to the City of Inglewood and suggest revisions to D. Laidman |
| 2/19/2015 | Dan Laidman | 1.60 | 632.00 | Revise response letter to City (1.2); communicate with Mr. Teixeira regarding revisions to letter (.4) |
| 2/20/2015 | Dan Laidman | 0.70 | 276.50 | Revise response letter to City and finalize for delivery |
| 3/4/2015 | Thomas Burke | 0.30 | 193.50 | Conference with D. Laidman regarding status of potential litigation and strategy options based on City of Inglewood's response |
| 3/12/2015 | Dan Laidman | 2.70 | 1066.50 | Review Complaint and other materials from court docket (.4); communicate with Mr. Teixeira regarding lawsuit and next steps (.8); communicate with T. Burke regarding lawsuit and strategy for response (.5); review case background materials for preparation of response to Complaint (1) |
| 3/12/2015 | Thomas Burke | 1.80 | 1161.00 | Initial review and analysis of the City's Complaint and conference with D. Laidman regarding response to same (including advice regarding [redacted]) |
| 3/13/2015 | Dan Laidman | 0.50 | 197.50 | Communicate with Mr. Teixeira regarding strategy for responding to City's lawsuit (.5); research law regarding [redacted] (.8 time omitted) |
| 3/16/2015 | Dan Laidman | 2.00 | 790.00 | Communicate with T. Burke regarding strategy for responding to City's Complaint (.5); communicate with M. Nelson regarding strategy for responding to City's Complaint (.4, time omitted); research copyright law issues for response to City's Complaint (1.5) |
| 3/16/2015 | Marshall J. Nelson | [omitted] | [omitted] | Conference with D. Laidman regarding copyright/public records analysis; review complaint and relevant caselaw (1.5, time omitted) |
| 3/16/2015 | Thomas Burke | 0.20 | 129.00 | Advice to D. Laidman regarding [redacted] |
| 3/17/2015 | Dan Laidman | 0.60 | 237.00 | Communicate with Mr. Teixeira regarding lawsuit and strategy for response (.5); communicate with T. Burke regarding strategy for response to Complaint (.1) |
| 3/18/2015 | Dan Laidman | 0.30 | 118.50 | Communicate with Mr. Teixeira regarding strategy for response to Complaint (.3); communicate with E. Stahl regarding strategy for response to City's Complaint (.3, time omitted) |
| 3/18/2015 | Dan Laidman | 1.50 | 592.50 | Research and draft Motion to Dismiss |

| Date | Name | Hours | Amount | Description |
|------|------|-------|--------|-------------|
| 3/18/2015 | Eric M. Stahl | [omitted] | [omitted] | Confer with D. Laidman regarding case strategy and analysis (.3, time omitted) |
| 3/20/2015 | Dan Laidman | 3.30 | 1303.50 | Research and draft Motion to Dismiss |
| 3/21/2015 | Dan Laidman | 3.20 | 1264.00 | Research and draft Motion to Dismiss |
| 3/21/2015 | Diana Palacios | 2.50 | 837.50 | Research implied in law license |
| 3/22/2015 | Dan Laidman | 4.40 | 1738.00 | Research and draft Motion to Dismiss |
| 3/23/2015 | Thomas Burke | 0.70 | 451.50 | Review [redacted] (.40, time omitted); provide further guidance regarding arguments and strategy for anticipated Motion to Dismiss [redacted] (.70) |
| 3/23/2015 | Dan Laidman | 4.20 | 1659.00 | Research and draft Motion to Dismiss |
| 3/23/2015 | Dan Laidman | 2.60 | 1027.00 | Communicate with Mr. Teixeira regarding case background and strategy for responding to Complaint (.8); communicate with T. Burke regarding strategy for responding to Complaint (.5); communicate with D. Palacios regarding legal research on copyright issues, including review of related e-memorandum (1.3) |
| 3/24/2015 | Dan Laidman | 2.80 | 1106.00 | Research and draft Motion to Dismiss |
| 3/25/2015 | Dan Laidman | 2.20 | 869.00 | Research and draft Motion to Dismiss |
| 3/26/2015 | Dan Laidman | 0.30 | 118.50 | Communicate with Mr. Teixeira regarding response to Complaint |
| 3/27/2015 | Dan Laidman | 0.10 | 39.50 | Communicate with City's attorney regarding service of Complaint |
| 3/27/2015 | Dan Laidman | 0.80 | 316.00 | Communicate with D. Palacios regarding copyright legal research issues and response to Complaint (.3); communicate with Mr. Teixeira regarding case background, service, and response to Complaint (.5) |
| 3/27/2015 | Dan Laidman | 1.10 | 434.50 | Research and draft Motion to Dismiss |
| 3/27/2015 | Diana Palacios | 3.90 | 1306.50 | Create chart [redacted] (.8); research [redacted] (.6); research [redacted] (2.1); draft e-memorandum to D. Laidman regarding [redacted] (.4) |
| 3/28/2015 | Dan Laidman | 2.10 | 829.50 | Research and draft Motion to Dismiss and supporting declarations |
| 3/30/2015 | Dan Laidman | 0.40 | 158.00 | Communicate with City's counsel regarding service of Complaint and review service copy of pleadings and related materials (.2); communicate with Mr. Teixeira regarding service of Complaint and related materials (.2) |
| 3/30/2015 | Dan Laidman | 1.30 | 513.50 | Prepare declarations and exhibits in support of Motion to Dismiss |
| 3/31/2015 | Kelli Sager | [omitted] | [omitted] | Communicate with D. Laidman regarding strategy for response to complaint  (.3, time omitted) |

27712857_6.XLSX

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 3/31/2015 | Dan Laidman | 2.30 | 908.50 | Research and draft Motion to Dismiss and prepare supporting declarations and exhibits (2.3); communicate with K. Sager regarding response to Complaint (.3, time omitted) |
| 3/31/2015 | Thomas Burke | 0.40 | 258.00 | Review and analysis of proposed Motion under Rule 12 (b)(6), status of evidence to support same and timing issues and provide guidance to D. Laidman regarding same |
| 4/1/2015 | Dan Laidman | 0.50 | 197.50 | Communicate with Mr. Teixeira regarding evidence in support of Motion to Dismiss (.2); communicate with D. Palacios regarding evidence in support of motion to dismiss and Request for Judicial Notice (.3) |
| 4/1/2015 | Diana Palacios | 2.30 | 770.50 | Write motion to strike request for attorneys' fees |
| 4/2/2015 | Dan Laidman | 4.10 | 1619.50 | Research and draft Motion to Dismiss |
| 4/2/2015 | Diana Palacios | 3.80 | 1273.00 | Research Ninth Circuit cases where court struck attorneys' fees (1.2); write motion to strike attorneys' fee request (2.6) |
| 4/2/2015 | Thomas Burke | 0.30 | 193.50 | Attention to status and provide further guidance to D. Laidman regarding anticipated motion to dismiss |
| 4/3/2015 | Dan Laidman | 6.40 | 2528.00 | Research and draft Motion to Dismiss |
| 4/5/2015 | Thomas Burke | 3.70 | 2386.50 | Review and revise draft Motion to Dismiss |
| 4/6/2015 | Thomas Burke | 2.10 | 1354.50 | Further edit Motion to Dismiss; conference with D. Laidman regarding suggested revisions |
| 4/6/2015 | Dan Laidman | 4.70 | 1856.50 | Communicate with Mr. Teixeira regarding evidence in support of Motion to Dismiss and Motion to Strike (.4); communicate with T. Burke regarding revisions to Motion to Dismiss (.8); communicate with D. Palacios regarding Motion to Strike (.1); revise Motion to Dismiss (3.4) |
| 4/6/2015 | Diana Palacios | 1.30 | 435.50 | Revise motion to strike attorneys' fees request |
| 4/7/2015 | Dan Laidman | 8.80 | 3476.00 | Communicate with Mr. Teixeira regarding evidence in support of Motion to Strike and Motion to Dismiss (.3); revise Motion to Dismiss (6.1); revise Motion to Strike (2.4) |
| 4/7/2015 | Thomas Burke | 1.20 | 774.00 | Review and further revise Motion to Dismiss |
| 4/8/2015 | Thomas Burke | 0.80 | 516.00 | Review and revise draft Motion to Strike and confer with D. Laidman regarding strategy issues raised by same |
| 4/8/2015 | Dan Laidman | 4.30 | 1698.50 | Revise Motion to Strike and communicate with T. Burke and D. Palacios regarding revisions |

| Date | Name | Hours | Amount | Description |
|------|------|-------|--------|-------------|
| 4/9/2015 | Dan Laidman | 6.90 | 2725.50 | Participate in meet-and-confer call with Plaintiff's counsel (.3); prepare declarations and evidence in support of Motion to Dismiss and Motion to Strike (5.2); prepare Request for Judicial Notice (1.4) |
| 4/10/2015 | Dan Laidman | 1.20 | 474.00 | Prepare declarations and exhibits in support of Motion to Dismiss and Motion to Strike (.8); communicate with Mr. Teixeira regarding declaration and exhibits in support of Motion to Dismiss and Motion to Strike (.4) |
| 4/13/2015 | Dan Laidman | 1.10 | 434.50 | Revise declarations and exhibits in support of Motion to Dismiss and Motion to Strike and communicate with Mr. Teixeira regarding same (.9); communicate with Plaintiff's counsel regarding hearing and briefing schedule (.2) |
| 4/14/2015 | Dan Laidman | 4.70 | 1856.50 | Prepare stipulation and proposed order regarding hearing on Motions and briefing schedule and communicate with Plaintiff's counsel regarding same (.6); revise Motion to Dismiss (1.2); revise Motion to Strike (.8); revise declarations and exhibits in support of Motions (2.1) |
| 4/14/2015 | Warren Keville | 1.30 | 201.50 | Review and cite check Motion to Dismiss, Motion to Strike Fee Request, and Request for Judicial Notice |
| 4/15/2015 | Dan Laidman | 2.20 | 869.00 | Revise declarations and exhibits in support of Motion to Dismiss and Motion to Strike (1); prepare Notice of Lodging (.4); prepare Proposed Orders (.5); prepare Certificate of Interested Parties (.1); Prepare Notice of Manual Filing (.2) |
| 4/15/2015 | Diana Palacios | 1.20 | 402.00 | Review motion to strike (.3); review request for judicial notice (.2); review declaration in support of motions (.2); draft proposed order granting motion to strike (.5) |
| 4/15/2015 | Warren Keville | 5.00 | 775.00 | Complete review and cite check of Motion to Dismiss, Motion to Strike Fee Request, and Request for Judicial Notice and prepare negative history report summaries for D. Laidman |
| 4/16/2015 | Dan Laidman | 4.70 | 1856.50 | Revise and finalize for filing Stipulation and Proposed Order re: hearing and briefing schedule and communicate with Plaintiff's counsel regarding same (1); revise Motion to Dismiss (1.8); revise Motion to Strike (.5); revise declarations and exhibits in support of Motions (1.4) |
| 4/16/2015 | Diana Palacios | 0.20 | 67.00 | Revise proposed order |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 4/17/2015 | Dan Laidman | 1.70 | 671.50 | Revise and finalize for filing Motion to Dismiss, Motion to Strike, and supporting papers (1.4); review Court's Order re: hearing and briefing schedule (.1); communicate with Mr. Teixeira regarding filing of Motions and next steps (.2) |
| 4/21/2015 | Dan Laidman | 0.20 | 79.00 | Communicate with Mr. Teixeira regarding case status and next steps |
| 4/21/2015 | Thomas Burke | [omitted] | [omitted] | Conference with D. Laidman regarding status and [redacted] (.3, time omitted) |
| 4/22/2015 | Dan Laidman | 0.50 | 197.50 | Communicate with Mr. Teixeira regarding evidence in support of Motion to Strike and Motion to Dismiss (.2); research regarding submission of supplemental evidence in support of Motions (.3) |
| 4/23/2015 | Thomas Burke | [omitted] | [omitted] | Circulate background and case information to solicit potential amici support (.3, time omitted) |
| 4/29/2015 | Dan Laidman | 0.50 | 197.50 | Review Court's filing of Notice of Lodging of DVDs and communicate with T. Burke and D. Palacios regarding case status and next steps (.2); communicate with Mr. Teixeira regarding evidence in support of Motion to Strike and Motion to Dismiss (.3) |
| 4/30/2015 | Dan Laidman | 2.80 | 1106.00 | Prepare Supplemental Request for Judicial Notice and supporting declaration and exhibit |
| 4/30/2015 | Thomas Burke | 0.30 | 193.50 | Review Mr. Teixeira's Request for Judicial Notice (showing the untimeliness of the City's copyright registrations) and guidance to D. Laidman regarding strategy regarding same |
| 4/30/2015 | Diana Palacios | 0.30 | 100.50 | Prepare and file T. Burke notice of appearance |
| 5/1/2015 | Dan Laidman | 1.60 | 632.00 | Revise and finalize for filing Supplemental Request for Judicial Notice with supporting declaration and exhibit |
| 5/18/2015 | Dan Laidman | 2.30 | 908.50 | Review Inglewood's Opposition to Motion to Dismiss and Motion to Strike (1.4); communicate with Mr. Teixeira about Opposition and next steps (.3); communicate with T. Burke regarding Opposition and next steps (.2); communicate with D. Palacios regarding Opposition and preparation of Reply in support of Motion to Strike (.4) |
| 5/19/2015 | Thomas Burke | 1.20 | 774.00 | Review and analysis of the City's opposition to Mr. Teixeira's Motions to Strike and Dismiss |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 5/20/2015 | Thomas Burke | 3.40 | 2193.00 | Further analysis of City's arguments and lead telephone conference with D. Laidman and D. Palacios regarding strategy and response to same |
| 5/20/2015 | Dan Laidman | 3.00 | 1185.00 | Telephone conference with T. Burke and D. Palacios regarding strategy for Reply (1.1); research and draft Reply ISO Motion to Dismiss (1.9) |
| 5/20/2015 | Diana Palacios | 1.00 | 335.00 | Phone conference with T. Burke and D. Laidman to review opposition and discuss reply |
| 5/24/2015 | Dan Laidman | 4.30 | 1698.50 | Research and draft Reply ISO Motion to Dismiss |
| 5/25/2015 | Dan Laidman | 5.20 | 2054.00 | Research and draft Reply ISO Motion to Dismiss |
| 5/26/2015 | Dan Laidman | 3.90 | 1540.50 | Research and draft Reply ISO Motion to Dismiss |
| 5/26/2015 | Diana Palacios | 1.30 | 435.50 | Research cases that hold that a motion to strike can be converted into a motion to dismiss (.3); research cases where plaintiff concedes by failing to oppose (1.0) |
| 5/29/2015 | Dan Laidman | 5.10 | 2014.50 | Research and draft Reply ISO Motion to Dismiss |
| 5/30/2015 | Dan Laidman | 5.40 | 2133.00 | Research and draft Reply ISO Motion to Dismiss |
| 5/30/2015 | Diana Palacios | 1.40 | 469.00 | Begin writing section for reply brief |
| 5/30/2015 | Thomas Burke | [omitted] | [omitted] | Review and exchange of communications with D. Laidman regarding [redacted] (.6, time omitted) |
| 5/31/2015 | Dan Laidman | 2.10 | 829.50 | Research and draft Reply ISO Motion to Dismiss |
| 6/2/2015 | Dan Laidman | 4.60 | 1817.00 | Research and draft Reply in Support of Motion to Dismiss (3.2); edit Reply in Support of Motion to Strike (1.4) |
| 6/2/2015 | Diana Palacios | 3.80 | 1273.00 | Review consolidated reply (.6); write reply section in support of motion to strike (3.2) |
| 6/2/2015 | Thomas Burke | 3.20 | 2064.00 | Exchange of communications with D. Laidman regarding [redacted] (.5, time omitted); begin review and edits to draft Reply brief (3.2) |
| 6/3/2015 | Thomas Burke | 3.70 | 2386.50 | Further revise and edit draft Reply brief and follow-up guidance to D. Laidman regarding same |
| 6/3/2015 | Dan Laidman | 3.70 | 1461.50 | Revise Reply in Support of Motion to Dismiss per comments from T. Burke and Mr. Teixeira |
| 6/3/2015 | Diana Palacios | 0.80 | 268.00 | Review and revise reply based on T. Burke's comments |
| 6/4/2015 | Dan Laidman | 3.30 | 1303.50 | Revise Reply in Support of Motion to Dismiss |
| 6/4/2015 | Warren Keville | 1.80 | 279.00 | Review Reply in support of Motion to Dismiss and check citations for accuracy and negative case history |

| Date | Name | Hours | Amount | Description |
|------|------|-------|--------|-------------|
| 6/5/2015 | Warren Keville | 3.20 | 496.00 | Review Reply in support of Motion to Dismiss and check citations for accuracy and negative case history and correspondence with D. Laidman regarding results |
| 6/5/2015 | Dan Laidman | 2.50 | 987.50 | Revise and finalize for filing Reply in Support of Motion to Dismiss |
| 6/15/2015 | Warren Keville | 1.20 | 186.00 | Assemble cases cite into hearing preparation set for D. Laidman |
| 6/18/2015 | Dan Laidman | 2.00 | 790.00 | Prepare for hearing on Motion to Dismiss, including review of case law, briefing, and supporting papers |
| 6/19/2015 | Dan Laidman | 3.90 | 1540.50 | Prepare for hearing on Motion to Dismiss, including review of case law, briefing, and supporting papers, and conference with T. Burke and D. Palacios |
| 6/19/2015 | Diana Palacios | 2.50 | 837.50 | Review briefing to create practice questions for hearing (1.2); conference call to help prepare D. Laidman for hearing (1.3); review of [redacted] (.6, time omitted) |
| 6/19/2015 | Thomas Burke | [omitted] | [omitted] | Brief review of key briefs and participate argument preparation with D. Laidman and D. Palacios (1.2, time redacted) |
| 6/20/2015 | Dan Laidman | 1.80 | 711.00 | Prepare for hearing on Motion to Dismiss, including review of case law, briefing, and supporting papers |
| 6/21/2015 | Dan Laidman | 2.90 | 1145.50 | Prepare for hearing on Motion to Dismiss, including review of case law, briefing, and supporting papers |
| 6/22/2015 | Dan Laidman | 4.80 | 1896.00 | Prepare for and appear at hearing on Motion to Dismiss (3); analyze issues related to Court's direction to Plaintiff's counsel to submit follow-up materials (1.8) |
| 6/22/2015 | Diana Palacios | [omitted] | [omitted] | Attend hearing for motion to dismiss and motion to strike (1.5, time omitted) |
| 6/22/2015 | Thomas Burke | [omitted] | [omitted] | Attend hearing on Mr. Teixeira's Motion Dismiss, initial analysis of the Court's detailed tentative ruling in favor of Mr. Teixeira and further assist D. Laidman with same; post-hearing conference with Mr. Teixeira regarding substantive issues raised by the hearing and likely next steps; further conference with D. Laidman regarding issues raised by the court and anticipated next issues; associated travel to/from Albany to Los Angeles regarding same [5.5, time omitted] |
| 6/23/2015 | Dan Laidman | 0.40 | 158.00 | Analyze issues related to Court's direction Plaintiff's counsel to submit follow-up materials |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 6/26/2015 | Dan Laidman | 0.70 | 276.50 | Analyze issues related to Court's direction to Plaintiff's counsel to submit follow-up materials and communicate with T. Burke and D. Palacios regarding same |
| 6/26/2015 | Diana Palacios | 0.30 | 100.50 | Communicate with D. Laidman and T. Burke regarding filing with the court a notice about plaintiff's failure to challenge authenticity (.3) |
| 6/29/2015 | Diana Palacios | 0.50 | 167.50 | Communicate with D. Laidman regarding ex parte (.2); review objection to opposing counsel's discovery request (.3) |
| 6/29/2015 | Dan Laidman | 6.20 | 2449.00 | Review Court's 6/26 Order and communicate with Plaintiff's counsel regarding improper communication with court and request for discovery (.8); research and draft Objection to Plaintiff's Ex Parte Request for Discovery and Request for Clarification of Court's 6/26 Order (5.4) |
| 6/29/2015 | Thomas Burke | 0.70 | 451.50 | Analysis of Court's order regarding City's subpoena to YouTube and issues raised by same; conference with D. Laidman regarding same and review draft correspondence to plaintiff's counsel; follow-up conference with D. Laidman regarding strategy to formally object to plaintiff's anticipated subpoena to YouTube |
| 6/30/2015 | Thomas Burke | 0.60 | 387.00 | Review and approve final edits to declaration and objection; analysis of broad subpoena sought by the City and conference with D. Laidman regarding same and potential further challenge to the City's unilateral attempt to seek discovery (via subpoena to YouTube) |
| 6/30/2015 | Dan Laidman | 3.40 | 1343.00 | Revise and finalize for filing Objection to Plaintiff's Ex Parte Request for Discovery and Request for Clarification of Court's 6/26 Order and supporting papers (2.2); review correspondence from Plaintiff's counsel regarding subpoena and work on strategy for response (1.2) |
| 6/30/2015 | Diana Palacios | 0.30 | 100.50 | Communicate with D. Laidman regarding objections and possible revision |
| 7/1/2015 | Diana Palacios | 0.90 | 301.50 | Communicate with D. Laidman regarding requirements for subpoenas (.4); review other motions to quash for possible arguments (.5) |

| Date | Name | Hours | Amount | Description |
|------|------|-------|--------|-------------|
| 7/1/2015 | Dan Laidman | 2.70 | 1066.50 | Prepare meet-and-confer correspondence to Plaintiff's Counsel regarding anticipated motion in response to Subpoena (1.2); communicate with court clerk regarding telephonic status conference (.2); communicate with Mr. Teixeira regarding case status and strategy (.7); communicate with T. Burke regarding strategy for responding to subpoena (.5); review Court's Order rejecting City's letter (.1) |
| 7/1/2015 | Thomas Burke | 0.30 | 193.50 | Review and attention to potential next steps regarding potential motion to quash City's improper discovery; review Court's inquiry and scheduling of hearing to address plaintiff's subpoena issue |
| 7/2/2015 | Dan Laidman | 0.40 | 158.00 | Review City's Subpoena to YouTube and communicate with Mr. Teixeira and T. Burke regarding same |
| 7/2/2015 | Diana Palacios | 1.40 | 469.00 | Research standing for motion to quash subpoenas |
| 7/6/2015 | Diana Palacios | 0.90 | 301.50 | Draft e-memorandum to D. Laidman regarding motion to quash |
| 7/6/2015 | Dan Laidman | 0.50 | 197.50 | Prepare for telephonic status conference |
| 7/7/2015 | Dan Laidman | 3.20 | 1264.00 | Prepare for telephonic status conference (.8); review research regarding subpoena response and objections and communicate with D. Palacios regarding same (1.3); appear for telephonic status conference (.4); prepare correspondence to Plaintiff's counsel regarding modifications to subpoena (.7) |
| 7/7/2015 | Diana Palacios | 1.50 | 502.50 | Hearing for motion to dismiss and subpoena and phone conference with D. Laidman and T. Burke (1.0); communicate with D. Laidman regarding subpoena scope (.2); research requirements for obtaining subpoenaed information (.3) |
| 7/7/2015 | Thomas Burke | 0.50 | 322.50 | Assist D. Laidman to prepare for Case Management Conference arguments and appear at telephonic hearing (.6, time omitted); post-hearing conference with D. Laidman and D. Palacios regarding strategy and next steps (.40); edit follow-up communications to City Attorney (.10) |
| 7/8/2015 | Thomas Burke | 0.50 | 322.50 | Conference with D. Laidman regarding strategy to address City's anticipated failure to provide timely notice of its court-required modification of its subpoena to YouTube and approve wording of follow-up demand to plaintiff's counsel |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 7/8/2015 | Dan Laidman | 0.80 | 316.00 | Communicate with Mr. Teixeira regarding case status and strategy (.3); communicate with T. Burke and D. Palacios regarding strategy (.4); review Court's Order regarding telephonic status conference and modifications to subpoena (.1) |
| 7/9/2015 | Dan Laidman | 1.20 | 474.00 | Prepare follow-up correspondence to Plaintiff's counsel, including review of transcript of telephonic status conference (.8); communicate with Mr. Teixeira regarding case status (.2); communicate with T. Burke and D. Palacios regarding strategy (.2) |
| 7/9/2015 | Diana Palacios | 0.20 | 67.00 | Communicate with D. Laidman and T. Burke regarding email to opposing counsel about limiting subpoena |
| 7/9/2015 | Thomas Burke | 0.30 | 193.50 | Review Ms. Esty's non-response to request to provide court-required correspondence to modify subpoena to YouTube and provide further direction to D. Laidman regarding response to same |
| 7/10/2015 | Dan Laidman | 0.20 | 79.00 | Communicate with Plaintiff's counsel regarding City's failure to respond to Court's Order re: modification of subpoena |
| 7/13/2015 | Dan Laidman | 1.40 | 553.00 | Revise City's draft letter to YouTube regarding modifications to subpoena and communicate with Plaintiff's counsel, Mr. Teixeira, and T. Burke regarding same |
| 7/13/2015 | Diana Palacios | 0.50 | 167.50 | Review letter from opposing counsel and communicate with D. Laidman and T. Burke regarding same |
| 7/13/2015 | Thomas Burke | 0.40 | 258.00 | Review plaintiff's draft letter regarding YouTube subpoena and provide guidance to D. Laidman regarding handling objections and potential further involvement by the Court |
| 7/14/2015 | Thomas Burke | 0.60 | 387.00 | Provide further guidance to D. Laidman regarding timing issues and wording of follow-up demands to plaintiff's counsel (regarding You Tube subpoena) and follow-up request that the Court schedule a further telephone conference to address issues raised Court's order that Plaintiff's counsel modify subpoena to You Tube |
| 7/14/2015 | Dan Laidman | 0.60 | 237.00 | Prepare follow-up correspondence to Plaintiff's counsel regarding the City's failure to respond to the Court's Order to modify the subpoena (.5); communicate with court clerk regarding further telephonic status conference (.1) |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 7/15/2015 | Dan Laidman | 1.70 | 671.50 | Analyze strategy for responding to City's delay in responding to Court Order (.5); analyze City's letter to YouTube re: modification of Subpoena (.4); communicate with court clerk regarding further telephonic status conference (.1); prepare follow-up correspondence to Plaintiff's counsel regarding subpoena (.4); communicate with Mr. Teixeira regarding case status (.1); communicate with T. Burke and Diana Palacios regarding strategic issues (.2) |
| 7/15/2015 | Thomas Burke | [omitted] | [omitted] | Monitor status of plaintiff counsel's tardy revisions to YouTube subpoena and provide guidance to D. Laidman regarding handling of the ex parte hearing with the Court regarding same (.3, time omitted) |
| 7/19/2015 | Thomas Burke | 0.20 | 129.00 | Exchange of communications with D. Laidman regarding proposed letter to YouTube in response to notice received by client |
| 7/19/2015 | Dan Laidman | 1.30 | 513.50 | Review Google's correspondence to Mr. Teixeira regarding Subpoena and communicate with Mr. Teixeira and T. Burke regarding same (.6); prepare correspondence to Google responding to letter (.7) |
| 7/20/2015 | Dan Laidman | 1.20 | 474.00 | Prepare and finalize for service response letter to Google re: subpoena |
| 8/7/2015 | Dan Laidman | 0.70 | 276.50 | Communicate with Court Clerk regarding further telephonic status conference (.1); communicate with Mr. Teixeira regarding case status and strategy (.2); communicate with counsel for the City regarding case status (.1); communicate with T. Burke and D. Palacios regarding case status and strategy (.3) |
| 8/10/2015 | Dan Laidman | 0.40 | 158.00 | Communicate with Court Clerk regarding further telephonic status conference (.1); prepare correspondence to Google Legal Investigations Support regarding status of subpoena (.3) |
| 8/11/2015 | Dan Laidman | 0.80 | 316.00 | Communicate with Google Legal Investigations Support regarding status of subpoena (.2); communicate with counsel for the City regarding status of subpoena (.2); communicate with T. Burke and D. Palacios regarding case status and strategy (.4) |
| 8/13/2015 | Dan Laidman | 2.80 | 1106.00 | Prepare Status Report in advance of further telephonic status conference, including supporting declaration and exhibits |
| 8/14/2015 | Dan Laidman | 0.10 | 39.50 | Communicate with Mr. Teixeira regarding case status and strategy |

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 8/17/2015 | Dan Laidman | 3.80 | 1501.00 | Communicate with counsel for the City (.1); analyze YouTube records produced by Google in response to City's subpoena (1.5); revise Status Report and supporting declaration and exhibits in light of records produced by Google and finalize for filing (2.2) |
| 8/18/2015 | Dan Laidman | 0.90 | 355.50 | Prepare for telephonic status conference (.5); participate in telephonic status conference (.2); communicate with T. Burke and D. Palacios regarding status conference and next steps (.1); communicate with Mr. Teixeira regarding status conference and next steps (.1) |
| 8/19/2015 | Dan Laidman | 0.20 | 79.00 | Review Minute Order regarding status conference and communicate with Mr. Teixeira regarding same |
| 8/20/2015 | Dan Laidman | 0.90 | 355.50 | Review Court's Order granting Motion to Dismiss (.5); communicate with Mr. Teixeira regarding Order and next steps (.2); communicate with T. Burke regarding Order and next steps (.2) |
| 8/21/2015 | Dan Laidman | 2.40 | 948.00 | Analyze and redact billing records (2); communicate with counsel for the City regarding recovery of attorneys' fees (.2); communicate with T. Burke regarding recovery of attorneys' fees (.2) |
| 8/24/2015 | Dan Laidman | 0.70 | 276.50 | Analyze and redact billing records |
| 8/25/2015 | Dan Laidman | 1.10 | 434.50 | Analyze and redact billing records (.8); communicate with T. Burke regarding recovery of attorneys' fees (.2); communicate with Plaintiff's counsel regarding recovery of attorneys' fees (.1) |
| 8/27/2015 | Dan Laidman | 4.40 | 1738.00 | Communicate with T. Burke regarding fee recovery (.2); telephone conference with Plaintiff's counsel regarding fee recovery (.3) analyze billing records for preparation of fee motion (.5); prepare declarations in support of Fee Motion (3.4) |
| 8/28/2015 | Dan Laidman | 4.90 | 1935.50 | Prepare declarations in support of Fee Motion (2); research and draft Fee Motion (2.9) |
| 8/29/2015 | Dan Laidman | 6.20 | 2449.00 | Research and draft Fee Motion |
| 8/30/2015 | Dan Laidman | 4.50 | 1777.50 | Research and draft Fee Motion |
| 8/31/2015 | Thomas Burke | 3.20 | 2064.00 | Review and edit all time entries and review and revise motion for attorneys' fees and supporting declarations. |

# EXHIBIT B



Suite 2400
865 South Figueroa Street
Los Angeles, CA 90017-2566

**Dan Laidman**
213.633.6800 tel
213.633.6899 fax

danlaidman@dwt.com

February 20, 2015

<u>**VIA E-MAIL, FAX, AND OVERNIGHT MAIL**</u>

JoAnna M. Esty
Majesty Law Group
6080 Center Drive, Los Angeles, CA 90045
9719 Pulaski Highway, Middle River, MD 21220
Email: <u>jmesty@majestylaw.com</u>
Fax: (888) 618-0360

Kenneth R. Campos
City Attorney, City of Inglewood
One Manchester Blvd.
Inglewood, CA 90301
Email: <u>Kcampos@CityofInglewood.org</u>
Fax: (310) 412-8865

      Re:    <u>**City of Inglewood Demand Letters To Joseph Teixeira**</u>

Ms. Esty & City Attorney Campos:

    As you are aware this firm represents Joseph Teixeira in connection with the City of Inglewood's threat to bring a copyright claim against him for using clips from city council meetings in political commentary videos on YouTube. We have reviewed your correspondence, including the City's draft complaint and the videos that you allege are infringing, and we are confident that the City has absolutely no basis for any claim against Mr. Teixeira.

    As discussed in more detail below, the City's recordings of its council meetings are public records that are not subject to copyright protection. And even if the City could invoke such rights, its claim would fail for the independent reason that Mr. Teixeira's political commentary videos are obvious examples of fair use. While some of Inglewood's public officials may disagree with Mr. Teixeira's political point of view, the City may not misuse copyright law to try to censor his constitutionally protected speech.

    If this matter proceeds to litigation, there is little doubt that Mr. Teixeira would prevail and Inglewood would be ordered to pay his attorneys' fees and costs. And no matter the outcome, suing one of its own citizens for exercising his First Amendment rights would reflect extremely poorly on Inglewood and its leaders. The City has everything to lose and nothing to

Anchorage    New York    Seattle
Bellevue    Portland    Shanghai
Los Angeles    San Francisco    Washington, D.C.    www.dwt.com

February 20, 2015
Page 2

gain here, and we hope that it will reconsider its position. As the City's threats have already had
an intolerable chilling effect on Mr. Teixeira's free speech rights, in order to resolve this matter
the City must provide him with a written release from all liability for the allegedly infringing
activities so that he can exercise his constitutional rights without fear of meritless litigation.

## I.    The City Has No Copyright Interest In Its Recordings Of Public Meetings.

As a threshold matter, Inglewood's video recordings of its city council meetings are not
subject to copyright protection. Local agencies cannot copyright public records unless state law
provides an "affirmative grant of authority to obtain and hold copyrights." County of Santa
Clara v. Superior Court, 170 Cal. App. 4th 1301, 1331-33 (2009) (original emphasis). The
City's demand letters to Mr. Teixeira have cited no such authority, because none exists.

To the contrary, not only does California law not specifically authorize the City to claim
copyright protection here, but state law expressly refutes any such interest. The Brown Act
mandates that "[a]ny audio or video recording of an open and public meeting made for whatever
purpose by or at the direction of the local agency shall be subject to inspection pursuant to the
California Public Records Act." Cal. Gov't Code § 54953.5(b). Agencies must allow members
of the public to view the videos "without charge on equipment made available by the local
agency," id., and fees for copies are limited to the "direct costs of duplication," id. § 6253(b).
Where, as here, the works at issue are public records that must be made available to the public
without restriction under the California Public Records Act, "[t]his mandate overrides a
governmental agency's ability to claim a copyright in its work." County of Santa Clara, 170 Cal.
App. 4th at 1335-36 (county could not claim copyright protection in its GIS basemaps).

Because the City has no copyright interest in the works at issue, its threatened claim
against Mr. Teixeira is completely meritless, and would be quickly dismissed.[1]

## II.    Mr. Teixeira's Videos Are Protected By The Fair Use Doctrine.

Even assuming for argument's sake that the City could claim a copyright interest in its
recordings of public meetings, its threatened claim would be independently barred by the fair use

---

[1] Even if public meeting videos could be copyrighted, the City's claim would fail for the
independent but related reason that citizens would have an implied nonexclusive license to use
the footage. See Effects Assocs. v. Cohen, 908 F.2d 555, 558-59 (9th Cir. 1990). Inglewood
creates and distributes these videos pursuant to a statutory scheme that expressly recognizes that
the works belong to citizens and are provided for their use. See Gov't Code § 54950 ("public
commissions, boards and councils and the other public agencies in this State exist to aid in the
conduct of the people's business ... The people insist on remaining informed so that they may
retain control over the instruments they have created.") (emphasis added).

February 20, 2015
Page 3

doctrine. The Copyright Act provides that "the fair use of a copyrighted work … for purposes such as criticism, comment, [or] news reporting … is not an infringement of copyright." 17 U.S.C. § 107. "As the Supreme Court has noted, the 'considerable latitude for scholarship and comment' secured by the fair use doctrine protects the core value of free expression from excessive litigation and undue restriction." Bouchat v. Baltimore Ravens Ltd. Partnership, 737 F.3d 932, 944 (4th Cir. 2013) (quoting Eldred v. Ashcroft, 537 U.S. 186, 220 (2003)).

The videos at issue here are non-commercial, documentary-style commentaries about public affairs that use short clips from city council meetings – modified with original text and audio – for the purposes of informing the public about political issues and criticizing the City and its officials for the performance of their duties. Courts have recognized that "criticism of, and commentary on, [a] plaintiff's politics … is precisely what the Copyright Act envisions as a paradigmatic fair use." Dhillon v. Does 1-10, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014). Thus it is not surprising that all of the fair use factors weigh strongly in Mr. Teixeira's favor.[2]

First, there is no question that Mr. Teixieria's non-commercial videos use the council meeting clips for "nonprofit educational purposes." 17 U.S.C. § 107(1). But even if a work is used to solicit funds, it is permissible where the goal is to "make a political comment." Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1153 (9th Cir. 1986) (Moral Majority's use of magazine piece in fundraising mailer protected as fair use). See also Kienitz v. Sconnie Nation LLC, 965 F. Supp. 2d 1042, 1050 (W.D. Wis. 2013) (use of mayor's photo on t-shirt for "political critique" was fair use); Caner v. Autry, 16 F. Supp. 3d 689, 710 (W.D. Va. 2014) (using video "for the transformative purpose of criticizing Plaintiff" protected fair use).

Second, with respect to the nature of the allegedly copyrighted works, the "scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved," Hustler, 796 F.2d at 1153-54, as the "law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." Harper & Row Publishers, Inc. v. Nation Enterprises,

---

[2] Any court that reviews the videos would immediately conclude that the City is misusing copyright law to try to suppress critical political speech. "Public office is no place for the thin-skinned. Those who function in the public arena 'must be prepared to withstand …. the protest and controversy which their earlier actions and statements have generated." Pittsburg Unified School Dist. v. Calif. School Employees Ass'n, 166 Cal. App. 3d 875, 899 (1985). Anything less is inconsistent with our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). These First Amendment protections are "embodied" in the fair use doctrine. Golan v. Holder, 132 S. Ct. 873, 890 (2012).

February 20, 2015
Page 4

471 U.S. 539, 563 (1985). As the video recordings of city council meetings at issue here are quintessential "informational," "factual works," this factor plainly favors fair use.

Third, the amount of the underlying work used also favors a finding of fair use, as Mr. Teixeira's commentary videos include extremely short clips – measuring seconds or at most several minutes in length – from recordings of public meetings that last for hours. Moreover, the amount used is directly proportional to the purpose of informing the public about political issues being discussed at the meetings and criticizing public officials by quoting and examining their comments and conduct at these official proceedings. Because the amount of the underlying works being used is extremely modest, and also "reasonable in relation to the purpose" of the use, this factor also weighs heavily in Mr. Teixeira's favor. Kienitz, 965 F. Supp. 2d at 1053.

Fourth, the City cannot seriously claim any economic harm to the supposed market for videos that it is required by law to make available to the public "without charge," Gov't Code § 54953.5(b), and for which it cannot recover more than the "direct costs of duplication," id. § 6253(b). Nor can it credibly argue that these highly transformative videos – which use brief meeting clips modified with original text and audio in the context of pointed political criticism – are in any way a substitute for the City's unvarnished recordings of its public meetings. See Kienitz, 965 F. Supp. 2d at 1054 (shirts mockingly using mayor's image "were not a substitute for and did not reduce the demand for" straightforward portrait of the politician; "Anyone seeking a photographic portrait—or even just an accurate representative image—of the mayor would not even consider the garish image of the mayor splashed onto defendants' … shirts.").

As all of the fair use factors unambiguously favor Mr. Teixeira, there is no question that a court would reject the City's threatened lawsuit on this separate and additional basis.

**III.    The City Will Be Liable For Mr. Teixeira's Attorneys' Fees And Costs.**

If this matter proceeds to litigation and Mr. Teixeira prevails, Inglewood will likely be ordered to pay his fees and costs. See 17 U.S.C. § 505. As discussed above, public meeting videos are not subject to copyright; Mr. Teixeira's videos are obviously a fair use; and the City's claim would be seen as a misuse of copyright law to silence political speech. Courts regularly award fees to prevailing defendants in such situations. E.g., Sofa Entm't, Inc. v. Dodger Prods., 709 F.3d 1273, 1280 (9th Cir. 2013) (fee award proper where defendant has strong fair use defense to deter copyright claims that "have a chilling effect on creativity"); AF Holdings LLC v. Navasca, 2013 U.S. Dist. LEXIS 102249, at *10 (N.D. Cal. July 22, 2013) (awarding fees where plaintiff "has not acted to protect original expression" as envisioned by copyright law).

Fee awards to prevailing defendants in copyright actions can be substantial. See, e.g., Mattel v. Walking Mountain Prods., 2004 U.S. Dist. LEXIS 12469 at *11 (C.D. Cal. June 24, 2004) (awarding more than $1.6 million in attorneys' fees and $240,000 in costs in fair-use

February 20, 2015
Page 5

case); Sofa Entm't, Inc., 709 F.3d at 1277, 1280-81 ($155,000 in attorneys' fees and costs in fair use case); Mostly Memories, Inc. v. For Your Ease Only, Inc., 594 F. Supp. 2d 931, 933-934 (N.D. Ill. 2009) ($592,729 in fees and $66,340 in costs); Gilbert v. New Line Productions, Case No. 2:09-cv-02231-HGK-RZ (C.D. Cal. Dec. 6, 2010) (more than $800,000); Milton Greene Archives v. BPI Communications, Case No. SA CV 04-635 (C.D. Cal. Mar. 9, 2006) (more than $765,000); Williams v. McGraw-Hill Inc., No. CV 10-06062 GAF (SHx) (C.D. Cal. Mar. 21, 2011) ($52,119.48); Bauer v. Yellen, 548 F. Supp. 2d 88, 96 (S.D.N.Y. 2008) ($56,035).

In Brownmark Films, LLC v. Comedy Partners, 682 F. 3d 687 (7th Cir. 2012), the court affirmed the dismissal of a copyright claim at the pleading stage, finding it to be a clear instance of fair use. The district court awarded the defendants $31,525.23 in fees despite concerns about the plaintiff's "limited financial resources." Brownmark Films, LLC v. Comedy Partners, Case No. 10-CV-1013-JPS (E.D. Wisc.), 2/8/2012 Order at 1-2. In addition to the meritless nature of the action, the court also considered the fact that "the defendants warned [the plaintiffs] that the defendants' use of [their] copyrighted material was protected as fair use," but the plaintiffs "declined to heed that warning, though, and proceeded with their case." Id. at 2.

The City would be well-advised to heed this warning. If this matter proceeds to litigation then its claim will fail, and it will likely be responsible for a substantial fee award.[3]

**IV.   Conclusion**

For all of the reasons discussed above, the City has no basis for bringing any copyright infringement action against Mr. Teixeira. The threatened lawsuit would fail, the City would likely be responsible for paying his attorneys' fees and costs, and Inglewood's reputation would suffer from the negative publicity generated by using scarce taxpayer resources on a meritless lawsuit aimed at silencing constitutionally protected political criticism.

The City's letters to Mr. Teixeira dated November 3, 2014, December 24, 2014, and January 30, 2015, have all explicitly threatened him with litigation for exercising his free speech rights, and Mr. Teixeira has made the videos at issue inaccessible to the public as a direct result. The City has demanded that he sign a broadly worded agreement limiting his rights. In our conversation on February 10, 2015, Ms. Esty reiterated the City's position that any use of its

---

[3] We would also encourage you to google the phrase "Streisand effect," which refers to "the phenomenon whereby an attempt to hide, remove, or censor a piece of information has the unintended consequence of publicizing the information more widely, usually facilitated by the Internet." http://en.wikipedia.org/wiki/Streisand_effect. Inglewood's misuse of copyright law as a tool for censorship and its bullying of a citizen with litigation threats are newsworthy, and the City and its leaders would no doubt draw extensive public criticism should this case go to court, in the process only highlighting the political speech at the center of the dispute.

February 20, 2015
Page 6

recordings of its public meetings is unacceptable, and that the City intends to bring a lawsuit
against Mr. Teixeira if he does not immediately and permanently remove the challenged videos.
The City's threats have chilled his fundamental right to speak out about public affairs and
criticize his government, and his First Amendment rights will continue to be infringed so long as
there is any specter of the City bringing a lawsuit.  Therefore, to resolve this matter without
having to incur the burdens and expense of litigation, the City must do more than merely refrain
from suing Mr. Teixeira: it must unambiguously retract its threats, and release Mr. Teixeira in
writing from all liability based on the allegedly infringing activities described in your letters.

Please advise us no later than 5:00 p.m. on March 6, 2015, if your client agrees to this
resolution.  This letter is sent without waiver of any of our client's rights, defenses, privileges,
remedies, or claims, all of which are expressly reserved.

Sincerely,

Dan Laidman
DAVIS WRIGHT TREMAINE LLP

cc:     Mayor James T. Butts
        Councilman George Dotson
        Councilman Alex Padilla
        Councilman Eloy Morales, Jr.
        Councilman Ralph Franklin
        Joseph Teixeira

DWT 26238127v1 0200856-000001

# EXHIBIT C

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

4

5   CITY OF INGLEWOOD,                    )
                                          )
6                      Plaintiff,         )
                                          )
7        vs.                              )          Case No.
                                          )  CV 15-1815 MWF (MRWx)
8   JOSEPH TEIXEIRA,                      )
                                          )
9                      Defendant.         )
    _____)

10

11                  REPORTER'S TRANSCRIPT OF
                 TELEPHONIC STATUS CONFERENCE
12                 TUESDAY, JULY 7, 2015
                        3:01 P.M.
13                LOS ANGELES, CALIFORNIA

14

15

16

17

18

19

20

21

22    _____

23        MYRA L. PONCE, CSR NO. 11544, RPR, RMR, CRR
             FEDERAL OFFICIAL COURT REPORTER
24           312 NORTH SPRING STREET, ROOM 430
             LOS ANGELES, CALIFORNIA  90012
25                   (213) 894-2305

1                    **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4         (APPEARING VIA TELEPHONE)
          MAJESTY LAW GROUP, PLC
5         BY:  JOANNA M. ESTY
               Attorney at Law
6         6080 Center Drive, Sixth Floor
          Los Angeles, California  90045
7         (310) 376-2512

8

9     **FOR THE DEFENDANT:**

10        (APPEARING VIA TELEPHONE)
          DAVIS, WRIGHT & TREMAINE
11        BY:  DANIEL AARON LAIDMAN
               Attorney at Law
12        865 South Figueroa Street, Suite 2400
          Los Angeles, California  90017
13        (213) 633-6800

14        (APPEARING VIA TELEPHONE)
          DAVIS, WRIGHT & TREMAINE
15        BY:  THOMAS ROHLFS BURKE
               Attorney at Law
16        505 Montgomery Street, Suite 800
          San Francisco, California  94111
17        (415) 276-6500

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1                 TUESDAY, JULY 7, 2015; 3:01 P.M.

 2                    LOS ANGELES, CALIFORNIA

 3                            -oOo-

 4           THE COURTROOM DEPUTY:  Calling Item No. 2,

 5   CV 15-1815-MWF, City of Inglewood vs. Teixiera.

 6       Counsel, state your appearance with plaintiff first.

 7           MS. ESTY:  Good afternoon, Your Honor.  This is

 8   JoAnna Esty for the plaintiff.

 9           THE COURT:  Good afternoon, Counsel.

10       And, Mr. Burke, are you on the line?

11           MR. BURKE:  Yes.  And my colleague Dan Laidman is as

12   well.

13           MR. LAIDMAN:  Good afternoon, Your Honor.  This is

14   Dan Laidman.

15           THE COURT:  All right.  Counsel, we're here to --

16   specifically for -- in regard to the objection that was filed

17   by the defendant to the subpoena but, more broadly, to discuss

18   how we should resolve this part of the case.

19       Look, in the hearing two issues were raised, one of which

20   was did the City have a cognizable copyright interest under

21   California law and then the second is whether these videos were

22   fair use.  And the issue was raised that there was some dispute

23   as to precisely what the videos were which were allegedly

24   infringing since technically at least there could be this issue

25   that they -- the ones that were originally observed were not
```

1    the ones that are available now.

2        And, in general, I agree with a lot of the arguments that

3    are made in the objections, but this is what the problem is.  I

4    have decided now, when I issue my final order, that I will rule

5    in favor of the defendant in regard to the copyright issues.

6        So no matter what happens in regard to this other issue,

7    the Complaint will be dismissed and the motion will be granted

8    without leave to amend.  Because there's -- I mean, there's

9    nothing to change.  There's nothing -- no further allegation to

10   be made.  You know, Inglewood is just going to lose.

11       However, in terms of court administration, it just doesn't

12   make sense to leave this -- to leave this issue out there.  As

13   it is, I could rule on that basis and then say because of this

14   I don't even need to reach fair use.  But then if it gets

15   appealed and the Ninth Circuit disagrees and it comes back

16   down, what am I supposed to do then?  Like, decide on the fair

17   use so it can -- and if I decide that it is fair use, it can go

18   up again?  That doesn't seem fair to the City, it doesn't even

19   seem fair to Mr. Teixiera, and it's certainly not fair to the

20   Ninth Circuit.

21       So what I think -- and the other alternative would be --

22   is to essentially sustain the objections that have been made

23   and say, look, on the current record, I'm going to go ahead and

24   exercise the doctrine of incorporation and say that even at

25   this early state where it is a motion to dismiss, it's not

1  summary judgment, I am certain what should be subject -- what

2  should -- what exhibits should be the subject of the fair use

3  analysis and rule accordingly.

4      And it just seems, again, not to make a lot of sense to

5  have that go up to the Ninth Circuit if the City of Inglewood

6  decides that it wants to appeal -- of course, that's entirely

7  up to the City -- when there's this -- it's been left hanging.

8  And for all I know, the Ninth Circuit might decide that I

9  overstepped my authority by exercising the doctrine of

10  incorporation when the subject of the doctrine was not

11  absolutely crystal clear beyond all doubt.

12      So in light of that, I -- what I would like to know is

13  whether the defendant would like to withdraw his objections.

14  Because, again, it seems this is one thing -- and perhaps the

15  only thing -- where all of us have a common interest -- the

16  plaintiff, the defendant, the District Court, and the Court of

17  Appeals -- in having all of these issues, which, to me, are

18  legal issues, decided so the Court of Appeals can be presented

19  with all of the issues at once.

20      So having said that, let me hear from counsel for the

21  defendant.

22          MR. LAIDMAN:  Thank you, Your Honor.  This is

23  Dan Laidman for the defendant.

24      And we certainly appreciate that.  And the -- appreciate

25  the opportunity to respond to it.  And I think that our

1    position would just simply be that we would ask the Court to

2    sustain the objection based on the doctrine of incorporation,

3    as you discussed.

4              THE COURT:  All right.  I appreciate that, your

5    argument.  As I said, I think that many of the arguments that

6    you make in the objections have a lot of merit.  I am certainly

7    not expecting to get anything from YouTube that's going to

8    shock me.  I think the odds of that for the reasons that you

9    have cogently laid out in the objection are -- is not going to

10   happen at all.

11       But nonetheless, for the reasons I've stated, the

12   objections are overruled.  The subpoena should be served.  I

13   expect the City to obtain the documents as -- or the videos as

14   quickly as possible and then submit them.

15       But I will say to Ms. Esty, I strongly suspect that you

16   are just flatly wasting my time and that you are flailing in

17   the exact manner which counsel for the defendant have suggested

18   in the objection.  And I -- if that is, in fact, the case, I

19   invite you to inform me that I may exercise the doctrine of

20   incorporation over your objections.

21       And I'm not asking you to waive any legal argument that

22   that doctrine is inappropriate here.  But if you just think

23   that there's some ghost of a possibility, of a whisper of a

24   chance that the videos are different and you are wasting

25   everybody's time, then I will tell you that I think that you

1  are acting inappropriately.

2         MS. ESTY:  Your Honor, I -- with all -- the utmost

3  respect to the Court, you're asking me to waive what I don't

4  know.  And Your Honor could be 100 percent correct, there could

5  be nothing there.  But I don't know the answer to that

6  question, and I would be derelict in my duty to my client to

7  waive something that I don't know the answer to.

8         THE COURT:  I would be more sympathetic to that if

9  it were not true for the reasons that are set forth in the

10  objections, that I think the City should be in a position to

11  answer this without the subpoenas.

12       But nonetheless, so there is absolutely no doubt, the

13  subpoenas will issue.  I expect to receive the videos

14  immediately upon their receipt.  And I will review them, and

15  then I will issue my final order which will indicate that there

16  is no copyright that the City holds under California law.  But

17  then the results of the fair use will be determined based on

18  what I examine when I actually receive these videos.

19       And then having done that, I'll issue the final order.

20  And then the City will -- and if, in fact, it is without leave

21  to amend, as I suspect it strongly will be, then the City can

22  decide to appeal or not.  And if it goes up to the Court of

23  Appeals, then the issue will have been laid to rest.

24       All right.  Counsel, thank you for --

25         MS. ESTY:  Your Honor, if I may -- if I may just add

1   that if -- if, when we get the videos and we review them, there

2   is no difference, we will proceed as Your Honor has instructed

3   under the doctrine of incorporation without waiving our rights

4   on appeal so that Your Honor doesn't have to wade through a

5   comparison of the videos, because the Court has been very

6   patient with us in this regard.

7           THE COURT:  All right.  Then let me know.  And,

8   again, I'll -- I will state explicitly now that this -- that

9   that communication would in no way waive any rights on appeal

10  to object to my use of the doctrine of incorporation or

11  anything else.

12      Yes.  And then, Mr. Burke, you were going to say

13  something.

14          MR. LAIDMAN:  Okay.  Thank you.  This is Dan Laidman

15  for the defendant.

16          THE COURT:  Yes.

17          MR. LAIDMAN:  Your Honor, I appreciate that.  I

18  forgot to say one other thing, which is that when we filed our

19  objection, we had not yet seen the subpoena.  And having seen

20  it, I -- well, I did want to address the scope of the subpoena

21  with the Court.  Because our motion is directed at -- at the

22  Complaint which lists six specific videos, six specific

23  addresses.

24      And our understanding is that during the hearing, the

25  Court directed the City to provide its original copies of those

1  six videos at those addresses that it sued over.  But the

2  subpoena is much broader in scope.  It's not limited to those

3  six videos.  It asks for the -- every video posted at three

4  different YouTube accounts from 2010 to present.  That's two

5  years beyond even the statute of limitations for this claim.

6  And it asks for a complete history of uploads, downloads, which

7  I'm not sure what that means or what the relevance of it is.

8      And so I would ask that if the Court is going to rule this

9  way, that it would consider ordering the subpoena to be

10  narrowed to those six videos issue per the Court's comments at

11  the hearing.

12          THE COURT:  All right.  Ms. Esty, your response?

13          MS. ESTY:  Your Honor, I'd be willing to work with

14  opposing counsel and YouTube counsel, once I'm contacted by

15  them, to narrow the scope so that it's not overly broad and

16  work with Mr. Laidman in order to satisfy him as well as my

17  client.

18          THE COURT:  All right.  Well, when your -- I mean,

19  your client wants to go on a fishing expedition, I can

20  understand, but I'm not going to approve.  I don't see any real

21  need for anything beyond those six videos.

22          MS. ESTY:  Your Honor, what I don't want to do is I

23  don't want to have to re-issue the subpoena and start the --

24  the time, the 30 days running again.  I would rather contact

25  Mr. Laidman when YouTube contacts me and work with YouTube and

1    Mr. Laidman to get the information that we need to the Court.

2              THE COURT:  All right.  Then do that.  I mean, then

3    maybe you can send a letter and then copy Mr. Burke and

4    Mr. Laidman on it, saying, you know, we've sent you the

5    subpoena.  What we really want are these six videos, and we

6    would like them as soon as possible and so would the District

7    Court.

8              MR. LAIDMAN:  I would just say -- sorry,

9    Your Honor -- that we find that somewhat troubling just to have

10   a subpoena of this scope out there, particularly before the --

11   the City has been found to have a legally valid claim.  I mean,

12   they're asking for private editorial files, essentially, of

13   Mr. Teixiera about his political criticism.  Having a subpoena

14   out there this broad has a really chilling effect, and I'm not

15   sure that waiting to see what YouTube produces first before

16   narrowing it really addresses that.

17             THE COURT:  Well, I wasn't suggesting that.  What I

18   said was that -- I directed Ms. Esty to contact YouTube -- I

19   mean, her assumption is that YouTube counsel will get in touch

20   before there's a response to the subpoena.  That very well

21   might be a reasonable assumption; I don't know.

22       But what I am saying is that there should -- rather than

23   re-issue the subpoena, that there should be a communication

24   right away to YouTube counsel saying this is after consulting

25   with opposing counsel and consulting -- and after a hearing

```
 1    with the District Court, you should construe the subpoena to
 2    request the following six videos and you should be copied on
 3    that letter.
 4              MR. LAIDMAN:  Okay.  I think that would assuage our
 5    concerns.  We're just concerned about the longer term date,
 6    given, you know, the chilling effect of litigation in general
 7    and Mr. Teixeira's free speech rights.
 8              THE COURT:  Well, I said that I intend to dismiss
 9    the case on at least one ground without leave to amend.  I
10    don't know how chilling it is.  But obviously Mr. Teixiera -- I
11    have every reason to think he's made of a bit sterner stuff
12    than that, but you would know your client better than I.
13        I can't say that it is so obviously objectively chilling
14    that having this additional time in order to resolve this issue
15    beyond any possible dispute isn't a good waste of time.  And I,
16    frankly, think that your client could not care less.
17        So I do understand his concern about the scope of the
18    subpoena, which is why I expect that to be corrected right
19    away.  All right.
20              MS. ESTY:  Yes, Your Honor.  I will go ahead and do
21    that.  What I do want with YouTube to -- to -- so that
22    Mr. Laidman is clear, is any modifications from the original,
23    the upload and download times.  That's all relevant to the
24    position that the City has taken.  So I don't want Mr. Laidman
25    to come back to me and say it's so narrow that it becomes
```

1   ineffective.

2       So I will craft a letter to YouTube.  If Mr. Laidman has

3   objections to it, he can certainly get back to me.  And I'll

4   try to work with him on it, Your Honor.

5           THE COURT:  Right.  And I'm sure you'll -- you will

6   work it out.  If you can't, then just send an e-mail to my

7   clerk and we will have another telephonic hearing.

8           MS. ESTY:  Thank you, Judge.

9           MR. LAIDMAN:  Thank you, Your Honor.

10          MR. BURKE:  Thank you very much, Your Honor.

11          (Proceedings concluded at 3:15 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **CERTIFICATE OF OFFICIAL REPORTER**

2

3   COUNTY OF LOS ANGELES   )
                                    )
4   STATE OF CALIFORNIA     )

5

6             I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17                    DATED THIS 9TH DAY OF JULY, 2015.

18

19

20                     /S/ MYRA L. PONCE
                  _____
21             MYRA L. PONCE, CSR NO. 11544, RPR, RMR, CRR
                  FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**

# EXHIBIT D

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "jmesty@majestylaw.com" |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | City of Inglewood v. Joseph Teixeira |
| **Date:** | Tuesday, July 07, 2015 4:56:47 PM |
| **Importance:** | High |

Ms. Esty,

In accordance with the Court's order at today's Status Conference, I am writing to request that you share with me in advance the letter the Court instructed you to send to You Tube revising the City's subpoena so that it includes only the 6 videos at the specific addresses listed in Paragraph 19 of the Complaint.  Per the Court's direction that the narrowed scope be communicated to YouTube right away, please send us a draft of your correspondence to YouTube by 5 p.m. tomorrow, July 8, so that we can provide appropriate feedback.

Thank you,
Dan Laidman

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6866 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

| From: | Laidman, Dan |
|---|---|
| To: | "jmesty@majestylaw.com" |
| Cc: | Burke, Thomas; Palacios, Diana |
| Subject: | RE: City of Inglewood v. Joseph Teixeira |
| Date: | Thursday, July 09, 2015 9:27:56 AM |
| Importance: | High |

Ms. Esty,

At Tuesday's Status Conference you represented to the Court that you would work with us to narrow the scope of the subpoena per the Court's ruling. Because the Court directed you to notify YouTube right away about the changes to the subpoena, we requested that you promptly send us a draft of your correspondence to YouTube so that we can provide appropriate feedback.

We have received no response to our request, and no indication that you have complied with the Court's Order. Please send us a draft of your correspondence to YouTube immediately. If we have not received this by the close of business today we will have no choice but to bring this to the Court's attention.

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Laidman, Dan
**Sent:** Tuesday, July 07, 2015 4:57 PM
**To:** 'jmesty@majestylaw.com'
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** City of Inglewood v. Joseph Teixeira
**Importance:** High

Ms. Esty,

In accordance with the Court's order at today's Status Conference, I am writing to request that you share with me in advance the letter the Court instructed you to send to You Tube revising the City's subpoena so that it includes only the 6 videos at the specific addresses listed in Paragraph 19 of the Complaint. Per the Court's direction that the narrowed scope be communicated to YouTube right away, please send us a draft of your correspondence to YouTube by 5 p.m. tomorrow, July 8, so that we can provide appropriate feedback.

Thank you,
Dan Laidman

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

| From: | JoAnna Esty |
|---|---|
| To: | Laidman, Dan |
| Cc: | Burke, Thomas; Palacios, Diana |
| Subject: | RE: City of Inglewood v. Joseph Teixeira |
| Date: | Thursday, July 09, 2015 10:19:34 AM |

Mr. Laidman,

May I remind you that YouTube's production is not due until July 31st — more than 3 weeks from today.  I am mindful of the Court's directive.  When I draft the correspondence to YouTube, I will send it to you.

JoAnna Esty

**From:** Laidman, Dan [mailto:DanLaidman@dwt.com]
**Sent:** Thursday, July 09, 2015 12:28 PM
**To:** JoAnna Esty
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** RE: City of Inglewood v. Joseph Teixeira
**Importance:** High

Ms. Esty,

At Tuesday's Status Conference you represented to the Court that you would work with us to narrow the scope of the subpoena per the Court's ruling.  Because the Court directed you to notify YouTube right away about the changes to the subpoena, we requested that you promptly send us a draft of your correspondence to YouTube so that we can provide appropriate feedback.

We have received no response to our request, and no indication that you have complied with the Court's Order.  Please send us a draft of your correspondence to YouTube immediately.  If we have not received this by the close of business today we will have no choice but to bring this to the Court's attention.

**Dan Laidman** | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Laidman, Dan
**Sent:** Tuesday, July 07, 2015 4:57 PM
**To:** 'jmesty@majestylaw.com'
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** City of Inglewood v. Joseph Teixeira
**Importance:** High

Ms. Esty,

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "JoAnna Esty" |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | RE: City of Inglewood v. Joseph Teixeira |
| **Date:** | Friday, July 10, 2015 1:08:29 PM |

Ms. Esty,

The Court stated, "there should be a communication right away to YouTube counsel saying this is after consulting with opposing counsel ... and after a hearing with the District Court, you should construe the subpoena to request the following six videos..." The Court later reiterated, "I do understand [Mr. Teixeira's] concern about the scope of the subpoena, which is why I expect that to be corrected right away."

Your conduct leaves the impression that you are delaying compliance in the hope that YouTube will respond to your original overly broad subpoena, rather than the much narrower one ordered by the Court. If this is not the case, then please send us your correspondence to YouTube today.

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** JoAnna Esty [mailto:jmesty@majestylaw.com]
**Sent:** Thursday, July 09, 2015 10:19 AM
**To:** Laidman, Dan
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** RE: City of Inglewood v. Joseph Teixeira

Mr. Laidman,

May I remind you that YouTube's production is not due until July 31st – more than 3 weeks from today. I am mindful of the Court's directive. When I draft the correspondence to YouTube, I will send it to you.

JoAnna Esty

**From:** Laidman, Dan [mailto:DanLaidman@dwt.com]
**Sent:** Thursday, July 09, 2015 12:28 PM
**To:** JoAnna Esty
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** RE: City of Inglewood v. Joseph Teixeira
**Importance:** High

Ms. Esty,

| | |
|---|---|
| **From:** | JoAnna Esty |
| **To:** | Laidman, Dan |
| **Subject:** | Draft YouTube letter |
| **Date:** | Monday, July 13, 2015 9:53:30 AM |
| **Attachments:** | Letter toYouTube7.13.2015.doc |

Proposed YouTube letter for your comment.

JoAnna Esty

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "JoAnna Esty" |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | RE: Draft YouTube letter |
| **Date:** | Monday, July 13, 2015 10:55:31 AM |
| **Attachments:** | Letter toYouTube7.13.2015 --redline.doc |

Thank you. A redline is attached, please let me know if you would like to discuss any of the comments. We expect that this will be sent out today per the Court's direction to address this issue right away. We would also request that you please serve this letter on YouTube in the same manner that you originally served the subpoena, to ensure that it is received promptly by the appropriate person.

**Dan Laidman** | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** JoAnna Esty [mailto:jmesty@majestylaw.com]
**Sent:** Monday, July 13, 2015 9:53 AM
**To:** Laidman, Dan
**Subject:** Draft YouTube letter

Proposed YouTube letter for your comment.

JoAnna Esty

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "JoAnna Esty" |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | RE: Draft YouTube letter |
| **Date:** | Tuesday, July 14, 2015 10:26:02 AM |

Ms. Esty,

I have not received a response to the email below, or any indication that you have notified YouTube about the court-ordered changes to the subpoena. As I have pointed out several times now, the Court directed you to notify YouTube "right away" because it recognized our client's concern about the extremely broad scope of the subpoena (which the Court itself characterized as a "fishing expedition" that it would not allow). A week has now gone by and you have not complied with the Court's Order.

If possible, I would still like to resolve this informally without having to burden the Court. However, there can be no further delay. While you noted in prior correspondence that the production is not due until the end of the month (although the return date on the subpoena is August 3, 2015), by our calculation today is the deadline for YouTube to serve any objections to the subpoena. Therefore some form of response is plainly already underway, and any further delay in notifying YouTube is unacceptable.

If we do not receive confirmation that you have notified YouTube by 2 p.m. today we will seek appropriate relief from the Court.

Sincerely,
Dan Laidman

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Laidman, Dan
**Sent:** Monday, July 13, 2015 10:56 AM
**To:** 'JoAnna Esty'
**Cc:** Burke, Thomas; Palacios, Diana
**Subject:** RE: Draft YouTube letter

Thank you. A redline is attached, please let me know if you would like to discuss any of the comments. We expect that this will be sent out today per the Court's direction to address this issue right away. We would also request that you please serve this letter on YouTube in the same manner that you originally served the subpoena, to ensure that it is received promptly by the appropriate person.

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "Cheryl_Wynn@cacd.uscourts.gov"; jmesty@majestylaw.com; Burke, Thomas |
| **Cc:** | sclose@majestylaw.com |
| **Subject:** | RE: CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC 7/7/15 |
| **Date:** | Tuesday, July 14, 2015 2:39:56 PM |

Ms. Wynn,

Per Judge Fitzgerald's instructions at the July 7 conference, we would like to request a further telephonic status conference concerning this case at the Court's earliest convenience.

Thank you,
Dan Laidman

**Dan Laidman** | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6885 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Cheryl_Wynn@cacd.uscourts.gov [mailto:Cheryl_Wynn@cacd.uscourts.gov]
**Sent:** Wednesday, July 01, 2015 1:55 PM
**To:** Laidman, Dan; jmesty@majestylaw.com; Burke, Thomas
**Cc:** sclose@majestylaw.com
**Subject:** CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC 7/7/15

Counsel, below are the call-in instructions:

Call-in Number:      **213.894.0800**
Meeting ID:      **1116#**
User Password:      **6052#**

Thank you,

**Cheryl Wynn I Relief Courtroom Deputy Clerk**
United States District Court I 312 N. Spring Street, Room G-8, Los Angeles, CA 90012
Direct Line: 213.894.6942 I Email: cheryl_wynn@cacd.uscourts.gov

| | |
|---|---|
| From: | Cheryl Wynn/CACD/09/USCOURTS |
| To: | "Laidman, Dan" <DanLaidman@dwt.com> |
| Cc: | "jmesty@majestylaw.com" <jmesty@majestylaw.com>, "Burke, Thomas" <THOMASBURKE@dwt.com> |
| Date: | 07/01/2015 12:59 PM |
| Subject: | RE: CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC |

Thank you Mr. Laidman,

| | |
|---|---|
| **From:** | Lena Beery |
| **To:** | Laidman, Dan |
| **Cc:** | JoAnna Esty |
| **Subject:** | City of Inglewood v. Teixlera, Civil Case No. 2:15-CV-01815-MWF-MRW |
| **Date:** | Wednesday, July 15, 2015 2:41:19 PM |
| **Attachments:** | YouTubeLtrreSubp7-15-15.pdf |

Mr. Laidman,

Attached is a copy of the letter that was sent to Youtube today in the above captioned matter. A hard copy was also sent to you via first class mail.

Sincerely,

Lena

**Mercedes Beery**
Law Clerk
lbeery@majestylaw.com
(P) 410-686-6072
    410-679-2010
(F) 888-618-0360

*Legal Solutions*

Majesty Law Group
Law Office of Mercedes C. Samborsky
9719 Pulaski Highway
Middle River, Maryland 21220

*************************************************************************

CONFIDENTIALITY NOTICE: This e-mail is intended only for the person or
entity to which it is addressed, and may contain information that is
privileged, confidential, or otherwise protected from disclosure.
 Distribution, copying, or dissemination of this e-mail or any of the
information contained herein by anyone other than the intended recipient, or
an employee or agent responsible for delivering the message to the intended
recipient, is prohibited.  If you have received this e-mail in error please
destroy the original message along with all copies and immediately notify
Majesty Law Group at 410.679.2010.  Be advised that e-mail is not
necessarily secure and therefore may not be confidential.  If you no longer
wish to receive communications via e-mail, please contact our office
immediately.

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | JoAnna Esty |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | RE: City of Inglewood v. Teixiera, Civil Case No. 2:15-CV-01815-MWF-MRW |
| **Date:** | Wednesday, July 15, 2015 4:53:30 PM |

Ms. Esty,

We request that you notify us upon receiving a response to the subpoena, and provide us with copies of any materials that YouTube produces within one day of the production.  See FRCP 45, Notes of Advisory Committee on 2013 amendments ("Parties desiring access to information produced in response to the subpoena will need to follow up with the party serving it or the person served to obtain such access. The rule does not limit the court's authority to order notice of receipt of produced materials or access to them.  The party serving the subpoena should in any event make reasonable provision for prompt access.").

We will assume you agree to this request unless we promptly hear from you to the contrary.

Thank you,
Dan Laidman

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

---

**From:** Lena Beery [mailto:lbeery@majestylaw.com]
**Sent:** Wednesday, July 15, 2015 2:41 PM
**To:** Laidman, Dan
**Cc:** JoAnna Esty
**Subject:** City of Inglewood v. Teixiera, Civil Case No. 2:15-CV-01815-MWF-MRW

Mr. Laidman,

Attached is a copy of the letter that was sent to Youtube today in the above captioned matter. A hard copy was also sent to you via first class mail.

Sincerely,

Lena

```
Mercedes Beery
Law Clerk
lbeery@majestylaw.com
(P)  410-686-6072
     410-679-2010
(F)  888-618-0360

Legal Solutions

Majesty Law Group
Law Office of Mercedes C. Samborsky
```

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "Cheryl_Wynn@cacd.uscourts.gov"; "Rita_Sanchez@cacd.uscourts.gov" |
| **Cc:** | jmesty@majestylaw.com; Burke, Thomas; sclose@majestylaw.com |
| **Subject:** | RE: CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC 7/7/15 |
| **Date:** | Wednesday, July 15, 2015 5:00:18 PM |

Ms. Sanchez & Ms. Wynn,

We are withdrawing our request for a further telephonic status conference.

Thank you,
Dan Laidman

**Dan Laidman** | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Cheryl_Wynn@cacd.uscourts.gov [mailto:Cheryl_Wynn@cacd.uscourts.gov]
**Sent:** Tuesday, July 14, 2015 2:51 PM
**To:** Laidman, Dan
**Cc:** jmesty@majestylaw.com; Burke, Thomas; sclose@majestylaw.com
**Subject:** RE: CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC 7/7/15

Thank you; I will let his clerk, Rita Sanchez know.


-----"Laidman, Dan" <DanLaidman@dwt.com> wrote: -----
**To:** "Cheryl_Wynn@cacd.uscourts.gov" <Cheryl_Wynn@cacd.uscourts.gov>,
"jmesty@majestylaw.com" <jmesty@majestylaw.com>, "Burke, Thomas"
<THOMASBURKE@dwt.com>
**From:** "Laidman, Dan" <DanLaidman@dwt.com>
**Date:** 07/14/2015 02:43PM
**Cc:** "sclose@majestylaw.com" <sclose@majestylaw.com>
**Subject:** RE: CV 15-1815-MWF (Inglewood v. Teixeira) - Telephonic SC 7/7/15

Ms. Wynn,

Per Judge Fitzgerald's instructions at the July 7 conference, we would like to request a further
telephonic status conference concerning this case at the Court's earliest convenience.

Thank you,
Dan Laidman

**Dan Laidman** | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Cheryl_Wynn@cacd.uscourts.gov [mailto:Cheryl_Wynn@cacd.uscourts.gov]
**Sent:** Wednesday, July 01, 2015 1:55 PM


## DavisWright
## TremaineLLP

Suite 2400
865 South Figueroa Street
Los Angeles, CA 90017-2566

Dan Laidman
213.633.6800 tel
213.633.6899 fax

danlaidman@dwt.com

July 20, 2015

VIA E-MAIL

Google Legal Investigations Support
google-legal-support@google.com

> Re:   Subpoena in City of Inglewood v. Joseph Teixeira, United States District
> Court for the Central District of California, Civil Action No. 2:15-cv-01815
> (Internal Ref. No. 586133).

To Google Legal Investigations Support:

This firm represents Joseph Teixeira in connection with the above-captioned matter. We have received your July 17, 2015 email to Mr. Teixeira requesting that we forward any objection to the Subpoena that was served on Google by the City of Inglewood.

Mr. Teixeira filed an Objection to the Subpoena on June 30, 2015 (attached as **Exhibit A**). On July 7, 2015, the District Court held a status conference at which it overruled the Objection, but ordered the Subpoena narrowed to six videos at six specific URL addresses (the Court's July 8, 2015 Order and a transcript of the July 7, 2015 conference are attached as **Exhibit B**). On July 15, 2015, counsel for the City of Inglewood sent a letter to YouTube modifying the scope of the Subpoena (attached as **Exhibit C**).

We request that you please provide us with copies of any responsive documents at the same time that you produce any such material to counsel for the City of Inglewood.

Sincerely,

Dan Laidman
DAVIS WRIGHT TREMAINE LLP

cc:   JoAnna M. Esty, esq.
Thomas R. Burke, esq.
Diana Palacios, esq.

DWT 27389145v1 0200856-000001

| Anchorage | New York | Seattle |
| Bellevue | Portland | Shanghai |
| Los Angeles | San Francisco | Washington, D.C. |

100%

www.dwt.com

| | |
|---|---|
| **From:** | Laidman, Dan |
| **To:** | "JoAnna Esty" |
| **Cc:** | Burke, Thomas; Palacios, Diana |
| **Subject:** | RE: CV 15-1815 (Inglewood v. Teixeira) - Telephonic Status Conf |
| **Date:** | Friday, August 07, 2015 2:15:33 PM |

Ms. Esty,

On July 15, 2015, we requested that you notify us upon receiving a response to the subpoena, and provide us with copies of any materials that YouTube produced.  Can you please let us know the status of the subpoena, and provide us with copies of any responsive materials?

Thank you,
Dan Laidman

Dan Laidman | Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.


-----Original Message-----
From: JoAnna Esty [mailto:jmesty@majestylaw.com]
Sent: Friday, August 07, 2015 1:50 PM
To: Rita_Sanchez@cacd.uscourts.gov; Laidman, Dan; Burke, Thomas
Subject: RE: CV 15-1815 (Inglewood v. Teixeira) - Telephonic Status Conf

Dear Ms. Sanchez,

I am leaving the office today for vacation and will not be back until August 17, 2015.  Is there a time that week that is convenient for the Judge?

JoAnna Esty

-----Original Message-----
From: Rita_Sanchez@cacd.uscourts.gov [mailto:Rita_Sanchez@cacd.uscourts.gov]
Sent: Friday, August 07, 2015 4:48 PM
To: JoAnna Esty; danlaidman@dwt.com; thomasburke@dwt.com
Subject: CV 15-1815 (Inglewood v. Teixeira) - Telephonic Status Conf


Good afternoon Counsel,

Judge Fitzgerald has requested a telephonic status conference on August 13, at 2:30 p.m., to determine the status of the YouTube subpoenas and videos.
Are you available?

Cheryl Wynn, for
Rita Sanchez I Courtroom Deputy Clerk to the Honorable Michael W. Fitzgerald
United States District Court I 312 N. Spring Street, Room G-8, Los Angeles, CA 90012 Direct Line: 213.894.1527 I Email: rita_sanchez@cacd.uscourts.gov

| From: | Laidman, Dan |
|---|---|
| To: | jmesty@majestylaw.com |
| Cc: | Burke, Thomas; Palacios, Diana |
| Subject: | RE: Subpoena in City of Inglewood v. Joseph Teixeira, United States District Court for the Central District of California, Civil Action No. 2:15-cv-01815 (Internal Ref. No. 586133) |
| Date: | Tuesday, August 11, 2015 5:11:48 PM |

Ms. Esty,

In light of Google's policy, we reiterate our request that you inform us of the status of the subpoena, and provide us with copies of any responsive materials.

Sincerely,
Dan Laidman

**Dan Laidman | Davis Wright Tremaine LLP**
865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com
Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** google-legal-support@google.com [mailto:google-legal-support@google.com]
**Sent:** Tuesday, August 11, 2015 4:04 PM
**To:** Laidman, Dan
**Cc:** Palacios, Diana; jmesty@majestylaw.com; Burke, Thomas
**Subject:** RE: Subpoena in City of Inglewood v. Joseph Teixeira, United States District Court for the Central District of California, Civil Action No. 2:15-cv-01815 (Internal Ref. No. 586133)

Dear Dan Laidman:

In the event that Google does produce documents in response to legal process, it is Google's policy to only disclose documents to the address and person designated in the legal process. As such, we would not be able to provide a duplicate copy of a production to you without legal process that names you as a recipient.

Sincerely,
Legal Investigations Support

On 08/10/15 13:43:17 danlaidman@dwt.com wrote:

To Google Legal Investigations Support,


This firm represents Joseph Teixeira in connection with the above-referenced matter. On July 20, we sent the attached correspondence in response to Google's email to Mr. Teixeira, in which we requested that you provide us with responsive documents at the same time as any such materials are produced to counsel for the City of Inglewood.


Could you please advise if Google has responded to the City of Inglewood's subpoena, and if

so provide us with copies of any responsive materials?


Thank you,

Dan Laidman


**Dan Laidman** | Davis Wright Tremaine LLP

865 South Figueroa Street, Suite 2400 | Los Angeles, Ca. 90017
Tel: (213) 633-6886 | Fax: (213) 633-6899
Email: danlaidman@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.


---


**From:** Duncan, Ellen
**Sent:** Monday, July 20, 2015 1:25 PM
**To:** google-legal-support@google.com
**Cc:** jmesty@majestylaw.com; Burke, Thomas; Laidman, Dan; Palacios, Diana
**Subject:** Subpoena in City of Inglewood v. Joseph Teixeira, United States District Court for the Central District of California, Civil Action No. 2:15-cv-01815 (Internal Ref. No. 586133)
**Importance:** High


Good afternoon.  On behalf of Mr. Laidman, please see attached letter regarding the above matter.  Thank you.


**Ellen Duncan** | Davis Wright Tremaine LLP
Legal Assistant
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6873 | Fax: (213) 633-6899
Email: ellenduncan@dwt.com | Website: www.dwt.com

# EXHIBIT E

# Inglewood sues resident over YouTube videos using council footage to bash mayor

**By ANGEL JENNINGS**

AUGUST 3, 2015, 2:37 AM

The documentary-style videos that Joseph Teixeira has posted on YouTube under the name "Dehol Truth" are not flattering to Inglewood Mayor James T. Butts Jr.

One opens with the mayor boasting at a City Council meeting about Inglewood's efforts to improve traffic flow around the Forum. Pivoting quickly from the meeting, the video hammers away at the mayor's assertions using voice-over, on-screen text and footage of drivers running red lights while pedestrians try to use crosswalks.

Other videos also use snippets of council meetings to lambaste Butts.

In response, Inglewood has filed a federal lawsuit alleging that the online video posts violate the copyright of council videos — a tactic some legal scholars say is unusual, unlikely to succeed and fraught with financial risk for the small city that is set to break ground on a $1.86-billion NFL stadium.

The legal wrangling over the videos began in November, when Teixeira received a cease-and-desist order from Inglewood attorneys threatening to sue if he kept the videos online. The 54-year-old self-styled watchdog and Inglewood resident refused to take down the videos, so the city set aside $50,000 for legal fees and in March filed suit, saying Teixeira's videos have caused it "irreplaceable harm and damages."

The city is seeking unspecified "actual damages stemming from the defendant's unauthorized exploitation of the city's copyrighted videos," according to the nine-page complaint filed by Inglewood's attorney, JoAnna M. Esty, in U.S. District Court for the Central District of California.

Such lawsuits are rare because under California public records law governments generally cannot claim ownership of public documents. Even if Inglewood could copyright its meeting videos, fair-use law grants broad rights to use copyrighted material without permission, said Eugene Volokh, a law professor at UCLA Law School.

**Interested in the stories shaping California? Sign up for the free Essential California newsletter >>**

"When you are taking somebody else's material, not just to reproduce it but to comment on it and criticize it and sometimes to parody it ... that is generally fair use," Volokh said.

Jessica Levinson, a clinical law professor at Loyola Law School, questions the suit's merits. "It looks like the city is using taxpayers funds to try to insulate itself from criticism," she said.

Experts note that in copyright cases, judges often order the loser to pay the winner's attorney fees, which could increase the cost to taxpayers.

In late June, Dan Laidman, who is representing Teixeira pro bono, argued to have the case dismissed. Both parties are waiting for federal Judge Michael Fitzgerald to issue a ruling.

Butts, who previously served as Inglewood's police chief, would not comment, citing the litigation.

The lawsuit comes as the city faces criticism for taking shortcuts in its quest to lure an NFL team.

The five-member City Council skipped a public vote and adopted a ballot measure in February to add a 80,000-seat stadium to its Hollywood Park plan, six weeks after the project was unveiled. Developers, which include St. Louis Rams owner Stan Kroenke, also were able to bypass state-mandated environmental impact reports.

With a population of 110,000 and a general fund budget of about $86 million, Inglewood has its share of gadflies. But some residents say the role of these critics has become more important in recent years as the once-fractious City Council has grown harmonious.

Butts lent tens of thousands of dollars to two councilmen to help get them elected in 2011. The other two were already political allies. With all the officials aligned in their thinking, some residents worry there's nobody on the council to offer alternate viewpoints or hold officials accountable.

That's where Teixeira, who says he works in healthcare, stepped in.

In 2011, he attended his first City Council meeting after he witnessed a drive-by shooting. He said he reported the crime, but the Inglewood Police Department failed to investigate. So he brought his concerns to the City Council and filed a Public Records Act request to obtain copies of his 911 calls.

Teixeira said he was stonewalled and sometimes ejected from the weekly meetings. He said the police chief initially denied the tape existed. Nine months later, Teixeira received copies of the recordings.

"If I take these tapes, and I compare them to what they're saying in the video of the meetings, it

would be clear that they are blatantly lying," he said. "That's when I started thinking about making videos.... I've got the time, so I'm just going to start documenting this."

**NEWSLETTER: Get the day's top headlines from Times Editor Davan Maharaj >>**

Using his MacBook laptop, the rookie producer taught himself to upload the meeting videos to iMovie and add text and narration. He started distributing DVDs at no charge. Later, he posted his work to YouTube. The City Council often rebutted his claims during their meetings. That gave Teixeira content for more videos.

Teixeira said he does not have political aspirations but wants Inglewood residents to know what their elected officials are doing.

"I have a purpose for the videos, which is to document what is going on because people have a short attention span and don't do a lot of research," he said. "I try to be fair. Most of it is negative, but I don't exaggerate and I try not to skew things. I pick the things that are obvious, that are clearly evident, and it's by their very nature that they are damning."

Teixeira has taken a hiatus from moviemaking as he awaits the judge's ruling.

angel.jennings@latimes.com

**Twitter: @AngelJennings**

**ALSO**

**Some college students on financial aid don't get it in time to pay fees**

**'Giving circles' plant seeds of philanthropy in Asian American communities**

**Paid $1 to $3 a day, unauthorized immigrants keep family detention centers running**

Copyright © 2015, Los Angeles Times

# Editorial Inglewood shows how not to swat a gadfly

By **THE TIMES EDITORIAL BOARD**

JUNE 5, 2015, 5:00 AM

Inglewood resident Joseph Teixeira is a pointed critic of Mayor James T. Butts Jr., having posted several videos to YouTube over the years that accuse the mayor of lying to constituents and being a lousy public servant. In other words, he's the sort of irritant that elected officials around the state have to put up with on a daily basis. But the city of Inglewood responded in a novel and disturbing way: It sued Teixeira for copyright infringement because he used snippets of the city's official videos of council meetings to support his criticisms. A federal judge should throw out the city's lawsuit and send its leaders to a remedial class on the 1st Amendment.

There's something fundamentally outrageous about using tax dollars to sue a taxpayer over the use of a public record that taxpayers paid to create. The city's position is legally questionable too: According to a California appeals court ruling in 2009, the state Public Records Act allows local governments to assert copyrights only over computer software.

And even if it were possible for Inglewood to copyright the videos, federal law provides a "fair use" exemption when copyrighted materials are reused for commentary and criticism. That's exactly what Teixeira did, mingling brief excerpts of the city's recordings with his own footage in videos deriding the mayor. The city cannot credibly argue that Teixeira's work diminishes the value of its recordings, which it must make available for free viewing, or even competes with them. The only damage the council can claim is the harm that Teixeira's videos inflict on Butts' reputation, and copyright law doesn't cover that.

Actually, the lawsuit — which has cost city taxpayers at least $50,000 so far — may do more to hurt Butts' reputation than Teixeira's YouTube creations do. In court papers, the city insists that this case is about copyrights, not 1st Amendment rights. But the city is unmistakably targeting Teixeira for his political speech. Using copyright law to try to silence a nagging critic is not just petty, it's an insult to the people's right to seek changes in their government. There aren't many American values more deeply cherished than that one.

The council filed its complaint against Teixeira in March, days after approving construction of an enormous stadium without conducting a full environmental review — or taking a vote of the

8/28/2015
Case 2:15-cv-01815-MWF-MRW   Document 38   Filed 09/09/15   Page 69 of 83   Page ID #:495
Inglewood shows it's not above attacking L.A. Times

people. These sorts of moves speak of a government that has no tolerance for dissent. We take no position on the merit of Teixeira's critiques, but are adamant that he has the right to make them. If Butts and his allies on the council don't want to be held accountable for what they do and say at public meetings, they should step down.

**Follow the Opinion section on Twitter @latimesopinion and Facebook**

Copyright © 2015, Los Angeles Times

OT NOW ✖

Free daily updates delivered just for you.

The Volokh Conspiracy

## City sues critic for supposedly infringing city's copyright by posting city council video clips (with commentary) on YouTube

By Eugene Volokh   June 3

Annenberg Media Center (Celeste Alvarez & Sara Tiano) reports:

> The city of Inglewood is suing a longtime critic of the mayor and city officials, alleging he violated copyright law by using footage of council meetings in videos blasting them for abusing their power.
>
> Joseph Teixeira, who calls himself Inglewood's Watchdog, is being represented pro bono by a defense team led by First Amendment specialist Tom Burke, a lawyer in Davis Wright Tremaine's office in San Francisco.

(Peter Scheer (First Amendment Coalition) ~~seems to have first broken~~ recently wrote about this story; UPDATE: the Los Angeles Times also posted on it earlier this morning. FURTHER UPDATE: It now appears that Randall Fleming at CityWatchLA first wrote about this in March.) Three of the videos are here, here, and here:

James Butts Accuses The City Clerk Of Election Fraud  



I've looked at Teixeira's motion to dismiss and Inglewood's response, and it seems to me the city is going to lose. First, *County of Santa Clara v. Superior Court* (Cal. Ct. App. 2009) suggests that California law generally does not allow cities to claim copyright in public records; and while the city claims that this provision is trumped by federal copyright law, I don't think the city is right — federal law treats local governments as political subdivisions of the state, and a state has the power to control what its subdivisions do (including which federal rights they claim).

Second, the use of the council meeting videos is fair use. It's political commentary that quotes the contents of the videos and comments on what is said there. The city claims that Teixeira has some commercial purpose for the videos (though the precise purpose is unclear from its papers, and Teixeira denies it); but the videos as posted on YouTube are not moneymaking ventures. The videos are fundamentally factual, rather than being creative expression, which makes the fair use case stronger. The videos take only portions of the whole city council meetings (though this factor is less significant when the defendant is commenting on the original works, and especially when the original works have so little original creative content).

And, most importantly, the videos don't compete with Inglewood's distribution of its videos. Under California public records law, the city must make public records "available to any person upon payment of fees covering direct costs of duplication," so there's no way that Inglewood can profit from distributing the videos in the first place, or even recoup the fixed costs of creating the recordings. Plus in any event, people who want normal Inglewood city council videos wouldn't find Teixeira's edited versions to be adequate substitutes, and vice versa. All these fair use factors cut in favor of Teixeira.

So I expect Teixeira to win promptly — and, quite possibly, to get attorney fees against the City of Inglewood. Defendants who win copyright cases may be available to recover attorney fees, especially when the plaintiff's case is as weak as this one. "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright," and offering attorney fees to prevailing defendants, the Court held, therefore promotes such successful defenses. And "[a]ttorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." In deciding whether to order a losing plaintiff to pay a victorious defendant's attorney fees, courts are supposed to consider

... of the government's ability to litigate seriously, vigorously, and to the hilt; (4) the availability of governmental resources; the seriousness of the legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.

While it's hard to predict how these factors will come out, here they strike me as cutting in favor of order Inglewood to pay Teixeira's attorneys, once Teixeira prevails. And Inglewood taxpayers might thus have to foot the bill for their elected officials' thin skins.

Thanks to Paul Cook for the pointer.

Eugene Volokh teaches free speech law, religious freedom law, church-state relations law, a First Amendment Amicus Brief Clinic, and tort law, at UCLA School of Law, where he has also often taught copyright law, criminal law, and a seminar on firearms regulation policy.

**PROMOTED STORIES**

Recommended by



10 Most Livable Neighborhoods in the U.S.
AARP



15 Unsuspecting Foods that Can Impact Your Blood Pressure
HealthCentral



11 Cancer-Causing Foods That You Probably Eat Every Day
Better Daily Habits



Never Trust Your Boyfriend If He Does These 10 Things
Klickworthy



Here Are 23 of the Most Offensive Donald Trump Quotes
InsideGov



The 10 Best SUVs that Don't Hit the $25K Mark
Kelley Blue Book

*The Washington Post*

**The Volokh Conspiracy**  |  **Opinion**

# City loses copyright lawsuit against critic who posted city council video clips (with commentary) on YouTube

**By** Eugene Volokh  August 21

I blogged about this case in June, but yesterday the federal district court handed down its ruling (*City of Inglewood v. Teixeira*), so I thought I'd revisit the matter.

Joseph Teixeira has long criticized the mayor and officials in the City of Inglewood, a small municipality in the heart of Los Angeles — including by posting excerpts from city council video recordings, overlaid with his own commentary that supposedly shows that the officials are behaving badly. Three of the videos are here, here and here:

James Butts Accuses The City Clerk Of Election Fraud      



The city responded by suing him for supposedly infringing the city's copyright in its council videos, but yesterday the district court threw out the city's lawsuit.

1. The court held that, under California law (see, e.g., *County of Santa Clara v. Superior Court* (Cal. Ct. App. 2009)), cities can't claim copyright in public records. And while the city claims that this provision is trumped by federal copyright law, the court rejected that argument — federal law treats local governments as political subdivisions of the state, and a state has the power to control what its subdivisions do (including which federal rights they claim).

2. The court held that, under federal copyright law, the use of the council meeting videos is fair use. It's political commentary that quotes the contents of the videos and comments on what is said there. The city claims that Teixeira has some commercial purpose for the videos (though the precise purpose is unclear from its papers, and Teixeira denies it); but the court held that, even if the videos were commercial, they would still be fair use, because they are "quintessential transformative works for the purpose of criticism and commentary on matters of public concern."

The videos are fundamentally factual, rather than being creative expression, which makes the fair use case stronger. The videos take only portions of the whole city council meetings (though this factor is less significant when the defendant is commenting on the original works, and especially when the original works have so little original creative content).

And, most important, the videos don't compete with Inglewood's distribution of its videos. Under California public records law, the city must make public records "available to any person upon payment of fees covering direct costs of duplication," so there's no way that Inglewood can profit from distributing the videos in the first place, or even recoup the fixed costs of creating the recordings. Plus in any event, people who want normal Inglewood City Council videos wouldn't find Teixeira's edited versions to be adequate substitutes, and vice versa. All these fair use factors cut in favor of Teixeira.

Read the whole opinion, if you're interested. I think the court got this one quite right, and the city would be unwise to spend more money appealing (though the city was unwise to sue in the first place, and maybe this unwisdom will continue).

My sense is that the court thought the city's case was very weak. It refers to some of the city's arguments as "plainly wrong" and "plainly incorrect," for instance, and says Teixeira's activities "plainly fall within the protections of fair use" and are "clearly protected by the fair use doctrine" — not harsh rhetoric by the standards of comment threads, to be sure, but in a court opinion this is a marker that the city's arguments were seen as not just mistaken but also pretty obviously wrong.

And this is relevant to whether the defendant will be able to recover attorney fees, which are available in many copyright cases, especially when the plaintiff's case is as weak as this one. "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright," and offering attorney fees to prevailing defendants, the Supreme Court has held, therefore promotes such successful defenses. And "[a]ttorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services."

In deciding whether to order a losing plaintiff to pay a victorious defendant's attorney fees, courts are supposed to consider

(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.

While it's hard to predict how these factors will come out, here they strike me as cutting in favor of ordering Inglewood to pay Teixeira's attorneys. Inglewood taxpayers might thus have to foot the bill for their elected officials' thin skins, not only by paying the city's own outside counsel but also by paying the defense lawyers' fees.

Congratulations, by the way, to Thomas R. Burke, Dan Laidman, and Diana Palacios of Davis Wright Tremaine LLP for winning the case.

---

Eugene Volokh teaches free speech law, religious freedom law, church-state relations law, a First Amendment Amicus Brief Clinic, and tort law, at UCLA School of Law, where he has also often taught copyright law, criminal law, and a seminar on firearms regulation policy.

---

## PROMOTED STORIES

Recommended by



**The Worst Player on Every MLB Team**

PointAfter



**MLB: The All-Flop Team of 2015**

The Cheat Sheet



**The Richest MLB Pitcher Ever will Surprise You**

Worthly



**21 Colleges That Nobody Wants to Go to Anymore**

StartClass



**5 Things to Never Say to Someone with Cancer**

About.com



**18 May-December Celebrity Marriages**

AARP

# DAN WALTERS AUGUST 3, 2015

# Dan Walters: Politicians just hate bad media

**HIGHLIGHTS**

In 'True Detective,' nosy reporter beaten

That wouldn't work in real life

But politicians do try to block negative media

BY DAN WALTERS

*dwalters@sacbee.com*

The plot of the uber-complex "True Detective" miniseries merges two real-life California situations.

One is the city of Vernon, which was once just about as corrupt as its fictional counterpart, Vinci. The still-mysterious death of Vernon's city manager is transformed into the murder of Vinci's city manager.

The other is the state's bullet train project. In the HBO series, sleazy Vinci politicians and a local hoodlum plot to make fortunes in land development along its route.

An early "True Detective" episode depicts a corrupt Vinci cop tracking down and severely beating a Los Angeles Times reporter who was writing a series of articles about the city.

"He's not going to be writing that story no more," the thuggish cop reports to his superior.

That, too, is inspired by real life. The Times did a series of articles about Vernon, which sparked an effort by some local legislators to disincorporate the tiny industrial city and, eventually, some reforms.

But in real life, beating a reporter would not have stopped a newspaper from doing such a series – if for no other reason than it would have already been completely written before publication.

That said, politicians at all levels, and not only the corrupt variety, make strenuous efforts to thwart media coverage they consider to be negative.

Case 2:15-cv-01815-MWF-MRW    Document 38    Filed 09/03/15    Page 76 of 83    Page ID #:502

They range from presidential candidate Hillary Clinton using a rope barrier to fend off reporters as she marched in a Fourth of July parade to a truly bizarre situation in Bridgeport, Conn.

The Connecticut Post reported Sunday that the mayor of Bridgeport had ordered local police to issue no reports about crimes until after he had been re-elected.

When the Times began to cover Vernon, it encountered similar resistance.

"The silence always seemed designed to prevent some awful domino effect," Times reporter Hector Becerra wrote recently, comparing the fictional Vinci to the real Vernon.

"The five council members were carefully shielded from reporters, especially those who might actually ask pointed questions. But the council members were never whom you really wanted to talk to anyway.

"Even after Vernon hired a relatively responsive spokesperson, the gears of the city worked to keep you from getting answers and certainly from cornering the town's real movers and shakers."

Inglewood is another small Los Angeles County community with a checkered history. It's lost its most notable feature, the Hollywood Park horse racing track, and is trying to build a professional football stadium and lure an NFL team.

Inglewood Mayor James T. Butts Jr., the city's former police chief, doesn't like it that a local gadfly named Joseph Teixeira has been editing video clips of City Council meetings into critiques, particularly of Butts, that might affect Inglewood's bid for football glory.

Therefore, the city has filed a federal lawsuit alleging that Teixeira's clips violate the city's copyright of council videos.

The suit will almost certainly fail, but it demonstrates that politicians will to go to extreme lengths to avoid negative media depictions.

*Dan Walters: 916-321-1195, dwalters@sacbee.com, @WaltersBee*

reprints

## MORE DAN WALTERS



- 
- 
- 

Like

Follow @kcetdepartures

**Newsletter**

# Departures | Columns | Cakewalk



Inglewood City Hall | Photo: **fauxtos/Flickr/Creative Commons**

# Why Inglewood is Wrong for Suing for Copyright (http://www.kcet.org/socal/departures/columns/cakewalk/copywright-wrong.html)

By **Erin Aubry Kaplan** |
June 12, 2015

Inglewood's in the news again, something I didn't know until this particular news went viral last week or so. I didn't know partly because the city hasn't been too eager to publicize what has generated the worst PR in town since Kevin Kline encountered some thugs driving home after a Laker game, in the opening scene of the 1991 movie "The Grand Canyon."

At least that was fiction. In that film, Danny Glover, playing a friendly tow truck driver, rescues Kline; there are no such heroes coming to our aid on this. Ironically, Mayor James Butts is supposed to be Inglewood's savior, a self-styled hero bringing us long-awaited development, a billion-dollar football stadium and world recognition. With his urbane profile that includes a master's degree in business, he's supposed to be breaking the political mold that's been frankly been small-town and starved for vision. But in backing this ridiculous lawsuit he's made Inglewood out to be the small-minded small burg that most assume it is.

So here's the news: a few weeks ago, Inglewood slapped citizen Joe Teixeira with a federal copyright lawsuit alleging that Teixeira, a longtime and vocal Butts critic who's a fixture at weekly council meetings, used snippets of city council meeting in video commentaries. Inglewood says that footage rightfully belong to the city and ordinary people like Teixeira are restricted in how they can use it. Critics immediately cried foul, alleging that the copyright suit is a legal fig leaf trying to cover Butts' personal agenda to shut Teixeira up -- and shut him down -- and, by extension, other citizens who would dare do something similar. They're calling it a First Amendment issue, not a copyright issue. I have to agree. Even if the city has some kind of exclusive rights to the footage -- and I'm not at all sure it does -- city council meetings are public forums that by definition belong to no one. Nor is Teixeira making money off his usage or in any way fashioning it into a product that could compete with the numbing hours of city council coverage that isn't exactly flying off the shelves on Amazon. The more salient fact here is that Butts, sophistication notwithstanding, is pretty thin-skinned. He doesn't like dissent. That's not uncommon among elected officials, especially chief executives, but Butts at this point is wildly popular in Inglewood. He won reelection last year with more than 80 percent of the vote, which practically makes him a legal dictator. It's one thing for an embattled mayor to be paranoid, but a mayor with that much support carrying this much attitude makes you wonder.

It doesn't help that Butts is shrinking from this controversy. He's been refusing comment from the moment it became a flashpoint among free speech advocates. He's probably keeping mum on the advice of the city attorney, who's really to blame here. It galls me to think that this case filed on behalf of the citizens is costing us tens of thousands, and if Teixeira wins the motion to dismiss this case, which is likely, the citizens will likely pay thousands more. Taxpayers funding a lawsuit that's meant to muzzle taxpayers -- more ridiculousness. Except that it isn't funny.

Story Continues Below

Case 2:15-cv-01815-MWF-MRW Document 98 Filed 09/03/15 Page 79 of 83 Page ID #:505



Support KCET

You've also got to wonder if race is part of what's fueling Butts' wrath. Butts is black, Teixeira isn't. The self-proclaimed Inglewood Watchdog is shown in one council meeting video decrying the fact that Butts is treating Inglewood citizens as if they're "weak," something he surely wouldn't be doing in another city. The clear implication is that Butts wouldn't be this heavy handed with a population that's more upscale and educated -- i.e., more white. He wouldn't dare hold it in such contempt. You can challenge this perception of the mayor, but I have to admit that Teixeira in general has a point. For years I've felt this sort of 'soft' contempt from black pols who claim to want to represent black people, but once elected, don't consult them. Too often they're interested in representation but not accountability. That fact that representation is accountability doesn't seem to occur to them; it's all about asserting and then maintaining power.

The small-town mayor with the worst case of this that I've seen was Omar Bradley, the mayor/king of Compton who ruled absolutely in the '90s and made a circus out of more than one council meeting. Though Bradley at least was a native with deep roots who saw himself as one of the common folk struggling to rehab Compton's battered image; he took genuine pride in things like street medians and city programs aimed at the disadvantaged. Butts comes off as more CEO than populist, and not a very conscientious CEO at that.

Certainly SoCal is full of small towns with rough-and-tumble politics. The cities in the Southeast area, from Bell to South Gate to Vernon, come immediately to mind. But the autocratic bent of the county's relatively few mayors who happen to be black is disturbing. Before Butts ran Inglewood there was Roosevelt Dorn, and before that, Ed Vincent. Both were known for their unapologetic bluster and my-way-or-the-highway governing style. And both could preach about community empowerment and the little people until they were in the blue in the face; like Omar Bradley, they had the post-civil rights lingo down. But both were notorious for their intolerance. Butts is nothing new in this regard, but he should be something new. His own political rhetoric about Inglewood moving to another level demands it. I know he doesn't have the listening gene, but if he at least listened to himself, we'd all be better off. For one thing, we wouldn't have frivolous lawsuits.



Navigation ☰

# Shame on Inglewood. Using copyright as a muzzle, the city files suit to censor a local critic

by **Peter Scheer** on May 29, 2015 in **Peter Scheer**



BY PETER SCHEER—Inglewood CA doesn't have much to commend it. To the various reasons not to live there—like high crime rates and bankrupt schools—the city government has added this threat: if you criticize the mayor or other officials, the city will hire lawyers to censor you.

That is the clear message to be drawn from Inglewood's recently filed lawsuit in federal court against one Joseph Teixeira, a city resident. (*City of Inglewood v. Teixeira.*) Teixeira, who has a low opinion of Inglewood's mayor, James Butts, shared his criticisms of the city's chief executive in a series of videos. Posted to YouTube, they consist of Teixeira's commentary interspersed with clips from the official recordings of Inglewood City Council meetings.

The city's lawsuit seeks damages, an injunction barring further airing of the videos on YouTube, plus payment by Teixeira of the city's attorney's fees—all for having the audacity to criticize his local government's policies and leadership. **Inglewood's legal theory? That by incorporating into his YouTube videos segments of the official recordings (both video and audio) of council meetings, Teixeira infringed the city's copyright.** Seriously.

Now, copyright and freedom of speech coexist uneasily in the first amendment ecosystem, as legal scholars have long noted. But putting that rather esoteric issue to one side, **the real question here is more political than legal: How could Inglewood officials and their lawyers possibly have concluded that suing one of their more outspoken critics, in hopes of unplugging his unflattering videos, was an appropriate use of taxpayer dollars?**

This is America, not Iran. Inglewood's citizens are free to criticize government—openly, loudly, even offensively. (This is sometimes also referred to as "politics.") Teixeira was exercising his birthright of US citizenship, the most fundamental of rights in a democracy, enshrined in the first amendment

to the Constitution. If that amendment means anything, it means that government is powerless to use the legal system to suppress political expression that the government dislikes.

Inglewood's city council members, however, didn't get the memo. And their attorneys apparently missed their law school classes on the first amendment.

**Although Inglewood no doubt will argue that censorship was the furthest thing from city officials' thinking—that the city sued Teixeira only to protect the value of Inglewood's "intellectual property"—that is utter nonsense. The commercial value of the city-made videos of City Council meetings is zero. In fact, it's hard to imagine video content with less audience appeal—and therefore less opportunity to sell ads or generate other revenue—than a bunch of council members sitting at a council meeting, alternately checking their email, checking the clock, and dozing off.**

The only reasonable conclusion is that this lawsuit was cooked up to shut up Teixeira.

Back to the copyright issues for a moment . . . The city's copyright claim must fail because the city council videos are public records subject to California's Public Records Act. By enacting the PRA, the state waived copyrights to government-created records (except for the few that the Legislature specifically designates as copyrighted). Otherwise, the PRA would be meaningless, since local governments and agencies could assert copyright over any records they don't want to disclose, regardless of the availability of PRA exemptions.

Copyrights, because they impose restrictions on expression, are in tension with the first amendment's protection for free speech. We nonetheless have copyrights (in fact, they are mentioned in the Constitution) on the theory that they provide needed incentives for content creators—authors, artists, computer programmers and others. But this rationale makes little sense when a government entity, rather than a private individual or company, claims ownership of a copyright.

**Copyright protection for recordings of Inglewood's city council meetings won't stimulate the making of more or better recordings; it will not cause the city to have more, or more productive, city council meetings. It serves no purpose other than to give city officials a club with which to suppress dissent.**

Inglewood's censorship suit deserves to be tossed out of court at the earliest opportunity. And Inglewood's voters hopefully will make known their disapproval in the next election. Voting out the mayor and council members would be a powerful reminder that their job is to *serve* citizens, *not* sue them.

⎯⎯⎯

*Teixeira's videos are still available on YouTube* here,  here *and* here.  *This is a link to* Inglewood's

*lawsuit. Peter Scheer, a lawyer and journalist, is executive director of FAC. The views expressed here do not necessarily reflect the views of FAC's Board of Directors.*

**Your contributions make our work possible.**



ShareThis

## Suscribe

Sign up for our Flash newsletter.

| E-mail | | Submit |

‹ Washington Post reporter goes on trial in Tehran with no clear outcome in sight

A&A: (Video 5:58) Why reporters covering police wrongdoing often quote anonymous sources ›

## 6 Responses to *Shame on Inglewood. Using copyright as a muzzle, the city files suit to censor a local critic*



**Randall Fleming** May 30, 2015 at 8:33 am #

I am glad to see that some sunshine is being focused on this story, one which the L.A. County District Attorney, Jackie Lacey, has ignored:

http://www.citywatchla.com/archive/7217-is-race-the-reason-la-s-da-won-t-act

http://www.citywatchla.com/archive/8674-inglewood-mayor-celebrates-sunshine-week-with-50k-lawsuit-against-first-amendment

This lawsuit is not the only example of attacks on Constitutional rights that the current mayor of Inglewood, James T. Butts, has attempted.

In 1999, the 9th Circuit Court of Appeals struck down a case for which Butts, as Santa Monica's police chief, attempted to destroy Miranda Rights: "In 1995, the case California

Case 2:15-cv-01815-MWF-MRW   Document 36   Filed 09/03/15   Page 83 of 83   Page ID #:509



Blog    Headlines    Events    Report Censorship        search

OUR WORK    TAKE ACTION    DONATE    LEARN MORE    ABOUT US

# INGLEWOOD MAYOR USING COPYRIGHT FOR CENSORSHIP

By Josh Askildsen  |  June 8, 2015



   Share

Defending free speech often requires one to defend words you don't necessarily agree with; but then there are those times when the attitudes of free speech opponents are so out of bounds that it makes the free speech case an easy one. Observe the actions of Inglewood, California Mayor James Butts, who is attempting to use a copyright injunction to silence a critic.

Joseph Teixeira is highly critical of Butts — and highly vocal about it. He runs a website called Anyone but Butts for Anything, and under the username "Dehol Trouth" he posts YouTube videos with audio commentary over mashup clips of city council meetings. Some of the videos focus on what he sees as Butts' hypocrisy; others, like the one below, argue that he abused a murder investigation for political gain.

James Butts exploits the murder of Fredrick Martin for...       

Instead of just ignoring these videos (the most popular one not surpassing 1,000 views), Butts decided to file a copyright infringement suit.

Adam Steinbaugh reported on the complaint submitted by the city, which argues that Inglewood owns the copyright to City Hall videos and that Teixeira had simply posted the footage in its entirety, only adding a voice over.



## Join us!

Subscribe to get the latest censorship news and information.

email address

Subscribe

## Video Collection



### Neil Gaiman Salutes 40 Years of Free Speech Advocacy

In this exclusive video, award-winning writer and 2014 Free Speech Defender Neil Gaiman talks about his encounters with censorship and the need to fight those "who are trying to protect us from...



### Trumbull Students Honored for Activism, "Rent" Victory

Student thespians of Trumbull High School mobilized their Connecticut community against the censorship of their production of Rent and claimed a victory for freedom in the performing arts and for...



### "Future Warfare III" Wins 2013 Youth Film Contest

The winner of this year's Youth Free Expression Project Film Contest, addressing the theme Video Games in the Crosshairs, is "Future Warfare III" by Ani Akpan of the Bronx, NY. Using dazzling...