UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV-15-01815-MWF (MRWx)                Date:  October 8, 2015
Title:      City of Inglewood -v- Joseph Teixeira, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

  Deputy Clerk:                          Court Reporter:
  Rita Sanchez                           Not Reported

  Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
  None Present                           None Present

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANT'S MOTION TO RECOVER ATTORNEYS' FEES [37]

Before the Court is Defendant Joseph Teixeira's Motion to Recover Attorneys' Fees (the "Motion"), filed on September 3, 2015. Plaintiff City of Inglewood filed a Memorandum in Opposition on September 21, 2015, and Defendant's Reply followed September 28, 2015.  (Docket Nos. 45, 46).  The Court has reviewed and considered the parties' submissions, and held a hearing on **October 5, 2015**.

For the reasons stated below, the motion is **GRANTED** with alterations as noted. The Court determines that Defendant, as the prevailing party, is entitled to recover reasonable attorneys' fees under the circumstances of this case. Every factor used to determine whether an award of fees is appropriate in a copyright infringement action favors Defendant. Although the Court concludes that Defendant may not recover fees for all of the hours his attorneys expended on the case, the Court **AWARDS** Defendant $117,741 in attorneys' fees as well as costs pursuant to the Local Rules of this District.

## I.   BACKGROUND

The City brought this action against Defendant under the Copyright Act, making two basic allegations. First, the City claimed that it enjoys a copyright interest in the video recordings of the public meetings of the Inglewood City Council. Second, the City alleged that Defendant infringed on its copyright by using portions of the recordings to criticize the City and its elected officials.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-15-01815-MWF (MRWx)     **Date:** October 8, 2015
**Title:** City of Inglewood -v- Joseph Teixeira, et al.

The Court rejected both premises of the City's Complaint and dismissed the action with prejudice. (Order Granting Mot. Dismiss ("MTD Order") at 1 (Docket No. 35)). The Court first determined that the City could not, as a matter of law, assert a copyright interest in the recordings of the City Council's meetings. (*Id.* at 6). And even if it could, Defendant's conduct fell squarely within the purview of the fair use doctrine and was thus shielded from copyright liability. (*Id.* at 20). Indeed, the Court remarked that it "can scarcely conceive of works that are more appropriately protected by the fair use doctrine and § 107 than the Teixeira Videos." (*Id.*).

Defendant now seeks to recover the attorneys' fees expended on litigating this action. Specifically, Defendant requests the following amounts:

| Attorney/Staff | Title | Hours Worked | 2015 Rate | Lodestar Total |
|---|---|---|---|---|
| Thomas R. Burke | Partner | 33.60 | $ 645 | $ 21,672 |
| Dan Laidman | Associate | 249.40 | $ 395 | $ 98,513 |
| Diana Palacios | Associate | 38.80 | $ 335 | $ 12,998 |
| Warren Keville | Paralegal | 12.50 | $ 155 | $ 1,938 |
| **Total** | | | | **$ 135,121** |

(Declaration of Dan Laidman ("Laidman Decl.") ¶ 8, Ex. A (Docket No. 38); Supplemental Declaration of Dan Laidman ("Suppl. Laidman Decl.") ¶¶ 2-3 (Docket No. 46-1)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-01815-MWF (MRWx)          Date:  October 8, 2015
Title:    City of Inglewood -v- Joseph Teixeira, et al.

## II.  BASIS FOR ATTORNEYS' FEES

The Copyright Act confers broad discretion on the Court to award "reasonable attorneys' fees to the prevailing party as part of the costs."  17 U.S.C. § 505.  The Act explicitly allows successful defendants to recover attorneys' fees because meritorious defenses further the purposes of the Act as much as meritorious claims do.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("*Fogerty I*") ("[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.").  To determine whether an award fees is appropriate in specific circumstances, the Ninth Circuit uses a list of non-exhaustive factors, including (1) the degree of success obtained; (2) the objective unreasonableness or frivolousness of the case; (3) the motivation behind bringing a copyright infringement claim; and (4) the need in particular circumstances to deter future frivolous copyright actions.  *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) (discussing factors); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996) ("*Fogerty II*") (same).  In all cases, the award of attorneys' fees must further the objectives of the Copyright Act:  "to encourage the production of original literary, artistic, and musical expression for the good of the public."  *Fogerty I*, 510 U.S. at 524.

That Defendant was represented on pro bono basis is of little import to the propriety of the attorneys' fees award.  *See Legal Voice v. Stormans, Inc.,* 757 F.3d 1015, 1017 (9th Cir. 2014) ("Attorneys' fees are recoverable by pro bono attorneys to the same extent that they are recoverable by attorneys who charge for their services."); *John Wiley & Sons, Inc. v. Kirtsaeng*, 605 F. App'x 48, 50 n. 2 (2d Cir. 2015) ("Preventing litigants who are represented by pro bono counsel from receiving fees may decrease the future availability of pro bono counsel to impecunious litigants, who may, in the absence of pro bono representation, abandon otherwise meritorious claims and defenses. This runs counter to *Fogerty's* instruction that courts should exercise their discretion under § 505 so as to encourage the litigation of meritorious claims and defenses.").  The Court therefore briefly analyzes the relevant factors weighing in favor of a fee award before turning to the loadstar calculation.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-01815-MWF (MRWx)          Date:  October 8, 2015
Title:       City of Inglewood -v- Joseph Teixeira, et al.

### A.      Defendant's Success in this Litigation

Defendant achieved a complete victory on the merits in dismissing the City's action with prejudice. Although the City seems to dispute that this factor favors fee-shifting, none of the cases it cites are apposite. *See Dhillon v. Does 1-10,* No. C 13-01465 SI, 2014 WL 722592, at *7 (N.D. Cal. Feb. 25, 2014) (determining that an attorneys' fees award would not further the purpose of the Copyright Act because "defendant prevailed on only two of the four fair use factors"); *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (declining to award attorneys' fees because, among other reasons, even the "defendants themselves did not view plaintiff's copyright claims as specious"); *Marshall & Swift/Boeckh, LLC v. Dewberry & Davis LLC*, 586 F. App'x 448, 450 (9th Cir. 2014) (affirming the denial of attorneys' fees without significant elaboration). Defendant's total victory thus favors an award of fees.

### B.      Objective Unreasonableness of the City's Claims

The Court agrees with Defendant that the City's claims were objectively unreasonable. As the Court determined in its MTD Order, "the only published authority on the question of the ability of California public entities to assert copyright over works they produce holds that the City may not assert a copyright interest in the City Council Videos." (MTD Order at 6). Prior to bringing this action, the City should have closely scrutinized the only controlling authority on this issue—*County of Santa Clara v. Suprior Court*, 170 Cal. App. 4th 1301, 89 Cal. Rptr. 3d 374 (2009)—and at least discussed the case with Defendant or his counsel.

Both at the hearing and in the papers, the City argued that it was "manifestly reasonable to assume" that the Court would not follow *City of Santa Clara*. (*See* Opp. at 7-8). The premise of the City's contention is that the holding in *Santa Clara* is in "direct conflict" with the Second Circuit's opinion in *County of Suffolk v. First American Real Estate Solutions*, 261 F.3d 179 (2d. Cir. 2001). (Opp. at 7). Due to the purported conflict, the City "could not have intuited" that the Court would be swayed

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV-15-01815-MWF (MRWx) | **Date:** October 8, 2015 |
| **Title:** City of Inglewood -*v*- Joseph Teixeira, et al. | |

by state and not federal case law in a field within the exclusive jurisdiction of the federal courts. (*Id.*).

Plaintiff has been and remains simply wrong on this point. There is no conflict between the holdings of *Santa Clara* and *Suffolk*, and a cursory review of the two cases shows just how mistaken the City is. The Second Circuit framed the issue before it as follows: "[A]lthough a state and its subdivisions may own a copyright as a matter of copyright law, it may be that Suffolk County is not permitted to do so in this instance. The question becomes whether New York's Legislature, by enacting FOIL, has ceded Suffolk County's copyright." *Cnty. of Suffolk,* 261 F.3d at 188. The panel answered that question in the negative, holding that "the [New York] Legislature, by enacting FOIL, did not abrogate Suffolk County's copyright." *Id.* at 190.

The Court of Appeal in *Santa Clara* was presented with the same issue but in the context of California law. The panel thus considered whether **California** law prohibits a **California** public entity to obtain and enforce a copyright under the Copyright Act. *Cnty. Of Santa Clara*, 170 Cal. App. at 1320. The appellate court concluded that, in the absence of "an affirmative grant of authority," a California municipality may not do so. *Id.* at 1333. Because the City is a California entity, not a New York one, this Court relied on *Santa Clara* in dismissing the City's copyright claims. (MTD Order at 6). The City does not—because it cannot—explain why this Court would consider *Suffolk* and the impact of New York legislation when deciding whether California law permits the City to enforce its copyrights. As the Court made clear in its prior Order, the only sensible reading of the two cases is that a California public entity "may not claim copyright protection for a work it has created even if it falls within the scope of the federal copyright protection," while a New York municipality can. (MTD Order at 9).

Even if the City were permitted to hold a protectable copyright under the Copyright Act, its claims would still fail because Defendant's videos are textbook examples of fair use works. As the Court already explained, Defendant produced "quintessential transformative works for the purpose of criticism and commentary on matters of public concern." (MTD Order at 15). The Court's view is consistent with,

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV-15-01815-MWF (MRWx) | Date: October 8, 2015 |
| Title: | City of Inglewood -v- Joseph Teixeira, et al. | |

although in no way influenced by, the universal condemnation the lawsuit received from legal academics and other experts in copyright, First Amendment, and public records law. (*See* Laidman Decl. ¶ 28, Ex. E). The nature and purpose of Defendant's videos should have given the City at least some pause and prompted it to conduct further research into the merits of its claims. Indeed, when a fair use defense is that strong, courts view the copyright infringement claim as "objectively unreasonable." *Mattel, Inc. v. Walking Mountain Prods.*, No. CV99-8543RSWL(RZX), 2004 WL 1454100, at *1 (C.D. Cal. June 21, 2004) (plaintiff's copyright claim deemed "objectively unreasonable" when "the parodic character of [d]efendant's work was clear"); *Brownmark Films LLC v. Comedy Partners*, No. 10-CV-1013-JPS, 2011 WL 6002961, at *6 (E.D. Wis. Nov. 30, 2011) ("[B]ecause the defendants' fair-use defense was so strong, satisfying all four fair-use factors," the plaintiff's legal position was objectively unreasonable). This factor thus weighs in favor of a fee award.

At the hearing, counsel for Plaintiff mistakenly referred to this Court's ruling on fair use as an advisory opinion. This Court is free to resolve all issues raised by the Motion. While the Court could have granted the Motion solely on either ground, the Court has the authority to resolve both. Indeed, had the City chosen to appeal, it would have been in the City's interest to have both issues resolved.

### C. The City's Motivations in Bringing its Claims

It is, of course, impossible to know with certainty what prompted the City to bring this lawsuit. The City avers that its only motivation was to enforce the rights it believed it had in the videos. (Opp. at 11). But the Court is not persuaded. As Defendant rightly notes, the main justification of the Copyright Act is "the protection of the *commercial* interest of the author." *Garcia v. Google, Inc.*, 786 F.3d 733, 744-45 (9th Cir. 2015) (en banc) (quotation marks and citations omitted) (emphasis in the original). California law, however, prohibits the City from charging anything more than the "direct costs of duplication" when providing public records. (MTD Order at 19). Pecuniary gain, therefore, could not have been the motivating factor in filing this action. As the Court made clear at the hearing, the City's most plausible purpose was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-01815-MWF (MRWx)     Date: October 8, 2015
Title:     City of Inglewood -v- Joseph Teixeira, et al.

to stifle Defendant's political speech after he harshly criticized the City's elected officials. As such, this factor weighs heavily in favor of an attorneys' fees award.

At the hearing, counsel for Plaintiff implied that this Court was basing its ruling on the reaction of the press or the academic community. The Court does not do so. Defendant has submitted various materials in support of its Motion that are consistent with granting attorneys' fees. (*See* Laidman Decl. ¶ 28, Ex. E). The Court, however, does not base this Order on those materials and would reach the same conclusion in their absence.

### D.    Deterrence of Future Frivolous Actions

The Court is also persuaded that a fee award is necessary to deter future meritless litigations of this kind. The City argues that the attorneys' fees "will have absolutely no deterrent effect" on a municipality that intends to file no future copyright lawsuits. (Opp. at 11). Even if true, the Court notes that deterrence is a broad value that is not limited to the individual litigants here. Indeed, a reasonable award of fees will serve to deter other entities, whether public or private, that contemplate bringing unreasonable suits to pressure an individual into abandoning protected activity. *See Mattel,* 2004 WL 1454100 at *2 ("Mattel (a large corporation) brought objectively unreasonable copyright claims against an individual artist. This is just the sort of situation in which this Court should award attorneys' fees to deter this type of litigation which contravenes the intent of the Copyright Act.").

### E.    Goals of the Copyright Act

The Court is convinced that the purposes of the Copyright Act are furthered when the transformative works such as the videos involved here are protected from unreasonable claims. *See, e.g., SOFA Entm't, Inc. v. Dodger Prods.*, Inc., 709 F.3d 1273, 1280 (9th Cir. 2013) ("When a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) ("[T]he goal of copyright, to promote science and the arts, is generally

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-01815-MWF (MRWx)        Date:  October 8, 2015
Title:    City of Inglewood -v- Joseph Teixeira, et al.

furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright."). To the extent the City denies that Defendant's videos constitute "original literary, artistic, and musical expression" (*see* Opp. at 13), courts have rejected such arguments. *See Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2014 WL 5597274, at *5 (N.D. Cal. Nov. 3, 2014) ("[W]hile the Indybay website may not be 'artistic creativity' *per se*, it is a forum for public expression. The Copyright Act's fee-shifting provision is designed to ensure that such forums for expression are not unhindered by asserted intellectual property claims that have no basis in the law."). Indeed, this lawsuit posed a serious threat to critical political expression, and the successful defense against the City's claims successfully maintained the boundaries of liability under the Copyright Act.

In sum, all factors favor granting reasonable attorneys' fees.  The Court now turns to calculating the precise amount of the award.

## III.  CALCULATION OF ATTORNEYS' FEES

### A.  Legal Standard

In copyright cases, the Ninth Circuit utilizes the "loadstar method" to calculate a reasonable fee award.  *See Lawrence v. Sony Pictures Entm't, Inc.*, 534 F. App'x 651, 654 (9th Cir. 2013).  The lodestar is comprised of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate of the attorneys. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).

In making that calculation, the Court may consider the following guidelines:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-01815-MWF (MRWx)            Date:  October 8, 2015
Title:     City of Inglewood -v- Joseph Teixeira, et al.

and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* "After the lodestar is determined, the court may make adjustments, depending on the circumstances of the case." *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  "Factors subsumed in the original determination of reasonable hours and rates, however, should not be used to adjust the lodestar figure." *Id.*  "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *Id.*

### B. Discussion

#### 1. Hourly Rates for Defendant's Counsel

In determining the reasonable hourly rates for Defendant's counsel, the Court is guided by the attorneys' usual billing rates. *See Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) ("Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate."); *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) ("[T]he best evidence [of an attorney's reasonable hourly billing rate] would be the hourly rate customarily charged by the [applicant] himself or by his law firm.") (quotation marks and citations omitted).  Defendant has submitted numerous declarations showing that rates requested in the Motion are the same rates Defendant's attorneys charge their paying clients.  (*See* Laidman Decl. ¶ 4).

As Defendant points out, the charged amounts are reasonable in light of the attorneys' experience, skills, and reputations.  (Mot. at 16).  Davis Wright Tremaine LLP ("DWT") is a nationally recognized firm in the areas of First Amendment and intellectual property litigation.  (*Id.* at 17).  Mr. Burke is a leading First Amendment lawyer with 26 years of experience, who has litigated numerous precedential cases and has taught media law at University of California, Berkeley.  (Declaration of Thomas R. Burke ("Burke Decl.") ¶¶ 2-5).  Mr. Laidman is a former Ninth Circuit law clerk with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV-15-01815-MWF (MRWx) | Date: October 8, 2015 |
| Title: | City of Inglewood -v- Joseph Teixeira, et al. | |

five years of experience, while Ms. Palacios—the most junior member of the team—has three years of experience in media litigation. (Laidman Decl. ¶¶ 5-7).

Defendant also presents declarations from two experts in the Southern California legal market who have considerable experience with this type of litigation. (Mot. at 17). Both experts opine that the requested rates are within the range of those charged by comparable firms in Sothern California. (Mot. at 17).

The City provides its own expert declaration, which claims that the rates demanded by Defendant's counsel are unreasonable. Typical rates for DWT's clients, the City argues, "would be in the range of $300 an hour for a partner, half that rate for an associate and less for a paralegal." (Opp. at 15; Declaration of Judith Bain ("Bain Decl.") ¶ 5). But the City fails to substantiate that assertion with anything but speculative remarks regarding DWT's practice and clients. As Defendant's counsel noted at the hearing, the City has not met its burden to establish that a discounted rate should apply. Indeed, the City has offered no reason to doubt Defendant's submitted declarations showing that the requested fees are consistent with market rates and charged to DWT's paying clients. And while it may be that DWT provides discounts to some clients "based on the client's relationship to the firm, the volume of business it gives the firm, and the degree of case complexity" (*Id.* ¶ 7), nothing in the record indicates that such a discount is appropriate here.

Based on the foregoing and the Court's own extensive knowledge of the Los Angeles legal market, the Court concludes that the requested hourly rates are proper for calculating the loadstar amount.

### 2. Hours Expended by Defendant's Counsel

Defendant argues that the amount of hours expended on this litigation is reasonable on five separate grounds. First, as already discussed, the defense was entirely successful in dismissing the case with prejudice. Second, the issues raised in the Motion to Dismiss were complex, requiring research into the intersection between federal copyright law and state public records law. Third, the City's own litigation tactics drove up defense costs. Fourth, the case was led efficiently by Mr. Laidman, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| **Case No.** | CV-15-01815-MWF (MRWx) | **Date:** October 8, 2015 |
| **Title:** | City of Inglewood -v- Joseph Teixeira, et al. | |

mid-level associate at DWT, while Mr. Burke assumed only a supervisory role. And finally, the total amount requested is within the range of fees awarded in comparable copyright actions. *See Wild v. NBC Universal*, 2011 U.S. Dist. LEXIS 157860, No. 10-CV-03615-GAF-AJW (C.D. Cal. July 18, 2011) (awarding $112,590.80 for 274.8 hours expended on dismissing a copyright infringement case via a Rule 12 motion); *Maloney v. T3Media, Inc.*, 2015 U.S. Dist. LEXIS, No. 14-CV-05048-AB-VBK (C.D. Cal. May 27, 2015) (awarding $195,838.50 for 546.5 hours of work in dismissing the action on an anti-SLAPP motion).

The City maintains that the hours billed by Defendant's attorneys are grossly inflated. The City primarily takes issue with the time spent on drafting the motion to dismiss and related papers. (Opp. at 18). Mr. Laidman alone appears to have spent over 130 hours on the motion to dismiss, while the total number of hours expended on the motion comes close to 170. (*Id.*; Bain Decl. ¶ 9). The City erroneously concludes that Defendant's counsel inflated its total hours by approximately 80 percent and that the motion to dismiss should have been drafted in no more than 20 hours. (*Id.* at 20).

The Court in no way wishes to criticize Mr. Laidman and does not suggest that the hours worked were excessive in terms of producing a polished final product. Nonetheless, the City cannot be forced to pay for a Cadillac if a Chevy would have sufficed. Moreover, based on the Court's own experience as an associate, this is precisely the sort of case in which a lawyer might feel free to work more hours since the client might not get stuck with a bill. Plaintiff's rejoinder based on contingency cases is inapposite.

Therefore, the Court determines that 45 hours should be subtracted from the total time billed by Mr. Laidman in the final loadstar calculation.

### C. Lodestar Calculation

The following chart presents the final calculation of the loadstar amount, incorporating the time spent on the Reply in support of this Motion. The Court added

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-15-01815-MWF (MRWx)      **Date:** October 8, 2015
**Title:** City of Inglewood -*v*- Joseph Teixeira, et al.

two additional hours to Mr. Laidman's time in order to account for the time spent in preparation for and at the hearing. (*See* Suppl. Laidman Decl. ¶¶ 2-3).

    Accordingly, the Court awards $117,741 in attorneys' fees, and costs as provided in the Local Rules of this District.

| Attorney | Hourly Rate | Compensable Hours | Total |
|---|---|---|---|
| Thomas R. Burke | $645 | 33.60 | $21,672 |
| Dan Laidman | $395 | 205.40 | $81,133 |
| Diana Palacios | $335 | 38.80 | $12,998 |
| Warren Keville | $155 | 12.50 | $1,938 |
| **Total** | | | **$117,741** |

    IT IS SO ORDERED.